# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

**TIGER LILY LLC;**
**HUNTER OAKS APARTMENTS UTAH, LLC;**
**NORTH 22ND FLAT, LLC;**
**CHERRY HILL GARDENS LLC;**
**CHURCHILL TOWNHOMES LLC; and**
**BRITTANY RAILEY**
**APPLEWOOD PROPERTY MANAGEMENT, LLC;**

     Plaintiffs

**vs.**                                        **No: 2:20-cv-2692**


**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
and **BENJAMIN S. CARSON, M.D.** in his official capacity as United States Secretary of
Housing and Urban Development;
**UNITED STATES DEPARTMENT OF JUSTICE**
and **WILLIAM P. BARR**, in his official capacity as United States Attorney General;
**UNITED STATES CENTER FOR DISEASE CONTROL AND PREVENTION**
and **NINA B. WITKOVSKY,** in her official capacity as Acting Chief of Staff of the Center for
Disease Control and Prevention;
**UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES**
and **ALEX AZAR,** in his official capacity as United States Secretary of Health and Human
Services;
**VICE ADMIRAL JEROME M. ADAMS, M.D.**, in his official capacity as United States
Surgeon General; and
**D. MICHAEL DUNAVANT,** in his official capacity as United States Attorney General for the
Western District of Tennessee

     Defendants.

---

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF

---

For their causes of action, Plaintiffs, through their undersigned counsel of record, Glankler Brown, PLLC, would show unto this Honorable Court, by and through this First Amended Complaint[1], as follows:

## PRELIMINARY STATEMENT

Plaintiffs, and their undersigned counsel, bring this action with humility and reticence. Plaintiffs have great respect and admiration for the United States of America, its founders, whose vision established this republic under the framework of our Constitution, and our governmental leaders, including those named herein as Defendants by virtue of their official capacities, who have led this nation with the goal of making it a more perfect union.  Plaintiffs' action herein is in no way intended to be a critique of our government's intentions, nor is it intended to be viewed as a political attack on the motivations of our elected and appointed governmental leaders – past or present.

---

[1] For ease of reference for this Honorable Court and the Defendants, Plaintiffs' First Amended Complaint includes substantive changes to the Original Complaint (D.E. 1) filed September 16, 2020, through inclusion of a new Count, beginning at Paragraph 100 and continuing through Paragraph 134, which, among other things, asserts a claim against the Defendants for multiple violations of 5 U.S.C. § 553, The Administrative Procedure Act.  Plaintiffs have also included herein additional allegations under Count IV for vagueness and overbreadth in the construction and enforcement of the Halt Order and under Count VIII, namely, that the complete bar imposed by the Tennessee State Courts resulting from the vagueness and overbreadth of the Halt Order has resulted in the unlawful denial of Plaintiffs' rights to access the judiciary. Finally, Plaintiffs substantively modified Counts IX, X, and their Prayer for Relief by adding requests for the immediate set aside and vacatur of the Halt Order for violation of the Administrative Procedure Act or, alternatively, the issuance of a permanent injunction from enforcement of the Halt Order for violation of the Administrative Procedure Act and numerous constitutionally protected rights, or, alternatively, the issuance of a preliminary injunction from enforcement of the Halt Order for violation of the Administrative Procedure Act and numerous constitutionally protected rights. These changes do not fundamentally alter the arguments and claims for relief previously articulated in Plaintiffs' Memorandum in Support of Motion for Emergency Hearing and Injunction filed on September 27, 2020 (D.E. 12) but are more specifically broken out herein as separate counts to better delineate the claims and relief sought by Plaintiffs.  The remainder of Plaintiffs' First Amended Complaint is the same to the Original Complaint in all other respects.

Instead, the greatness of our nation, so established by our forefathers through the Constitution, protected and preserved by brave men and women, and championed by our government, can only be sustained and empowered when the citizenry is entitled to respectfully challenge government action that potentially runs afoul of our principles and laws.  Indeed, it is our duty as citizens to undertake such action.

Plaintiffs recognize that the current health crisis arising out of COVID-19 has impressed upon the citizens and government of the United States a great responsibility.  The legislative and executive branches of the federal government, as well as those of the various states, have undertaken diverse and varied efforts to halt the spread of this debilitating pandemic.  These varied efforts have taken the form of sundry public health mandates, economic protections, laws, orders, and regulations.  There is little doubt that the aim of these efforts to preserve, protect, defend, and support the citizenry are undertaken nobly.

And yet, government action —particularly at this time— must still be consistent with the fundamental and protected rights of all and cannot be the result of an over-reach of authority.  The recently promulgated Centers for Disease Control order suspending all residential evictions nationwide infringes upon the constitutional rights of property owners and managers, large and small, by preventing —and taking from— those owners and managers, without authority or proper justification, the free and unrestricted use and enjoyment of their property without just compensation and without due process of law.

Plaintiffs readily acknowledge the nobility of the CDC's and, by extension, the executive branch's, desire to help those profoundly affected by the current health crisis; however, that help must conform to the law and must not infringe unlawfully upon the rights of others.

As beneficiaries of the legacy so created by our forefathers, these Plaintiffs feel a duty to ensure that the rights of all people are protected.  And as fiduciaries of the law and officers of the

court, undersigned counsel feel a duty to ensure that the rights of all people are preserved.  It is within this framework, and the desire only to seek the truth in facts and justice, that the subject action is respectfully brought.

## INTRODUCTION

The Plaintiffs are a diverse group of individuals and business organizations that own and/or manage residential real property in the form of multi-family apartment complexes, duplexes, townhomes and single family residences (hereinafter referred to as "Units"), all located within the Western District of Tennessee.  Plaintiffs provide safe and quality housing for individuals and families of all ages, races, colors, genders, national origins, and religions.  In addition, several of these Plaintiffs also provide safe and quality housing for individuals with mental and/or physical disabilities and others in need of, and lawfully entitled to, special accommodations.

While the Plaintiffs generate income from their business activities —income that supports both their own families and the families' of their employees— each Plaintiff fundamentally feels a sense of duty to provide safe and quality housing to those in need and with strict adherence to local, state and federal laws and guidelines.

As part of their regular business activities, the Plaintiffs, and hundreds others like them who own and/or manage properties within the Western District of Tennessee, lease Units to individuals and families (hereinafter referred to as "tenants") under written residential lease contracts (hereinafter referred to as "lease agreements") compliant with the Tennessee Uniform Residential Landlord Tenant Act, T.C.A. § 66-28-101, *et seq*. ("URLTA").   These lease agreements include provisions, amongst others: (i) establishing the term of the tenant's leasehold interest in the Unit, after which the tenant is legally required to surrender possession of the Unit to the relevant Plaintiff, and (ii) entitling Plaintiffs to the timely payment from the tenant of the agreed upon monthly rent.  Plaintiffs rely upon the rental income received from their tenants to provide

4

the services needed by the tenants and to pay expenses, including, but not limited to, upkeep and maintenance of the Units, applicable real estate, franchise, and excise taxes, and  mortgage and debt service obligations.  When the tenants fail to pay rent as required under the lease agreements, they are in material breach of the lease agreements, and the URLTA grants Plaintiffs the legal right to terminate the lease agreement, commence proceedings to evict the defaulting tenants, dispossess the tenants from the Units, regain possession of the Units, secure a judgment for rent arrearage, and re-let the Units to new rent-paying tenants.  This rental paradigm exists in all fifty (50) states, and the District of Columbia, and is an underlying and basic right of property ownership and leasehold interests.

Following the outbreak and spread of COVID-19 in early 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (the "Cares Act").  The Cares Act imposed a moratorium upon residential evictions for many of these Plaintiffs and any other owners or managers of "covered properties," as broadly defined in the Cares Act, for a period of 120 days commencing at enactment.  The Cares Act resulted in these Plaintiffs, as well as other property owners and managers in the Western District of Tennessee and nationwide, being forced to continue to allow non-paying, delinquent, and defaulting tenants to remain in their Units, and required Plaintiffs to continue to unilaterally incur all the costs of providing these tenants with services without receipt of rental income.  The foregoing notwithstanding, the Cares Act also provided contemporaneous relief to some of the Plaintiffs in the form of mortgage and tax forbearances, Paycheck Protection Program (PPP) forgivable loans, and other COVID-19 related government assistance.

The Cares Act eviction moratorium enacted by Congress expired July 24, 2020 but contained a thirty (30) day post-expiration notice period which effectively extended the Cares Act eviction moratorium through August 25, 2020.  Congress elected not to extend the eviction

moratorium through further legislation and, on August 8, 2020, President Donald J. Trump (hereinafter "President Trump") directed his administration, and certain cabinet departments within the executive branch of the federal government, without Congressional authorization, to "*take all lawful measures to prevent residential evictions and foreclosures resulting from financial hardships caused by COVID-19.*" (Emphasis added).   In apparent furtherance of President Trump's August 8, 2020 directive, on September 4, 2020, the acting Chief of Staff for the Center for Disease Control, Nina Witkovsky, in coordination and with the concurrence of Dr. Benjamin S. Carson, Secretary of the United States Department of Housing and Urban Development, both Alex Azar and  Vice Admiral Jerome Adams, M.D. of the United States Department of Health & Human Services, and with civil and criminal enforcement authority delegated to William P. Barr and D. Michael Dunavant, of the United States Department of Justice, promulgated an order styled "Temporary Halt in Residential Evictions to Prevent the Further Spread of Covid 19".  This Halt Order expands the scope of the original eviction moratorium against these Plaintiffs from "covered properties" under the Cares Act to all individuals and business organizations that own and/or manage any residential real property anywhere in the United States.  The Halt Order effectively prevents all evictions against any non-paying, delinquent, and defaulting tenants through December 31, 2020.   Unlike the Cares Act, neither the Halt Order, nor any associated law, regulation, rule, or order promulgated by any branch or agency of the federal government, provides contemporaneous relief of any kind to the Plaintiffs during this mandated additional four (4) month eviction moratorium.

