**TIGER LILY LLC;**
**HUNTER OAKS APARTMENTS UTAH, LLC;**
**NORTH 22ND FLAT, LLC;**
**CHERRY HILL GARDENS LLC;**
**CHURCHILL TOWNHOMES LLC; and**
**BRITTANY RAILEY**
**APPLEWOOD PROPERTY MANAGEMENT, LLC;**

    Plaintiffs

vs.                                                      No: 2:20-cv-2692

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
and **BENJAMIN S. CARSON, M.D.** in his official capacity as United States Secretary of Housing and Urban Development;
**UNITED STATES DEPARTMENT OF JUSTICE**
and **WILLIAM P. BARR**, in his official capacity as United States Attorney General;
**UNITED STATES CENTER FOR DISEASE CONTROL AND PREVENTION**
and **NINA B. WITKOFSKY,** in her official capacity as Acting Chief of Staff of the Center for Disease Control and Prevention;
**UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES**
and **ALEX AZAR,** in his official capacity as United States Secretary of Health and Human Services;
**VICE ADMIRAL JEROME M. ADAMS, M.D.**, in his official capacity as United States Surgeon General; and
**D. MICHAEL DUNAVANT,** in his official capacity as United States Attorney General for the Western District of Tennessee

    Defendants

### SUPPLEMENT TO PLAINTIFFS' PENDING MOTION AND MEMORANDUM OF LAW AND ARGUMENT IN SUPPORT OF THEIR REQUEST FOR EMERGENCY HEARING AND INJUNCTIVE RELIEF

## INTRODUCTION

On September 15, 2020, Plaintiffs filed their *Complaint* (D.E. 1) seeking relief from the *Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19* (the "Halt Order"). On September 27, 2020, Plaintiffs filed their *Motion and Application for Emergency Hearing and Preliminary Injunction* (the "Motion") (D.E. 12), requesting that this Honorable Court set an expedited hearing. On October 8, 2020, Plaintiffs filed their *First Amended Complaint* (D.E. 21), as of right under Fed. R. Civ. P. 15, materially adding explicit allegations for Defendants' violations of the Administrative Procedure Act (the "APA") in both substantive and procedural contexts. The Plaintiffs do not believe that any formal supplementation to the Motion is required as the First Amended Complaint was filed and served well before the Defendants' filed their *Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction* (the "Opposition Memorandum") and before this Honorable Court held its October 14, 2020, Scheduling Conference; however, as a courtesy, and to ensure that the Defendants are prepared to address the full breadth of the Halt Order's legal and constitutional deficiencies as asserted in the First Amended Complaint, Plaintiffs file this short Supplement to specifically request relief from this Honorable Court under 5 U.S.C. § 706(2) for Defendants' violations of the APA.

## SUPPLEMENT TO MOTION AND MEMORANDUM

The CDC's Halt Order is a regulatory action which qualifies as a rule under the APA. As such, to be valid and enforceable, the Halt Order's formulation and issuance must strictly comply with the APA's substantive and procedural requirements. Because the Halt Order materially violates <u>both</u> the substantive and procedural prescriptions of the APA, the Halt Order is *ultra vires* and *void ab initio* and this Honorable Court must find that Halt Order "unlawful" and must be immediately "set aside". 5 U.S.C. § 706(2).

### A. The CDC's Halt Order is a "Rule" as Defined by the APA

In an attempt to bypass the requirements of the APA, the Halt Order proclaims that "[t]his Order is not a rule within the meaning of the Administrative Procedure Act," (D.E. 1-12 at pg. 6); 85 Fed. Reg. 55296. This unilateral proclamation is both wrong and of no legal consequence. Federal agencies, like the CDC, do not themselves define the applicability of statutes to their own actions and rulemaking, nor do they have any authority to unilaterally characterize (or re-characterize as the case may be here) their actions as they see fit. *See Columbia Broad. Sys. v. United States*, 316 US 407, 416 (1942) ("The particular label placed upon it by the [agency] is not necessarily conclusive, for it is the substance of what the [agency] has purported to do and has done which is decisive.").

Under 5 U.S.C. §551(4), the APA defines a rule as any "agency statement of general or particular applicability and future effect designed to <u>implement</u>, <u>interpret</u>, or <u>prescribe law or policy</u>," (emphasis added). Neither the APA generally, nor 5 U.S.C. §551(4) specifically, provides any exemption from this straightforward definition.[1] The Halt Order purports to <u>prescribe and implement</u> a future eviction moratorium of general and nationwide applicability allegedly based upon Congressionally granted authority. The Halt Order is a Rule under the APA.