The Halt Order is, ostensibly, premised upon the theory that non-paying, delinquent, and defaulting tenants who are evicted from Units might become homeless and, if they became homeless, might further spread COVID-19.  Importantly, the Halt Order provides no scientific, statistical, or anecdotal basis for this nationwide directive.  While offering nothing in the form of

6

compensation or other relief to the Plaintiffs so deeply prejudiced, the Halt Order instead threatens substantial civil and criminal (jail) sanctions against any property owners and/or managers who do not comply with the terms of the Halt Order.

The Halt Order was promulgated in clear and express violation of both the procedural and substantive prerequisite components of the Administrative Procedure Act and therefore, without any further review, is unlawful and must be immediately struck down by this Honorable Court as unenforceable and void *ab initio*.

Moreover, as a result of the Halt Order's eviction moratorium, and without any associated and balanced relief for the Plaintiffs and other property owners and/or managers of residential real property, the federal government is unlawfully taking the private property of these individuals and companies, depriving them of both use and possession —without a hearing in which they could offer evidence as to why the taking is unlawful or otherwise not warranted by the particular facts and circumstances— and without any compensation, let alone just compensation, as fundamentally required under the law.

The Halt Order therefore is unconstitutional, as it violates the Takings Clause and amounts to a denial and deprivation of substantive and procedural Due Process in violation of the Fifth Amendment to the United States Constitution (hereinafter referred to as the "Constitution").

In addition, the Halt Order is violative of the Tenth Amendment to the Constitution and its Anti-Commandeering Doctrine, the Supremacy Clause of the Constitution, and Plaintiffs' fundamental right to access the judiciary, among other bases.  Enforcement of the Halt Order acts as an unlawful suspension of law, including state law.

Finally, the CDC lacked the authority to promulgate and enforce the Halt Order under the cited bases, and, as a result, the Halt Order is an unenforceable *ultra vires* action.

Plaintiffs respectfully ask this Honorable Court for a declaratory judgment, among other things, finding that the Halt Order is violative of the Administrative Procedure Act and its due process requirements, as well as fundamental principles of constitutional law. The Halt Order must be declared a nullity  and unenforceable. In the alternative, Plaintiffs would respectfully ask that this Honorable Court grant injunctive relief against the Defendants, precluding any effort by the Defendants to enforce any element of the Halt Order or to pursue any criminal or civil penalties against Plaintiffs for alleged violations of the Halt Order.

<u>**PARTIES**</u>

1.      Plaintiff, Tiger Lily, LLC, is a Tennessee limited liability company which owns and manages 94 Units within this jurisdiction.

2.      Plaintiff, Hunter Oaks Apartments Utah, LLC, is a Utah limited liability company duly authorized to do business in the State of Tennessee which owns and manages 3,479 Units within this jurisdiction.

3.      Plaintiff, North 22nd Flat, LLC, is a New Jersey limited liability company which owns and manages 268 Units within this jurisdiction.

4.      Plaintiff, Cherry Hill Gardens, LLC, is a Tennessee limited liability company which owns and manages 50 Units within this jurisdiction.

5.      Plaintiff, Churchill Townhomes, LLC, is a Tennessee limited liability company which owns and manages 26 Units within this jurisdiction.

6.      Plaintiff, Brittany Railey, is an adult resident of Shelby County, Tennessee who owns 90 Units comprised of single-family homes within this jurisdiction.

7.      Plaintiff, Applewood Property Management, LLC, is a Tennessee limited liability company which manages 1,405 Units within this jurisdiction.

8.      Upon information and belief, the Plaintiffs herein own and/or manage more than Five Thousand (5,000) residential Units located within the Western District of Tennessee and have each been adversely impacted by the Halt Order.  Tiger Lily, LLC, Hunter Oaks Apartments Utah, LLC, North 22nd Flat, LLC, Cherry Hill Gardens, LLC, Churchill Townhomes, LLC, Brittany Railey, Applewood Property Management, LLC, are referred to herein collectively as "Plaintiffs".

9.      Established in 1965, Defendant, United States Department of Housing and Urban Development, is a cabinet department in the executive branch of the federal government (referred to herein as "HUD").  HUD may be served with process through The Associate General Counsel for Litigation, Office of Litigation - Room 10258, U.S. Department of Housing and Urban Development, 451 Seventh Street, S.W., Washington, D.C.  20410.

10.     Defendant, Benjamin S. Carson, M.D. (referred to herein as "Secretary Carson"), is the Secretary of Defendant United States Department of Housing and Urban Development. Secretary Carson is sued only in his official capacity and may be served with process at the U.S. Department of Housing and Urban Development, 451 Seventh Street, S.W., Washington, D.C. 20410.  Service upon Secretary Carson is likewise being effectuated by and through service upon the United States pursuant to F.R.C.P Rule 4(i)(2).

11.     Established in 1870, Defendant, United States Department of Justice, is a cabinet department in the executive branch of the federal government (referred to herein as the "DOJ"). The DOJ may be served with process through the U.S. Attorney General at 950 Pennsylvania Ave., NW, Washington, D.C. 20530; the Assistant Attorney General for Administration, U.S. Department of Justice, Justice Management Division, 950 Pennsylvania Avenue, NW, Room 1111, Washington, DC 20530; and the U.S. Attorney for the Western District at 167 North Main Street, Suite 800, Memphis, TN 38103.

12.     Defendant, William P. Barr (referred to herein as "Attorney General Barr"), is the United States Attorney General.  Attorney General Barr is sued only in his official capacity and may be served at the U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Room 1111, Washington, DC 20530.  Service upon Attorney General Barr is likewise being effectuated by and through service upon the United States pursuant to F.R.C.P Rule 4(i)(2).

13.     Established in 1946, the United States Center for Disease Control and Prevention (referred to herein as the "CDC"), is a national public health agency under the United States Department of Health and Human Services.  The CDC may be served with process through Dr. Robert R. Redfield, Director, at 1600 Clifton Road, Atlanta, GA 30333.

14.     Defendant, Nina B. Witkovsky (referred to herein as "Ms. Witkovksy"), is the Acting Chief of Staff of the Center for Disease Control and Prevention.  Ms. Witkovsky is sued only in her official capacity and may be served at the Center for Disease Control and Prevention, 1600 Clifton Road, Atlanta, GA 30333.  Service upon Ms. Witkovksy is likewise being effectuated by and through service upon the United States pursuant to F.R.C.P Rule 4(i)(2).

15.     Established in 1939 and renamed in 1979, the United States Department of Health & Human Services (referred to herein as "HHS"), is a cabinet department in the executive branch of the federal government.  HHS may be served with process through its General Counsel Robert P. Charrow, at 200 Independence Ave, S.W. Room 713-F, Washington, D.C. 20201.

16.     Defendant, Alex Azar (referred to herein as "Secretary Azar"), is the Secretary of Defendant United States Department of Health & Human Services.  Secretary Azar is sued only in his official capacity and may be served at 200 Independence Ave, S.W., Washington, D.C. 20201.  Service upon Secretary Azar is likewise being effectuated by and through service upon the United States pursuant to F.R.C.P Rule 4(i)(2).

17.     Defendant, Vice Admiral Jerome M. Adams, M.D. (referred to herein as "Admiral Adams"), is the Surgeon General for the United States of America in the United States Department of Health & Human Services.  Admiral Adams is sued only in his official capacity and may be served at 200 Independence Ave, S.W., Washington, D.C. 20201.  Service upon Admiral Adams is likewise being effectuated by and through service upon the United States pursuant to F.R.C.P Rule 4(i)(2).

18.     Defendant, D. Michael Dunavant (referred to herein as "U.S. Attorney Dunavant"), is the United States Attorney for the Western District of Tennessee.  U.S. Attorney Dunavant is sued only in his official capacity and may be served at the U.S. Attorney's Office, 167 North Main Street, Suite 800, Memphis, TN 38103.  Service upon U.S. Attorney Dunavant is likewise being effectuated by and through service upon the United States pursuant to F.R.C.P Rule 4(i)(2).

19.     The United States Department of Housing and Urban Development, United States Department of Justice, United States Center for Disease Control and Prevention, and United States Department of Health & Human Services are all duly created agencies of the federal government and the acts referenced herein were all taken in that capacity, under alleged government authority and color of law, and on behalf of the federal government and the administration of President Donald J. Trump.  As such, these parties are sometimes referred to herein individually by their respective agency designations, and other times collectively as the "Government" or "Defendants".

## JURISDICTION AND VENUE

20.     Plaintiffs seek both declaratory and injunctive relief with respect to the Halt Order promulgated on September 4, 2020 by Ms. Witkovksy of the CDC in coordination and with the concurrence of Secretary Carson of HUD, Secretary Azar and Admiral Adams of HHS, and with threatened civil and criminal prosecution against all Plaintiffs by Attorney General Barr and U.S.

Attorney Dunavant of the DOJ for its violation.   Plaintiffs aver that the Halt Order is unconstitutional on a number of discrete grounds as it, *inter alia*, violates the Takings Clause and amounts to a denial of substantive and procedural Due Process, all in violation of the Fifth Amendment to the United States Constitution.   Plaintiffs likewise aver that the Halt Order is violative of the Tenth Amendment to the United States Constitution and its Anti-Commandeering Doctrine, the Supremacy Clause of the Constitution, and Plaintiffs' fundamental right to access the judiciary.   Enforcement of the Halt Order acts as an unlawful suspension of law.   Additionally, there is no legal or statutory bases conferring authority upon the CDC to enact and enforce the Halt Order and Congress has not delegated such authority to the executive branch or the CDC.   As such, the Halt Order should be declared unconstitutional and unenforceable, and this Honorable Court should grant injunctive relief against the Defendants, who in their official capacities, seek to enforce the Halt Order and the penalties for alleged violations thereof.

21.   This Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 702 as to all claims for relief set forth in Plaintiffs' Complaint because all such claims involve questions of federal law, and interpretation of federal statutes, rules, regulations, and/or orders, and the Constitution.

22.   Jurisdiction to file suit against the Government and seek injunctive relief for violation of Plaintiffs' constitutional rights is premised upon 28 U.S.C. § 1346(a)(2).