Because Rules under the APA, like the Halt Order, are quasi-legislative in nature, every Rule is subject to the APA's requirements and subject to judicial review to determine whether it is "arbitrary and capricious"; "contrary to constitutional right"; "in excess of statutory jurisdiction, authority, or limitations"; and/or "without observance of procedure required by law". 5 U.S.C. § 706(2)(A)-(D).

---

[1] The CDC stated it's reasoning for not classifying the Halt Order as an APA rule by stating that, rather than being a rule, the Halt Order is "an emergency action taken under the existing authority of 42 CFR 70.2." (D.E. 1-12 at pg. 6); 85 Fed. Reg. 55296. As discussed elsewhere, 42 C.F.R. 70.2 provides no authority for the CDC's action here, nor does Section 70.2 expressly exempt the Halt Order from the rulemaking process.

### B. The CDC's Halt Order Violates the Substantive Requirements of the APA

The CDC's purported authority to issue the Halt Order is 42 U.S.C. § 264 (the "Enabling Statute")[2]. (D.E. 1-12 at pgs. 3, 7); 85 Fed. Reg. 55293. The Enabling Statute does not expressly delegate authority to the CDC to regulate residential housing markets, real property rights, or to impose a nationwide halt on evictions. As such, the CDC now places an extreme burden on this Honorable Court to determine whether the Halt Order is a reasonable interpretation of the express authority and power granted under the Enabling Statute. The relevant language in the Enabling Statute, upon which the CDC relies, is:

> **The Surgeon General may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings,** *and other measures, as in his judgment may be necessary*.

42 U.S.C. § 264(a). (emphasis added).

It cannot be disputed that the delegated list of powers under the authority cited does not include the regulation of residential housing markets or imposition of a nationwide halt on evictions; instead, the CDC argues that the "other measures" somehow provides it this broad, expansive, almost limitless grant of authority. This alleged expanded authority, as claimed by the CDC, somehow encompasses the CDC's ability to regulate, among other things, residential housing markets, evictions, and real property rights–despite the fact that there is no plausible way to reasonably read the Enabling Statute (or the attendant regulation) as allowing such action. Instead, the well-established, applicable canons of construction, consistently relied by the United

---

[2] The CDC also claims authority under 42 C.F.R. § 70.2. (D.E. 1-12 at pgs. 3, 7); 85 Fed. Reg. 55293. Section 70.2 is nearly a verbatim recitation of the language contained in 42 U.S.C. § 264(a). Thus, to the extent the Plaintiffs make arguments related to the purported authority granted under 42 U.S.C. § 264, such arguments are equally applicable to 42 C.F.R. § 70.2 and Plaintiffs hereby assert such arguments by reference.

States Supreme Court in evaluating statutory interpretation under the "reasonable interpretation" framework make clear that the CDC's argument is fatally and irrefutably flawed.

First, when Congress delegates authority to regulatory agencies, especially when that authority will affect federalism and/or have a significant impact on the economy, Congress will only do so with explicit and unambiguous language. If Congress has not explicitly granted/delegated authority within the Enabling Statute itself, it was not an omission; Congress expressly chose not to grant the authority to the regulatory agency.

Second, the applicable canons of construction vitiate any notion that Congress intended to confer the CDC, the Surgeon General, or HHS with authority to regulate real property rights and/or State law eviction actions. Here, canons of statutory construction, including *ejusdem generis*, *noscitur a sociis*, and constitutional avoidance, must be applied to determine the scope, meaning, breadth, and effect of language such as the "other measures" clause. Under Supreme Court precedent, such terms are inherently narrow and limited.

Finally, the Supreme Court looks to the statutory scheme that contains the phrase at issue to assist in determining the scope and breadth of the delegated authority so delegated. Here, the Enabling Statute is contained within the "Quarantine and Inspection" subsection of 42 U.S.C.[3] which applies only to stopping the spread of disease from contaminated individuals in foreign and interstate travel.

Based on these guiding principles, this Honorable Court must: (1) consider whether the "other measures" clause in 42 U.S.C. § 264(a) includes the sweeping, expansive measures prescribed by the Halt Order; (2) use applicable canons of construction to interpret the "other measures" clause; and (3) examine the contextual relationship between the Halt Order's mandates and "Quarantine and Inspection" laws from which the CDC purports to derive its authority. After

---

[3] 42 U.S.C. §§ 264 – 272.

review, this Honorable Court will undoubtedly find that the Halt Order fails in all of these respects and therefore must be vacated and promptly "set aside." 5 U.S.C. § 706(2)(C).