23.   Jurisdiction for declaratory relief from this Honorable Court is premised upon 28 U.S.C. §§ 2201, 2202.

24.   All Plaintiffs conduct business within the Western District of Tennessee, own and/or manage residential real property impacted by the Halt Order located within the Western District of Tennessee, and currently have non-paying, delinquent, and defaulting tenants whom Plaintiffs are lawfully entitled to evict – but for the Halt Order - under a lease agreement and the

URLTA..  The Plaintiffs are at risk of criminal prosecution by Attorney General Barr and U.S. Attorney Dunavant if they fail to comply with the Halt Order, which absent intervention from this Honorable Court, would be initiated by U.S. Attorney Dunavant in the Western District of Tennessee.  U.S. Attorney Dunavant is a resident of the Western District of Tennessee and all of his offices are located within the Western District of Tennessee.

25.     Venue is appropriate in the Western District of Tennessee under 28 U.S.C. §§ 1391(b)(1), 1391(b)(2).

26.     Rule 65 of the Federal Rules of Civil Procedure allows this Honorable Court to issue a preliminary injunction upon notice to the adverse parties.

## FACTS

27.     Plaintiffs reflect a diverse group of individuals and business organizations who, upon information and belief, own and/or manage more than Five Thousand (5,000) residential Units located within the Western District of Tennessee, who are being denied the use, enjoyment, and possession of their Units, and who are suffering significant financial loss and damages –all as a direct and proximate result of the unconstitutional issuance and enforcement of the Halt Order.

28.     As consideration for providing tenants leasehold interests, possession, and use of Units owned and/or managed by Plaintiffs, Plaintiffs and the tenants enter into lease agreements duly compliant with all provisions of the URLTA and federal law.

29.     Amongst others, a material term in these lease agreements is the tenants' mutually exclusive covenant to timely pay rent as compensation to Plaintiffs for use and possession of the Units.

30.     Plaintiffs rely upon the rental income received from the tenants to provide services needed by the tenants and to pay expenses such as upkeep and maintenance of the Units, applicable

real estate, franchise, and excise taxes, mortgage obligations, and to provide income and livelihood to the individual Plaintiff owners, members, shareholders, and employees.

31.     Under both the URLTA and general contract principles of Tennessee law, the failure of a tenant to timely pay his or her monthly rent obligation constitutes a material breach of the lease agreement and entitles Plaintiffs to initiate court action to terminate the lease agreement, dispossess the tenant from the Unit, and either retain the Unit in vacancy, or locate a new tenant to occupy the Unit for rent – whichever the Plaintiffs deem to be in their best interests.

32.     In addition, these lease agreements contain a material term which identifies the agreed upon duration of tenants' leasehold and possessory interest to the Unit.

33.     Under both the URLTA and general contract principles of Tennessee law, absent mutual consent to the contrary, the failure of a tenant to vacate the Unit upon expiration of the lease term and to promptly return possession of the Unit to the owner or manager, constitutes a material breach of the lease agreement and entitles Plaintiffs to initiate court action to terminate the lease agreement, dispossess the tenant from the Unit, and either retain the Unit in vacancy, or locate a new tenant to occupy the Unit for rent – whichever the Plaintiffs deem to be in their best interests.

34.     While under the lease agreement, the URLTA, and general contract principles of Tennessee law, Plaintiffs are entitled to also bring legal action to recover unpaid rent from non-paying, delinquent, and defaulting tenants at the time an eviction action is brought, this money is very often never recovered by Plaintiffs for several reasons:

    a.   In a great majority of the eviction actions filed in the Western District of Tennessee, service of process is accomplished under T.C.A. §29-18-115 (e)(2)(a) by posting the Forcible Entry and Detainer (FED) Warrant upon the front door of the Unit.  In all cases wherein service of process is accomplished under this statute, the trial court's

jurisdiction is limited to only returning possession of the Unit to the owner or manager and the trial court is prohibited from awarding the owner or manager any monetary recovery for the tenant's non-payment of rent.

b.  In the limited scenarios wherein personal service on the tenant of the Forcible Entry and Detainer (FED) Warrant is accomplished under T.C.A. §29-18-115 (e)(1), and the trial court awards the owner or manager a monetary judgment for the tenant's non-payment of rent, owners and managers rarely recover these sums from the tenant.

35.     As such, and as a matter of course in the industry, particularly within the Western District of Tennessee, Plaintiffs' primary efforts are to promptly initiate actions against non-paying, delinquent, and defaulting tenants to dispossess the defaulting tenants from the Units and regain possession, without regard to recovering delinquent rent.

36.     Far more important to the Plaintiffs than trying to collect these often unrecoverable delinquent monies, the prompt recovery of lawful use of the Unit allows the owner or manager to safely secure the Unit, to preserve and protect it from damage, to reduce the outlay of ongoing expenses, and to either retain the Unit in vacancy, or locate a new paying tenant to occupy the Unit.

37.     This Honorable Court can take judicial notice of the current global pandemic of a respiratory disease ("COVID-19") caused by a novel coronavirus (SARS-COV-2) which has impacted individuals in all fifty states, the District of Columbia, and in almost every country around the world.

38.     The virus that causes COVID-19 spreads between people who are in close contact with one another, mainly through respiratory droplets produced when an infected person coughs, sneezes or talks.

39.    The overwhelming majority of people who contract the virus that causes COVID-19 never display physical symptoms or express only mild symptoms and recover without requiring any medical intervention; however, in some cases, especially those involving the elderly, or those with certain underlying medical conditions such as cancer, an immunocompromised state, obesity, serious heart conditions, and diabetes, the risk for severe illness requiring hospitalization is increased.

40.    Though COVID-19 is present in all states, the rate of spread of the disease and the severity of the public health crisis, varies greatly in different parts of the United States.

41.    As of September 14, 2020, New York has reported 32,625 deaths resulting from COVID-19.   By contrast, across the entire State of Tennessee, 2,040 deaths resulting from COVID-19 have been reported.

42.    While even one single death is too great, the data demonstrates that the severity of the public health crisis in the Western District of Tennessee due to COVID-19 has been far less than that of New York City.

43.    This is likely, amongst other reasons, because areas of the country with greater population densities, such as New York, are at increased risk for spread of COVID-19 as opposed to areas of the country where people are living in less densely populated areas such as the Western District of Tennessee.

44.    To address various aspects of the COVID-19 pandemic, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (Pub. L. 116-136) to aid individuals and businesses adversely affected by COVID-19.

45.    Section 4024 of the Cares Act provided a 120-day moratorium on residential eviction filings by owners and managers of Units with a nexus to the federal government either

because the property receives federal rent assistance or because the property maintains federally related financing (referred to herein as "Covered Properties").

46.     Under the Cares Act eviction moratorium, Plaintiffs with Covered Properties were forced to continue to allow non-paying, delinquent, and defaulting tenants living in those Covered Properties to remain in their Units, requiring Plaintiffs to continue to unilaterally incur all the costs of providing these tenants with services, despite the tenants' material breaches of the lease agreement and without the benefit of vital rental income.

47.     However, in some instances, the Cares Act also provided contemporaneous relief to Plaintiffs with Covered Properties in the form of mortgage and tax forbearances, Paycheck Protection Program (PPP) forgivable loans, and other COVID-19 related government grants.

48.     All Plaintiffs have tenants in Units who failed to pay rent during the 120-day moratorium on eviction, but because of the Cares Act, the Plaintiffs were unable to dispossess the non-paying, delinquent, and defaulting tenants and regain possession of their Units.

49.     The Cares Act eviction moratorium enacted by Congress expired July 24, 2020, but contained a thirty (30) day post-expiration notice period which effectively extended the Cares Act eviction moratorium through August 25, 2020.

50.     As such, eviction proceedings by owners or managers of Covered Properties against non-paying, delinquent, and defaulting tenants, could not be prosecuted until after August 26, 2020.

51.     Congress elected not to extend the Cares Act eviction moratorium.

52.     After August 26, 2020, Plaintiffs took lawful steps to terminate defaulted lease agreements,  dispossess tenants —many of whom were three (3) to four (4) months delinquent in their rent obligations to Plaintiffs— and to prosecute court proceedings to evict these tenants and regain lawful possession of the Units.

53.     On August 8, 2020, President Trump signed an "Executive Order on Fighting the Spread of Covid-19 by Providing Assistance to Renters and Homeowners".

54.     The Executive Order declared that, despite not having Congressional authorization to extend the Cares Act eviction moratorium,  President Trump directed his administration and certain agencies of government within the executive branch to "*take all lawful measures to prevent residential evictions and foreclosures resulting from financial hardships caused by COVID-19.*"

55.     The Executive Order provided that "*The Secretary of Health and Human Services and the Director of the CDC shall consider whether any measures temporarily halting residential evictions of any tenants for failure to pay rent are reasonably necessary to prevent the further spread of Covid-19 from one State or possession into any other State or possession.*"

56.      On September 1, 2020, a public announcement was issued that "*following an Executive Order by President Trump, the Center for Disease Control and Prevention is using its authority to temporarily halt evictions during the Covid-19 epidemic*".

57.     The CDC, through its acting Chief of Staff, Ms. Witkovsky, in coordination and with the concurrence of Secretary Carson at HUD and Secretary Azar and  Admiral Adams at HHS, promulgated an order styled "Temporary Halt in Residential Evictions to Prevent the Further Spread of Covid-19" (the "Halt Order") which became effective upon publication in the Federal Register (85 Fed. Reg. 55292) on September 4, 2020.

58.     Under the Halt Order, the preclusion on evictions against non-paying, delinquent, and defaulting tenants extends for four (4) additional months from September 4, 2020, through December 31, 2020, unless further "extended" (85 Fed. Reg. 55297).

59.     The CDC, HUD, and HHS erroneously claim that the Halt Order is not a "rule" under the Administrative Procedure Act and therefore not subject to its procedural and substantive requirements.

60.     The claimed legal authority asserted by the CDC, HUD, and HHS for promulgation of the Halt Order is Section 361 of the Public Health Services Act (42 U.S.C. § 264 and 42 C.F.R. § 70.2.