Moreover, based upon: (i) the weak and unsupported internet citations upon which the CDC bases its sweeping nationwide action; (ii) the enormous economic effect caused by the Halt Order; and (iii) the vagueness and ambiguity of the Halt Order itself, this Honorable Court will also find that the Halt Order is wholly arbitrary and capricious and must be immediately "set aside." 5 U.S.C. § 706(2)(C).

### C. The CDC's Halt Order Violates the Procedural Requirements of the APA

Regulatory action that constitutes a rule under the APA —like the Halt Order— are quasi-legislative in nature and have the force and effect of law despite being promulgated by federal agencies which are neither elected nor answerable to the citizenry. Therefore, Congress saw fit to require that these agencies' actions strictly adhere to certain procedural pre-conditions and mandates enshrined within the APA in order to protect due process and other fundamental rights.

Section 553 of the APA requires that <u>before</u> an agency may <u>implement</u>, <u>interpret</u>, or <u>prescribe law or policy through rulemaking (like the Halt Order),</u> it must provide a notice-and-comment period to the general public. 5 U.S.C. § 553(b). This procedural pre-condition allows those affected by the proposed rule an opportunity to be heard in order for the agency to understand, acknowledge, and address the potential effects of the proposed Rule. The statutory requirement for a notice-and-comment is neither a suggestion nor simply good practice; it is a mandatory due process protection within the APA and without which the regulatory action is necessarily *void ab initio*.[4]

---

[4] Additionally, the failure of an agency to submit to the procedures of 5 U.S.C. § 553(b) is a bar to affording the agency deference in its interpretation of an enabling statute and/or regulation.

Instead of complying with these due process mandates, the CDC chose to wait until the expiration of the eviction protections enacted under the CARES Act on July 24, 2020, and then to wait again —an additional thirty-days until the expiration of the notice period in the CARES Act, which expired August 28, 2020— to, <u>for the first time,</u> promulgate the Halt Order on September 1, 2020 –only three (3) days before its enactment.[5/6]

The Halt Order is therefore, in clear violation of the APA's due process procedural pre-conditions and *void ab initio*. The CDC knew the Halt Order could not stand up to APA scrutiny which is precisely why it sought to erroneously proclaim that the Halt Order is not a Rule.

Recognizing its erroneous proclamation is insufficient to remove the Halt Order from the mandatory due process pre-conditions of the APA, the CDC may seek to excuse this fatal defect under the "good cause" exception; however, "the Government's burden to show that good cause exists is a heavy one—the good cause exception is narrowly construed and only reluctantly countenanced." *United States v. Cain*, 583 F.3d 408, 420 (6th Cir. 2009). For several reasons, the CDC cannot satisfy the required "good cause" consideration. Since it cannot be denied that the Halt Order was promulgated "without observance of procedure required by law," this Honorable Court must "hold unlawful" the Halt Order and ensure that it is vacated and promptly "set aside." 5 U.S.C. § 706(2)(C).

## CONCLUSION

For the reasons discussed in the Motion and Memorandum, as well as those discussed herein, Plaintiffs request that this Honorable Court strike down and set aside the Halt Order, whether under 5 U.S.C. § 706 or otherwise, as unlawful, unenforceable, and of no force and effect

---

[5] 85 Fed. Reg. 55296.
[6] The CDC also purports to have the authority to bypass the APA under the Congressional Review Act ("CRA") by characterizing the Halt Order as a "major rule," (D.E. 1-12 at pg. 6); 85 Fed. Reg. 55296; however, the CDC failed to follow the mandates of the CRA; the CRA provides the CDC no relief.

*ab initio* or, in the alternative, to issue a preliminary injunction staying the effect and enforcement of the Halt Order pending final adjudication by this Honorable Court.

Dated: October 16, 2020

Respectfully Submitted,

**GLANKLER BROWN, PLLC**

/s/ S. Joshua Kahane
S. Joshua Kahane (BPR #23726)
jkahane@glankler.com

Aubrey B. Greer (BPR #35613)
agreer@glankler.com

6000 Poplar Avenue, Suite 400
Memphis, Tennessee 38119
Telephone: (901) 525-1322
Facsimile: (901) 525-2389

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2020, a copy of the foregoing Supplement to Plaintiffs' Motion and Memorandum of Law and Argument in Support of Plaintiffs' Request for Emergency Hearing and Injunctive Relief was served on all parties via the Court's ECF System:

/s/ S. Joshua Kahane