61.     In relevant part, 42 U.S.C. § 264 (a) provides:

> The Surgeon General, with the approval of the Secretary, is authorized to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession.  For purposes of carrying out and enforcing such regulations, the Surgeon General may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary.

62.     42 C.F.R. § 70.2 provides:

> Whenever the Director of the Center for Disease Control and Prevention determines that the measures taken by health authorities of any State or possession (including political subdivisions thereof) are insufficient to prevent the spread of any of the communicable diseases from such State or possession to any other State or possession, he/she may take such measures to prevent such spread of the diseases as he/she deems reasonably necessary, including inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection.

63.     It is clear that both 42 U.S.C. § 264 and 42 C.F.R. § 70.2 are intended to address federal government efforts to address the spread of already contaminated persons or personal property —most notably foreign persons and livestock— whose contamination threatens introduction into the United States or interstate expansion from contaminated to non-contaminated U.S. States.

64.     Neither 42 U.S.C. § 264 nor 42 C.F.R. § 70.2 provides for the termination or suspension of real property rights of individual citizens, nor do they provide for any action involving un-contaminated persons or un-contaminated property within a U.S. State (i.e., intrastate action or concerns).

65.     Neither 42 U.S.C. § 264 nor 42 C.F.R. § 70.2 terminates the fundamental constitutional mandate that any action which results in the taking of property be subjected to due process of law and be offset by just government compensation.

66.     Furthermore, neither 42 U.S.C. § 264 nor 42 C.F.R. § 70.2 allows for the over-reach into non-articulated powers in violation of constitutionally protected rights.

67.     Section 361 of the Public Health Services Act requires the concurrence of Secretary Carson, Secretary Azar and Admiral Adams as a pre-condition to issuing any order.

68.     Secretary Carson, Secretary Azar and Admiral Adams, in their official capacities and on behalf of HUD and HHS respectively, concurred in the issuance of the Halt Order under 42 U.S.C. § 264 and 42 C.F.R. § 70.2.

69.      The Halt Order expressly states that it is not a rule within the meaning of the Administrative Procedure Act, but rather is an emergency action taken under the existing authority of 42 CFR § 70.2, and provides that:

> "*a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action shall not evict any covered person from any residential property in any State…*".

70.     A "covered person" in the Halt Order is defined as:

> "*any tenant, lessee, or resident of a residential property who provides to their landlord, the owner of the residential property, or other person with a legal right to pursue eviction or a possessory action, a declaration under penalty of perjury that (1) the individual is using best efforts to obtain all available government assistance for housing; (2) the individual earns no more than $99,000.00 per year in income; (3) the individual is unable to pay the full rent due to a substantial loss of household income, loss of compensable hours of work, layoff or extraordinary medical expenses; (4) the individual is using best efforts to make timely partial payments as the individual's circumstances permit, and (5) eviction would likely render the individual homeless or force the individual to move into and live in close quarters in a new congregate or shared living setting because the individual has no other available housing options.*"

71.     The Halt Order contains a form "Declaration" that is to be executed by the non-paying, delinquent, and defaulting tenant and delivered to the owner or manager, asserting that he or she is a "covered person" within the meaning of the Halt Order.

72.     The Halt Order does not provide for any hearing before an impartial tribunal to determine whether a non-paying, delinquent, and defaulting tenant is a "covered person" as a matter of law.

73.     The Halt Order does not offer the property owner or manager any forum by which it may present evidence that a non-paying, delinquent, and defaulting tenant is not a "covered person" as a matter of fact.

74.     The Halt Order does not require the non-paying, delinquent, and defaulting tenant to renew or re-assert his or her continued status as a "covered person" on a month-by-month basis and is, therefore, ambiguous and without limit.

75.     Once a Declaration is executed and delivered to the owner or manager, the Halt Order forbids the owner or manager from taking any steps to evict the non-paying, delinquent, and defaulting tenant for four (4) months –through December 31, 2020 (allegedly subject to extension).

76.     During this time, the Halt Order provides no financial relief or compensation to Plaintiffs in any form at all.

77.     Instead, referencing 18 U.S.C. §§ 3559, 3571; 42 USC § 271 and 42 CFR § 70.18, the Halt Order threatens criminal penalties of up to one (1) year in prison and fines of up to $250,000.00 against an owner or manager who violates the Halt Order.

78.     The Halt Order directs Attorney General Barr and the DOJ to initiate court proceedings sought to impose criminal penalties against owners or managers alleged to have violated the Halt Order.

79.     Criminal proceedings against these Plaintiffs for alleged non-compliance with the Halt Order are to be initiated by U.S. Attorney Dunavant within the Western District of Tennessee.

80.     All Plaintiffs have tenants in Units who are delinquent in the payment of rent and who would be otherwise lawfully evicted from the Units under the URLTA, but for the Halt Order.

81.     Many of these tenants have not paid rent since March 2020, and now, between the Cares Act eviction moratorium and the Halt Order, will not pay rent for at least ten (10) months – allegedly subject to even further extension.

82.     Moreover, many of these tenants have lease agreements that have now expired and these tenants have both refused to pay rent and refused to surrender the Units.  Between the Cares Act eviction moratorium and the Halt Order, these tenants will remain in unlawful possession of the Units for up to ten (10) months –allegedly subject to further extension.

83.     At the same time, Plaintiffs are still being required to spend considerable sums to provide these non-paying, delinquent, and defaulting tenants with residential services, to repair and keep up the Units, to pay applicable real estate, franchise, and excise taxes, to pay mortgage and debt service obligations, and to provide income and livelihood to the individual Plaintiff owners, members, shareholders, and employees..

84.     In the scenarios outlined above, because of the government action described herein, Plaintiffs are being completely denied access to, and the free use, enjoyment, and possession of, their property without any compensation.

85.     This complete denial of access to, and use and possession of, their property without any compensation constitutes a governmental taking.

86.     The statutory authority relied upon by the Government for this taking does not authorize this taking.

87.     The Halt Order exceeds the statutory and regulatory authority of the CDC, HUD, and HHS.

88.     The right of Plaintiffs to evict a non-paying, delinquent, and defaulting tenants is exclusively a function of the laws of the State of Tennessee.

89.     Neither the CDC, HUD, nor HHS have the authority to waive, dispense with, or suspend duly enacted Tennessee laws.

90.     The Halt Order frustrates Plaintiffs' constitutional right to access the State courts by foreclosing the availability of certain judicial relief.

91.     Neither the CDC, HUD, nor HHS has acted within any congressionally delegated authority to impose the Halt Order in violation of the Supremacy Clause of the Constitution.

92.     Nothing in the statutes or regulations cited in the Halt Order gives the CDC, HUD, or HHS the authority to issue the Halt Order and interfere with or suspend the operation of Tennessee law, and the issuance of the Halt Order (and its enforcement) therefore violates the Tenth Amendment to the Constitution.

93.     Moreover, the Halt Order impermissibly commandeers the state courts of Tennessee and requires Tennessee courts and officials o act as arms of the CDC, HUD, and/or HHS to apply, enforce, and implement an unconstitutional federal mandate.  This further violates the Tenth Amendment to the Constitution.

94.     Even more, the savings clause included within 42 U.S.C. § 264(e), expressly provides that 42 U.S.C. § 264(a) and 42 C.F.R. § 70.2 cannot supersede the URLTA or other Tennessee state laws relating to enforcement or impairment of contracts.  As such, the Halt Order displaces applicable Tennessee state law and authority over residential evictions in further violation of the Tenth Amendment.

95.     As a direct result of the Halt Order, these Plaintiffs have been denied their property and contract rights and the Halt Order unlawfully and unconstitutionally interferes with same.

96.     As a direct result of the Halt Order, these Plaintiffs are suffering serious economic injury from which they may not recover.

97.      As a direct result of the Halt Order, Plaintiffs are being unlawfully denied use and possession of their property.

98.     The Halt Order, its issuance, application, and enforcement, violate the foundational principles of the Constitution and should be struck down.

99.     Plaintiffs are entitled to preliminary and permanent injunctive relief enjoining the Defendants from enforcing the Halt Order against the Plaintiffs.

### COUNT I: THE HALT ORDER VIOLATES 5 U.S.C. § 553 – THE ADMINISTRATIVE PROCEDURE ACT

100.     Plaintiffs hereby reallege and reassert each of the foregoing paragraphs of the Complaint as if set forth herein verbatim.

101.     The CDC purports to issue the Halt Order pursuant to 42 U.S.C. § 264 (a.k.a Section 361 of the Public Health Service Act) and 42 C.F.R. § 70.2.

102.     The Halt Order attempts to remove itself from the ambit of the Administrative Procedure Act by simply stating that it is "not a rule within the mearing of the Administrative Procedure Act but rather an emergency action taken under the existing authority of 42 C.F.R. § 70.2."

103.     The Halt Order is of generally applicability.

104.     The Halt Order has a future effect.

105.     The Halt Order is designed to implement, interpret, or proscribe law and/or policy.

106.     The Halt Order constitutes a legislative act and the CDC, by and through the Halt Order, is attempting to promulgate and enforce a rule with the effect of law.

107.   The Halt Order is a "rule" within the meaning of the Administrative Procedure Act.

108.   The Halt Order is a final action under the Administrative Procedure Act.

109.   The Halt Order runs afoul of non-delegation and separation of powers principles.

110.   42 U.S.C. § 264, which provides in relevant part:

> The Surgeon General, with the approval of the Secretary, is authorized to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession.  For purposes of carrying out and enforcing such regulations, the Surgeon General may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary.

111.   42 CFR § 70.2 which provides in relevant part:

> Whenever the Director of the Center for Disease Control and Prevention determines that the measures taken by health authorities of any State or possession (including political subdivisions thereof) are insufficient to prevent the spread of any of the communicable diseases from such State or possession to any other State or possession, he/she may take such measures to prevent such spread of the diseases as he/she deems reasonably necessary, including inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection.

112.   The alleged enabling statute, 42 U.S.C. § 264 (as well as 42 C.F.R. § 70.2), must be construed in a way that avoids constitutional problems.

113.   In order to avoid the various constitutional problems presented by the CDC's (and other Defendants') interpretation of 42 U.S.C. § 264 (and 42 C.F.R. § 70.2), in promulgating the Halt Order, requires the Court construe the statute (and regulation) narrowly.

114.   The CDC's (and other Defendants') interpretation of 42 U.S.C. § 264 (and 42 C.F.R. § 70.2) violates several canons of construction, including, but not limited to, *ejusdem generis*.

115.   The Halt Order is *ultra vires* in nature.

116.    The CDC Halt Order purports to subject individuals and business entities to criminal penalties for any violation of the Halt Order, including, but not limited to, confinement for not more than one (1) year and/or the imposition of a monetary penalty up to $250,000.00.

117.    The Halt Order unlawfully attempts to establish new, or expanded, criminal actions.

118.    Congress has not delegated the CDC (or any of the other Defendants) authority to implement sweeping economic regulations, and in particular, regulations that are based on possible second-order effects.

119.    Congress has not delegated the power to, nor authorized, the CDC (or any of the other Defendants) to promulgate any order, rule, and/or regulation related real property rights.

120.    Congress has not delegated the power to, nor authorized, the CDC (or any of the other Defendants) to promulgate any order, rule, and/or regulation related to evictions.

121.    Congress has not delegated the power to, nor authorized, the CDC (or the other Defendants) to impose and/or prosecute criminal sanctions like those included within the Halt Order against American citizens.

122.    Even if Congress did delegate the CDC (or the other Defendants) the authority and power to promulgate sweeping economic rules, regulations, and/or orders, the CDC has exceeded that authority.

123.    The CDC (and the other Defendants) failed to satisfy the prerequisites for the lawful promulgation and/or enactment set forth in the Administrative Procedure Act.

124.    Specifically, but without limitation, the CDC (and the other Defendants) failed to undertake the mandated notice-and-comment requirements under the Administrative Procedure Act.

125.    No exception to the procedure set forth in the Administrative Procedure Act exempt the CDC (or the other Defendants) from undertaking the prerequisites in the Act, including, without limitation, those set forth in 5 U.S.C. § 553(b).

126.    The CDC (and the other Defendants) failed to satisfy the substantive prerequisites for the lawful promulgation and/or enactment set forth in the Administrative Procedure Act.

127.    The Halt Order is arbitrary and capricious.

128.    The promulgation and enactment of the Halt Order is not based upon sufficient evidence, whether scientific, anecdotal, of otherwise.

129.    The Halt Order's intended effect is implausible.

130.    The Halt Order makes conclusions that are not supported by, and contrary to, existing evidence.

131.    The Halt Order, and the CDC, failed to articulate any rational connection between facts found and conclusions made in promulgating and enacting the Halt Order.

132.    The Halt Order is overly broad and vague.

133.    The Halt Order is not limited in temporal scope.

134.    The Halt Order is not narrowly tailored to meet the threat it purports to mitigate.

135.    Plaintiffs request the Court immediately strike down, vacate, hold unlawful, and set aside the Halt Order pursuant to, inter alia, 5 U.S.C. § 706.

## COUNT II: VIOLATION OF THE TAKINGS CLAUSE

136.    Plaintiffs hereby reallege and reassert each of the foregoing paragraphs of the Complaint as if set forth herein verbatim.

137.    The Takings Clause of the Fifth Amendment to the Constitution provides: "*[N]or shall private property be taken for public use without just compensation*." U.S. Const. Amend. V.

27

138.    The aim of the Takings Clause is to prevent the Government from forcing some people, alone, to bear public burdens which, in all fairness and justice, should be borne by the public as a whole. *Eastern Enterprises v. Apfel*, 524 U.S. 498, 522 (1998).

139.    Determination of whether there is a constitutionally impermissible taking involves a fact-intensive inquiry.

140.    Plaintiffs all have property interests in the Units leased to these non-paying, delinquent, and defaulting tenants.

141.    The non-payment of rent by these tenants constitutes a monetary breach of these lease agreements.

142.    Under both URLTA and general contract principles of Tennessee law, Plaintiffs are lawfully permitted to terminate non-paying, delinquent, and defaulting tenants' lease agreements, take action to dispossess the tenants, and recover use and possession of the Units.

143.    Because of the Halt Order, however, Plaintiffs are strictly precluded from terminating the lease agreements of these non-paying, delinquent, and defaulting tenants or from taking action to dispossess the non-paying, delinquent, and defaulting tenants and recover use and possession of the Units

144.    The preclusions resulting from the Halt Order amount to total deprivation of the use and enjoyment of the Units by the owners and managers for a period of not less than four (4) months.

145.    The Halt Order deprives Plaintiffs of rental income for their property because under URLTA and general contract principles of Tennessee law, absent this Halt Order, Plaintiffs would be lawfully permitted to terminate the lease agreements of the non-paying, delinquent, and defaulting tenants, take action to dispossess the tenants, recover use and possession of the Units, and contract with new tenants who would pay rent.

28

146.    The Halt Order implements a permanent physical occupation over Plaintiffs' property. L*oretto v. Teleprompter Manhattan CATV Corp*. 458 US 419 (1982).

147.    The Halt Order has the effect of taking property away from the Plaintiffs' and transferring Plaintiffs' lawful rights to use and enjoyment over their property to the non-paying, delinquent, and defaulting tenants.

148.    This constitutes a government taking for "private use".

149.    Because this governmental taking is for a "private use" (i.e. the private use of the non-paying, delinquent, and defaulting tenants) the Halt Order is unlawful in that it violates the Takings Clause which prohibits any and all types of government taking for "private use".

150.    Despite the Halt Order's clear private use effect, the CDC, HUD, and HHS have claimed that the purported reason for issuing the Halt Order is a "public use" –to reduce the risk of increased homelessness, and thus reduce the risk of COVID-19 spread.

151.    Despite this assertion that the Halt Order is necessary to stop the interstate spread of COVID-19, the Government fails to articulate any factual or scientific basis for the necessity of the national mandate issued in the Halt Order and the Halt Order is, therefore, not reasonable, rationale, or narrowly tailored to further a compelling interest.

152.    If the Halt Order is in fact a government taking of Plaintiffs' property for a public use, the Government must provide Plaintiffs just compensation for their losses resulting from the government taking.

153.    The Halt Order does not provide any compensation to the Plaintiffs for their financial losses resulting from the taking.

154.    The Halt Order does not provide any compensation to the Plaintiffs for their losses of use and enjoyment resulting from the taking.

155.    The Government has not compensated the Plaintiffs, in any way, for this government taking.

156.    Furthermore, and to the contrary, instead of providing the constitutionally required just compensation to owners and managers for this government taking of their property for alleged public use, the Government has instead threatened criminal prosecution against any owner or manager who takes any steps to regain use and enjoyment of his or her property.

157.    Should the Halt Order be deemed a government taking for "private use," the Halt Order is unconstitutional and should be struck down as such.

158.    Should the Halt Order be deemed a government taking for "public use," the constitutionally enshrined principles of justice and fairness require that the Government justly and fairly compensate Plaintiffs for taking and occupying their property, for lost income, use, and enjoyment stemming therefrom.

159.    In either event, the Halt Order violates Plaintiffs' rights guaranteed by the Takings Clause of the Fifth Amendment of the Constitution.

160.    As a direct and proximate result of the Halt Order, the Government has taken and occupied Plaintiffs' property, depriving each of the use and economic benefit of their property currently being held by defaulting tenants and to which Plaintiffs are lawfully entitled under Tennessee law, all without just compensation from the Government.

161.    Plaintiffs seek a declaration by this Honorable Court that the Halt Order constitutes a Government taking without just compensation in violation of the Takings Clause of the Fifth Amendment to the Constitution.

162.    Plaintiffs are entitled to preliminary and permanent injunctive relief enjoining the Defendants from enforcing the Halt Order against the Plaintiffs.

<u>C</u><small>OUNT</small> <u>III</u>: <u>V</u><small>IOLATION OF</small> <u>S</u><small>UBSTANTIVE</small> <u>D</u><small>UE</small> <u>P</small>ROCESS</small>

163.    Plaintiffs hereby reallege and reassert each of the foregoing paragraphs of the Complaint as if set forth herein verbatim.

164.    The Fifth Amendment to the Constitution provides that: "*No person shall…be deprived of life, liberty, or property without due process of law*." U.S. Const. Amend. V.

165.    Plaintiffs have protected property interests under Tennessee law with respect to the Units currently occupied by these non-paying, delinquent, and defaulting tenants.

166.    Plaintiffs are being deprived use and enjoyment of their property by the Halt Order, as, but for the Halt Order, Plaintiffs would be lawfully entitled to access and possess their property currently occupied by these non-paying, delinquent, and defaulting tenants.

167.    The Due Process Clause "*clothes individuals with the right to both substantive and procedural due process*." *United States v. Salerno*, 481 U.S. 739, 746 (1987).

168.    The doctrine of Substantive Due Process provides that governmental deprivations of life, liberty, or property are subject to limitations regardless of the adequacy of the procedures employed.  *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).

169.    Substantive Due Process protects individuals from the exercise of power without any reasonable justification even in the service of a legitimate governmental objective.  *City of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

170.    The doctrine of Substantive Due Process precludes Government from enacting orders that are arbitrary, wrongful, irrational, or not narrowly defined with rational bases.

171.    The purported statutory justification for the Halt Order is 42 U.S.C. § 264, which provides in relevant part:

> *The Surgeon General, with the approval of the Secretary, is authorized to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or*

> possession into any other State or possession.  For purposes of carrying out
> and enforcing such regulations, the Surgeon General may provide for such
> inspection, fumigation, disinfection, sanitation, pest extermination,
> destruction of animals or articles found to be so infected or contaminated
> as to be sources of dangerous infection to human beings, and other
> measures, as in his judgment may be
> necessary.

> 42 U.S.C. § 264(a)

172.   The purported regulatory justification for the Halt Order is 42 CFR § 70.2 which

provides in relevant part:

> Whenever the Director of the Center for Disease Control and Prevention
> determines that the measures taken by health authorities of any State or
> possession (including political subdivisions thereof) are insufficient to
> prevent the spread of any of the communicable diseases from such State or
> possession to any other State or possession, he/she may take such measures
> to prevent such spread of the diseases as he/she deems reasonably necessary,
> including inspection, fumigation, disinfection, sanitation, pest
> extermination, and destruction of animals or articles believed to be sources
> of infection.

> 42 C.F.R. § 70.2

173.   Based upon the purported regulatory and statutory justification, the Halt Order is

arbitrary, wrongful, and irrational, since there is no rational basis to conclude that the CDC, HUD,

or HHS, have such sweeping authority under 42 U.S.C. § 264 or 42 CFR § 70.2 as to deprive

Plaintiffs of the use and benefit of their property for these purposes.

174.   The CDC, HUD, and HHS interpret 42 USC § 264 and 42 CFR § 70.2 to allow the

seizure of property reasonably believed to be infected or contaminated by a communicable disease

or dangerous infection.

175.   This interpretation is not consistent with the clear and unambiguous language of

42 USC § 264 and 42 CFR § 70.2 which contains an exclusive and exhaustive list of permissible

government actions.

176.   Nevertheless, the Halt Order as promulgated is not even limited to the CDC, HUD, and HHS interpretation.

177.   The Halt Order precludes Plaintiffs from evicting non-paying, delinquent, and defaulting tenants occupying Plaintiffs' property even without claim —let alone evidence in support of such a claim— that the non-paying, delinquent, and defaulting tenant to be evicted has been diagnosed with COVID-19, or that the property subject to the Halt Order has been contaminated with COVID-19.  As such, the Halt Order is an irrational and  wrongful exercise by the CDC, HUD, and HHS of powers granted them by 42 U.S.C. § 264 and 42 C.F. R. § 70.2.

178.   The CDC, HUD, and HHS have implemented the Halt Order banning Plaintiffs from evicting non-paying, delinquent, and defaulting tenants unlawfully residing in Units within the Western District of Tennessee (and throughout the United States) based upon a finding that COVID-19 rates in New York City rival the 1918 flu.

179.   This Halt Order was decreed without any regard to the fact that the infection rate in New York City, the population density of New York City, and the number of homeless in New York City is materially different than within the Western District of Tennessee.

180.   The Halt Order offers no data or evidence to even suggest –let alone data or evidence that demonstrates– that the far lower infection rate in the Western District of Tennessee as compared to that of New York City would be at all impacted if Plaintiffs in the Western District of Tennessee evicted non-paying, delinquent, and defaulting tenants.

181.   To provide a sweeping national ban on Plaintiffs, and other property owners and managers nationwide, from evicting non-paying, delinquent, and defaulting tenants throughout the country based only upon data from New York City, and ignoring relevant data from other parts of the country, is a wrongful and arbitrary exercise of  powers even under 42 U.S.C. § 264 and 42 C.F.R. § 70.2.

182.    By their terms 42 U.S.C. § 264 and 42 C.F.R. § 70.2 provide for the regulation of contaminated articles and animals but do not confer any authority on the CDC to regulate real property, nor does it confer authority on the CDC to regulate non-contaminated and non-infected persons and premises, particularly those confined to intrastate disposition

183.    The Halt Order is thus a wrongful and arbitrary exercise of executive power, not grounded in law.

184.    The Halt Order violates Plaintiffs' constitutionally protected rights to substantive due process.

185.    As a direct and proximate result of the Halt Order, Plaintiffs have been deprived of the use and benefit of their property currently being held by non-paying, delinquent, and defaulting tenants and to which Plaintiffs are lawfully entitled under Tennessee law, all without substantive due process of law, in violation of the Fifth Amendment to the Constitution.

186.    Plaintiffs seek a declaration by this Honorable Court that the Halt Order violates Plaintiffs' substantive due process, in violation of the Fifth Amendment to the Constitution.

187.    Plaintiffs are entitled to preliminary and permanent injunctive relief enjoining the Defendants from enforcing the Halt Order against the Plaintiffs.

## COUNT IV: VIOLATION OF PROCEDURAL DUE PROCESS

188.    Plaintiffs hereby reallege and reassert each of the foregoing paragraphs of the Complaint as if set forth herein verbatim.

189.    As stated previously, the Fifth Amendment to the Constitution provides that: "*No person shall…be deprived of life, liberty, or property without due process of law.*" U.S. Const. Amend. V.

190.    Procedural due process requires that the Government provide notice and an opportunity to be heard before depriving a person of a property interest. *Warren v. City of Athens Ohio,* 411 F.3d 697, 708 (6th Cir. 2005).

191.    The Halt Order deprives Plaintiffs of their property rights in the Units they own which are being occupied under a lease agreement by non-paying, delinquent, and defaulting tenants, without affording the Plaintiffs an opportunity to a hearing at which the factfinder could determine:

(a)    whether the non-paying, delinquent, and defaulting tenant is a "covered person" under the Halt Order as a matter of law;

(b)    whether the Declaration form submitted by the non-paying, delinquent, and defaulting tenant is true and accurate in all respects as required under the Halt Order;

(c)    whether evidence exists that contradicts the Declaration form submitted by the non-paying, delinquent, and defaulting tenant;

(d)    on a month-by-month basis beginning September 4, 2020 and continuing for the duration of the Halt Order, whether there has been any material change in the non-paying, delinquent, and defaulting tenant's circumstances which would change his or her status as a "covered person" under the Halt Order as a matter of law; and/or.

(e)    whether Plaintiffs' eviction of the non-paying, delinquent, and defaulting tenant would in fact materially increase the risk of spread of COVID-19 in the Western District of Tennessee.

192.    Instead, under the Halt Order, once a Declaration is delivered to the owner or manager by the non-paying, delinquent, and defaulting tenant, the Halt Order forbids the owner or manager from taking any steps to evict the non-paying, delinquent, and defaulting tenant, without a hearing, for four (4) months - through December 31, 2020.

193.     The Halt Order is vague and ambiguous and is therefore void for vagueness.

194.     The Halt Order violates Plaintiffs' constitutionally protected rights to procedural due process.

195.     As a direct and proximate result of the Halt Order, Plaintiffs have been deprived of the use and benefit of their property currently being held by non-paying, delinquent, and defaulting tenants and to which Plaintiffs are lawfully entitled under Tennessee law, all without procedural due process of law, in violation of the Fifth Amendment to the Constitution.

196.     Plaintiffs seek a declaration by this Honorable Court that the Halt Order violates Plaintiffs' procedural due process, in violation of the Fifth Amendment to the Constitution.

197.     Plaintiffs are entitled to preliminary and permanent injunctive relief enjoining the Defendants from enforcing the Halt Order against the Plaintiffs.

## COUNT V: VIOLATION OF THE TENTH AMENDMENT

198.     Plaintiffs hereby reallege and reassert each of the foregoing paragraphs of the Complaint as if set forth herein verbatim.

199.     The Tenth Amendment to the Constitution provides: "*The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.*"

200.     42 U.S.C. § 264(a), only authorizes the CDC to make and enforce regulations that "*provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary.*"

201.     42 C.F.R. § 70.2, only authorizes the CDC to "*take measures to prevent such spread of the diseases as he/she deems reasonably necessary, including inspection, fumigation,*

36

*disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection.*"

202.    Nothing in either statute or regulation purports to give the CDC, HUD, or HHS the authority to issue an eviction-moratorium for owners and managers in the Western District of Tennessee that can preempt the URLTA.

203.    Nothing in either statute or regulation purports to give the CDC, HUD, or HHS the authority to preempt the Contracts Clause of Article I, Section 10 of the Constitution, the Contracts Clauses of the Tennessee State Constitution, or to otherwise preempt Tennessee law protecting the impairment or obligations of private contracts.

204.    Nothing in the relevant statutes or regulations gives the CDC, HUD, or HHS the authority to order a nationwide eviction-moratorium "*to temporarily halt residential evictions to prevent the further spread of COVID-19,*" CDC Order, 85 Fed. Reg. at 55292, because the CDC's authority is confined to undertaking measures providing for "*inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings*." 42 U.S.C. § 264(a); 42 C.F.R. § 70.2.

205.    Although "state laws can be pre-empted by federal regulations as well as by federal statutes," *Hillsborough County, Fla. v. Automated Medical Lab, Inc.*, 471 U.S. 707, 713 (1985), 42 U.S.C. § 264 contains a savings clause, which states: "*Nothing in this section or section 266 of this title, or the regulations promulgated under such sections, may be construed as superseding any provision under State law (including regulations and including provisions established by political subdivisions of States), except to the extent that such a provision conflicts with an exercise of Federal authority under this section or section 266 of this title.*" 42 U.S.C. § 264(e).

206.   In other words, the CDC, HUD, and HHS are statutorily and expressly de-authorized from issuing orders such as the Halt Order as the Halt Order seeks to supersede Tennessee's URLTA and Tennessee law relating to enforceability and impairment of contracts.

207.   Tennessee's URLTA and laws relating to non-impairment of contracts do not conflict with the CDC's authority to regulate "*inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings.*" 42 U.S.C. § 264(a).

208.   Tennessee's URLTA and laws relating to non-impairment of contracts "has long been regarded as a virtually exclusive province of the States upon which the federal government cannot intrude. *Sosna v. Iowa*, 419 U.S. 393, 404 (1975).

209.   The Halt Order displaces applicable Tennessee law and authority over residential evictions and real property rights and therefore violates the Tenth Amendment.

210.   Moreover, under the Tenth Amendment and its Anti-Commandeering Doctrine, neither the CDC, HUD, nor HHS have the authority to commandeer Tennessee resources to achieve federal policy objectives or commandeer Tennessee officers to execute federal mandates.

211.   The Halt Order impermissibly commandeers Tennessee state courts and Tennessee state officers to act as arms of the CDC, HUD, and/or HHS and impermissibly commandeers Tennessee state courts and Tennessee state officers to apply, enforce, and implement an unconstitutional federal mandate. *New York v. United States*, 505 U.S. 144 (1992); *Printz v. United States*, 521 U.S. 898 (1997).

212.   Neither the CDC, HUD, nor HHS have the authority to:

(a)   order Tennessee state courts not to process residential evictions duly compliant with the URLTA;

38

(b)      to "compel the States to … administer a federal regulatory program." *New York v. United States*, 504 U.S. at 188;

(c)      to "*halt*" pending or forthcoming Tennessee state adjudicatory proceedings; and/or

(d)      to modify Tennessee state judicial processes by dictating that a Declaration executed by a non-paying, delinquent, and defaulting tenant "*shall be adequate proof or otherwise suffice to halt or suspend the judicial eviction action*."

213.    Plaintiffs are entitled to declaration by this Honorable Court that the Halt Order violates the Tenth Amendment and its Anti-Commandeering Doctrine.

214.    Plaintiffs are entitled to preliminary and permanent injunctive relief enjoining the Defendants from enforcing the Halt Order against the Plaintiffs.

### COUNT VI: VIOLATION OF THE SUPREMACY CLAUSE

215.    Plaintiffs hereby reallege and reassert each of the foregoing paragraphs of the Complaint as if set forth herein verbatim.

216.    Article VI, Clause 2 of the Constitution provides: "*This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding.*"

217.    The Supremacy Clause grants "supreme" status only to the "*Laws* of the United States which shall be made *in Pursuance thereof*," i.e. in pursuance of "*This Constitution*." U.S. Const. Art. VI, cl. 2 (emphasis added)." *Id.* (emphasis added).

218.    The conditional nature of the Supremacy Clause accords supremacy to federal statutes or regulations made "*in Pursuance of*" the Constitution.

219.    "[A]n agency literally has no power to act, let alone to pre-empt the validly enacted legislation of a sovereign State, unless and until Congress confers power upon it." *New York v. FERC*, 535 U.S. 1, 18 (2002).

220.    "[P]reemption takes place only when and if the agency is acting within the scope of its congressionally delegated authority." *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1679 (2019).

221.    Neither the CDC, HUD, nor HHS has identified any act of Congress that demonstrates that the issuance of the Halt Order is within the scope of some congressionally delegated authority to impose a restriction on residential evictions.

222.    Neither the CDC, HUD, nor HHS has identified any act of Congress that demonstrates that the issuance of the Halt Order is within the scope of some congressionally delegated authority to impose eviction moratoriums across the United States.

223.    Indeed, Section 4024 of the Cares Act, which did in fact impose a Congressionally authorized temporary moratorium on evictions for Covered Properties, specifically and intentionally did not delegate any authority to any agency, much less to the CDC, HUD, or HHS.

224.    The failure by the CDC, HUD, and HHS to establish the requisite authoritative link between relevant federal statute and the authority to issue the Halt Order, makes these agencies' ability to invoke the Supremacy Clause and deprive Plaintiffs of their rights under Tennessee state law exceedingly weak if not fatal.

225.    Plaintiffs are entitled to declaration by this Honorable Court that the Halt Order violates the Supremacy Clause.

226.    Plaintiffs are entitled to preliminary and permanent injunctive relief enjoining the Defendants from enforcing the Halt Order against the Plaintiffs.

## COUNT VII: UNLAWFUL SUSPENSION OF LAW

227.    Plaintiffs hereby reallege and reassert each of the foregoing paragraphs of the Complaint as if set forth herein verbatim.

228.    Evictions are a function of the police power of the states.  *Cf. Edgar A. Levy Leasing Co. v. Siegel*, 258 U.S. 242, 247 (1922) (considering the New York legislature's authority to enact emergency housing laws under the state's police power).

229.    In Tennessee, an owner's or manager's rights and remedies upon a material breach of the lease agreement, including the right to an eviction and to recover possession based on nonpayment of rent, are governed by a comprehensive statutory scheme. T.C.A.§ 66-28-512; § 29-18-104; §§ 29-18-125, 126 , et al.

230.    The Halt Order purports to waive or suspend the duly enacted laws that govern residential evictions in the State of Tennessee.

231.    Neither the CDC, HUD, nor HHS has the authority to waive, dispense with, or suspend duly enacted state laws. *Baker v. Carr*, 369 U.S. 186, 244 n.2 (1962) ("No tribunal or department in our system of governments ever can be lawfully authorized to dispense with the laws, like some of the tyrannical Stuarts, or to repeal, or abolish, or suspend the whole body of them[.]") (quoting *Luther v. Borden*, 48 U.S. 1, 69 (1849) (Woodbury, J., dissenting)).

232.    To the contrary, the Constitution expressly forbids the Executive Branch from suspending State law.

233.    The Constitutional doctrine of separation of powers precludes the suspension of State law through federal executive action, as it would effect a merger of the executive and legislative powers.

234.    The CDC has not identified any act of Congress that delegated authority to impose the Halt Order.

41

235.     Section 264(a) authorizes the CDC only to make and enforce regulations that "*provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary.*"

236.     With no applicable grant of statutory authority to suspend laws, neither the CDC, HUD, nor HHS has authority to do anything to impede or diminish Tennessee's comprehensive laws governing real property interests and evictions.  *See Home Bldg & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 425 (1934) ("Emergency does not create power. Emergency does not increase granted power or remove or diminish the restrictions imposed upon power granted or reserved.").

237.     Because the CDC could not lawfully waive the application of Tennessee's laws governing evictions, the Halt Order is void *ab initio* and must fail.

238.     Plaintiffs are entitled to declaration by this Honorable Court that the Halt Order constitutes an unlawful suspension of law.

239.     Plaintiffs are entitled to preliminary and permanent injunctive relief enjoining the Defendants from enforcing the Halt Order against the Plaintiffs.

### COUNT VIII: VIOLATION OF PLAINTIFFS' RIGHTS TO ACCESS THE JUDICIARY

240.     Plaintiffs hereby reallege and reassert each of the foregoing paragraphs of the Complaint as if set forth herein verbatim.

241.     The Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth and Fourteenth Amendment Due Process Clauses and the Fourteenth Amendment's Equal Protection Clause, collectively provide a federal constitutional right to Plaintiffs to access the courts. *Christopher v. Harbury*, 536 U.S. 403, 415, 415 n. 12 (2002).

242.     No state actor may systemically frustrate a plaintiff "in preparing and filing suits" by foreclosing a particular type of relief. *Id*. at 413.

42

238.    In the Western District of Tennessee, a Forcible Entry and Detainer (FED) Warrant under T.C.A. § 66-28-512 and § 29-18-104 is an owner's or manager's sole means of reacquiring possession of his or her Unit from a non-paying, delinquent, and defaulting tenant.

239.    In the Western District of Tennessee, any self-help exercised by an owner or manager to gain possession of a Unit from a non-paying, delinquent, and defaulting tenant is wholly unlawful and subjects the owner or manager to both compensatory and punitive damages under T.C.A. § 66-28-504.

240.    Plaintiffs are entitled under the lease agreement, URLTA and general contract principles of Tennessee law, to file a Forcible Entry and Detainer (FED) Warrant with the Shelby County Court and to obtain a Writ of Possession under T.C.A. §§ 29-18-125, 126.

241.    Plaintiffs all have tenants that are in material breach of their lease agreements for non-payment of rent and/or are unlawfully holding over in possession of the Units after the lease term has expired.

242.    These tenants have no defenses to their material breaches and delinquencies other than the Halt Order.

243.    By operation of the Halt Order, Plaintiffs are unable to access the Shelby County Courts to obtain a possessory judgment under T.C.A. § 66-28-512 and § 29-18-104, nor are they able to obtain a Writ of Possession pursuant to T.C.A. §§ 29-18-125, 126.

244.    As a direct and proximate result of the Halt Order, Plaintiffs have no ability to legally dispossess tenants for non-payment, delinquency, and default and re-gain possession of their Units.

245.    The Courts of Shelby County, including the Shelby County General Sessions Court, interpret the Halt Order as a complete bar to proceeding on a forcible entry and detainer (eviction) action.

246.     The judges of the Shelby County General Sessions and Circuit Court have represented to landowners, including Plaintiffs (through counsel), that the Halt Order acts as a complete bar to judicial action on any forcible entry and detainer action implicating the Halt Order vis-à-vis the Declaration(s).

247.     Plaintiffs are entitled to declaration by this Honorable Court that the Halt Order systemically frustrates their right to access the Court and forecloses necessary relief.

248.     Plaintiffs are further entitled to declaration by this Honorable Court that the Halt Order violates their federal constitutional right to access the courts.

249.     Plaintiffs are entitled to preliminary and permanent injunctive relief enjoining the Defendants from enforcing the Halt Order against the Plaintiffs.

## COUNT IX: REQUEST FOR DECLARATORY JUDGMENT AND RELIEF

250.     Plaintiffs hereby reallege and reassert each of the foregoing paragraphs of the Complaint as if set forth herein verbatim.

251.     Title 28 Section 2201 of the United States Code Provides:

> *In a case of actual controversy within its jurisdiction…, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.*

28 U.S.C. § 2201

252.     There exists an actual case in controversy between the Plaintiffs and Defendants in this cause.

253.     The Declaratory Judgment Act, 28 U.S.C. § 2201, allows those threatened with violation of government regulation and/or constitutionally protected rights to seek a declaration of the permissibility and constitutionality of the disputed governmental action before potentially sustaining un-compensable damages.  *Eastern Enterprises v. Apfel,* 524 U.S. 498, 521 (1998).

44

254.     The Government, through the Halt Order, has violated the Administrative Procedure Act.

255.     The Government, through the Halt Order, has violated Plaintiffs' constitutional rights and, among things, taken their property and property rights causing Plaintiffs' un-compensable damages.

256.     Because of the Government's rights of immunity, Plaintiffs cannot seek monetary recovery from the Government for the damages Plaintiffs have sustained, and are sustaining, as a result of the Halt Order.

257.     Moreover, the Halt Order violates the Administrative Procedure Act and Plaintiffs' constitutional rights by threatening criminal prosecution against Plaintiffs if any steps are taken by Plaintiffs to protect their rights and their own property and property rights and/or to diminish the damages they have sustained, and are sustaining, as a result of the Halt Order

258.     Plaintiffs' only relief can be found in this Honorable Court's declaration that the Halt Order violates the Administrative Procedure Act and/or Plaintiffs' constitutional  rights and therefore, the Halt Order is unenforceable.

259.     Without such immediate declaration by this Honorable Court, Plaintiffs will sustain even greater un-compensable damages resulting from the enforcement of the Halt Order.

260.     For the reasons stated herein, Plaintiffs are entitled to a declaration that the Halt Order violates the Administrative Procedure Act and must be struck down, vacated, and of no further force and effect.

261.     For the reasons stated herein, Plaintiffs are likewise entitled to a declaration that the Halt Order violates the Takings Clause, Substantive and Procedural Due Process Rights of Plaintiffs as guaranteed by the Fifth Amendment to the Constitution, the Tenth Amendment to the

Constitution and its Anti-Commandeering Doctrine, and the Supremacy Clause and constitutes an unlawful suspension of law and violation of Plaintiffs' rights to access the judiciary.

262.    The Halt Order should be declared unlawful, unenforceable, of no force and effect and void *ab initio*.

<u>**COUNT X: REQUEST FOR PERMANENT INJUNCTION OR IN THE ALTERNATIVE FOR PRELIMINARY INJUNCTION**</u>

263.    Plaintiffs hereby reallege and reassert each of the foregoing paragraphs of the Complaint as if set forth herein verbatim.

264.    Plaintiffs are likely to succeed on the merits of this First Amended Complaint for the reasons set forth in detail herein.

265.    The Halt Order violates the Administrative Procedure Act.

266.    The Halt Order is unconstitutional.

267.     The Halt Order should be declared unlawful, unenforceable, of no force and effect and void *ab initio*.

268.    In the alternative, this Honorable Court should issue a permanent injunction suspending operation of the Halt Order and enjoin Defendants from enforcing any element of the Halt Order until further Order of this Honorable Court.

269.    As a direct and proximate result of the Halt Order, Plaintiffs are sustaining irreparable harm by the Government's violation of the Administrative Procedure Act and Plaintiffs' constitutional rights and rights to possession, use, and enjoyment of their property.

270.    As a direct and proximate result of the Halt Order, Plaintiffs are sustaining irreparable loss and damage.

271.    The Halt Order's provision that non-paying, delinquent, and defaulting tenants "*are still required to pay rent*" and that Plaintiffs may recover the prior ten (10) months of non-payment rent beginning in January 2021 is wholly illusory.

272.     These Plaintiffs are being irreparably damaged by denial of their right to possess their Units.

273.     The public interest will be served by issuance of an injunction, as the Government's actions constitute a potentially egregious violation of the Administrative Procedure Act and the rights and protections afforded under the Constitution.

274.     Issuance of an injunction will not cause substantial harm to others as it will vindicate the Administrative Procedure Act and the due process requirements of the Administrative Procedure Act.

275.     Issuance of an injunction will likewise not cause substantial harm to tenants as each will still have every legal right to remain in the Units for as long as each performs as required under the lease agreements and the URLTA.

276.     Moreover, there is no evidence to support the Government's claim that the eviction of non-paying, delinquent, and defaulting tenants from Units in the Western District of Tennessee will result in homelessness or that it will increase the spread of COVID-19.

277.     The public interest will be served by issuance of an injunction, as the Government's actions violate the Administrative Procedure Act and the due process requirements contained therein and constitute a potentially egregious violation of the rights and protections afforded under the Constitution.

278.     Failure to issue an injunction threatens to destabilize the housing market and reduce available housing.

279.     In the alternative, this Honorable Court should issue a preliminary injunction suspending operation of the Halt Order and enjoin Defendants from enforcing any element of the Halt Order until further Order of this Honorable Court.

280.    Rule 65 of the Federal Rules of Civil Procedure allows this Honorable Court to issue a preliminary injunction upon notice to the adverse parties.  *See also McNeilly v. Land*, 684 F.3d 611 (6th Cir. 2012).

281.    Plaintiffs ask this Honorable Court to strike down the Halt Order as unlawful, unenforceable, of no force and effect and void *ab initio*, or in the alternative, to issue a permanent injunction suspending operation of the Halt Order and enjoin Defendants from enforcing any element of the Halt Order until further Order of this Honorable Court, or in the alternative, to issue a preliminary injunction suspending operation of the Halt Order and enjoin Defendants from enforcing any element of the Halt Order until further Order of this Honorable Court.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that:

1.    That process issue and Defendants be required to answer this Complaint within the time prescribed by law.

2.    This Honorable Court make a declaratory finding and judgment that the Halt Order violates the Administrative Procedure Act and immediately strike down and vacate the Halt Order on that basis.

3.    In addition to or in the alternative, this Honorable Court make a declaratory finding and judgment that the Halt Order violates Plaintiffs' rights guaranteed by the Takings Clause of the Fifth Amendment of the United States Constitution.

4.    In addition to or in the alternative, this Honorable Court make a declaratory finding and judgment that the Halt Order violates Plaintiffs' constitutionally protected rights to substantive due process.

5.    In addition to or in the alternative, this Honorable Court make a declaratory finding and judgment that the Halt Order violates constitutionally protected rights to procedural due process.

6.      In addition to or in the alternative, this Honorable Court make a declaratory finding and judgment that the Halt Order violates Plaintiffs' rights guaranteed by the Tenth Amendment of the United States Constitution.

7.      In addition to or in the alternative, this Honorable Court make a declaratory finding and judgment that the Halt Order violates the Anti-Commandeering Doctrine of the Tenth Amendment of the United States Constitution.

8.      In addition to or in the alternative, this Honorable Court make a declaratory finding and judgment that the Halt Order violates the Supremacy Clause of the United States Constitution.

9.      In addition to or in the alternative, this Honorable Court make a declaratory finding and judgment that the Halt Order constitutes an unlawful suspension of law.

10.      In addition to or in the alternative, this Honorable Court make a declaratory finding and judgment that the Halt Order violates Plaintiffs' constitutionally protected rights to access the judiciary.

11.      In addition to or in the alternative, this Honorable Court make a declaratory finding and judgment that enforcement of any provision of the Halt Order is unconstitutional.

12.      This Honorable Court make a declaratory finding and judgment that the Halt Order is over broad.

13.      This Honorable Court make a declaratory finding and judgment that the Halt Order is void for vagueness.

14.      This Honorable Court find and adjudge that the Halt Order should be (and is) set aside and held unlawful as it is:

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law; and/or

(E) unsupported by substantial evidence.

15.     This Honorable Court promptly conduct a hearing on Plaintiffs' request that the Halt Order be immediately struck down and vacated.

16.     In the event this Honorable Court does not immediately strike down and vacate the Halt Order, this Honorable Court issue a permanent injunction suspending operation of the Halt Order, and enjoining Defendants from enforcing any element of the Halt Order until further Order of this Honorable Court or an adjudication upon the merits.

17.     In the event this Honorable Court does not immediately strike down and vacate the Halt Order or issue a permanent injunction, this Court issue a preliminary injunction suspending operation of the Halt Order, and enjoining Defendants from enforcing any element of the Halt Order until further Order of this Honorable Court or an adjudication upon the merits..

18.     Pursuant to Fed. R. Civ. P. 65, this Honorable Court schedule and conduct a hearing, as soon as practicable and without delay.

19.     For such further relief to which Plaintiffs may be entitled.

Respectfully Submitted,

**GLANKLER BROWN, PLLC**

/s/ S. Joshua Kahane
S. Joshua Kahane (BPR #23726)
jkahane@glankler.com

Aubrey B. Greer (BPR #35613)
agreer@glankler.com

6000 Poplar Avenue, Suite 400
Memphis, Tennessee 38119
Telephone: (901) 525-1322
Facsimile: (901) 525-2389

*Attorneys for Plaintiffs*

50

## <u>CERTIFICATE OF SERVICE</u>

 I hereby certify that on October 8, 2020, a copy of the foregoing First Amended Complaint was served on Leslie Cooper Vigen, Esq., Counsel for the Defendants by electronic mail to Leslie.vigen@usdoj.gov and to Attorney Vigen and each of the Defendants, respectively, by USPS, postage prepaid:

Leslie Cooper Vigen, Esq.
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005

United States Secretary of Housing and Urban Development
c/o Associate General Counsel for Litigation - Room 10258
451 Seventh Street, S.W.
Washington D.C. 20410

Honorable Benjamin S. Carson, M.D.
United States Secretary of Housing and Urban Development
c/o Associate General Counsel for Litigation - Room 10258
451 Seventh Street, S.W.
Washington D.C. 20410

U.S. Department of Justice
950 Pennsylvania Avenue, NW, Room 1111
Washington, D.C. 20530

Honorable United States Attorney General William P. Barr,
U.S. Department of Justice
950 Pennsylvania Avenue, NW, Room 1111
Washington, D.C. 20530

United States Center for Disease Control and Prevention
1600 Clifton Road
Atlanta, Georgia 30333

Honorable Nina B. Witkovski, Acting Chief of Staff
United States Center for Disease Control and Prevention
1600 Clifton Road
Atlanta, Georgia 30333

United States Department of Health & Human Services
200 Independence Avenue, S.W., Room 713-F
Washington, D.C. 20201

Honorable Secretary Alex Azar
United States Department of Health & Human Services
200 Independence Avenue, S.W., Room 713-F
Washington, D.C. 20201

Honorable Vice Admiral Jerome M. Adams, M.D., Surgeon General
United States Department of Health & Human Services
200 Independence Avenue, S.W., Room 713-F
Washington, D.C. 20201

Honorable D. Michael Dunavant,
United States Attorney General for the Western District of Tennessee
U.S. Attorney's Office
167 North Main Street, Suite 800
Memphis, Tennessee 38103

/s/ S. Joshua Kahane
S. Joshua Kahane