# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

**TIGER LILY LLC;**
**HUNTER OAKS APARTMENTS UTAH, LLC;**
**NORTH 22ND FLAT, LLC;**
**CHERRY HILL GARDENS LLC;**
**CHURCHILL TOWNHOMES LLC;**
**BRITTANY RAILEY; and**
**APPLEWOOD PROPERTY MANAGEMENT, LLC**

     Plaintiffs

**vs.**                                                    **No: 2:20-cv-2692**

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
and **BENJAMIN S. CARSON, M.D.** in his official capacity as United States Secretary of
Housing and Urban Development;
**UNITED STATES DEPARTMENT OF JUSTICE**
and **WILLIAM P. BARR**, in his official capacity as United States Attorney General;
**UNITED STATES CENTER FOR DISEASE CONTROL AND PREVENTION**
and **NINA B. WITKOFSKY,** in her official capacity as Acting Chief of Staff of the Center for
Disease Control and Prevention;
**UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES**
and **ALEX AZAR,** in his official capacity as United States Secretary of Health and Human
Services;
**VICE ADMIRAL JEROME M. ADAMS, M.D.**, in his official capacity as United States
Surgeon General; and
**D. MICHAEL DUNAVANT,** in his official capacity as United States Attorney General for the
Western District of Tennessee

     Defendants.

---

# PLAINTIFFS' RESPONSE IN OPPOSITION TO
# NEIGHBORHOOD PRESERVATION INC.'S MOTION TO INTERVENE AND
# UNTIMELY SUPPLEMENT

**COME NOW** Plaintiffs, both joining in the arguments presented by the Defendants (D.E. 32) in opposition to Neighborhood Preservation, Inc.'s (hereinafter "NPI") *Motion to Intervene* and asserting additional arguments for denial of NPI's Motion, hereby file their Response in Opposition to NPI's Motion ("Motion"), (D.E. 25) and untimely *Supplement* ("Supplement"), (D.E. 31).[1]

## **INTRODUCTION**

NPI's only hope to intervene in this litigation is through inducing this learned Court into an emotional, but incorrect, decision in favor of intervention by using the current health crisis as both a sword and a shield. NPI uses this effort to intervene as a sword to attack the Plaintiffs with claims of insensitivity and indifference for those suffering the tragic effects of the COVID pandemic, and NPI this effort to intervene as a shield in furtherance of its strategic efforts to block and obstruct the Court's adjudication of the merits of Plaintiffs' challenges to the Halt Order. Neither NPI, nor the tenants it purports to represent, have any direct legal stake or substantial legal interest in the outcome of Plaintiffs' challenge suit.

This case is not about COVID and, for the record, Plaintiffs concede and stipulate to the inarguable fact that COVID is a serious health crisis whose effects go well beyond mere infection. Since March 2020, the current health crisis and associated economic downturn resulting from COVID has created, for millions of Americans, the prospect of job, income, and home loss, and unique instances of existential uncertainty. More than ever, it is incumbent upon each of us to support our fellow citizens and we join in supporting any <u>lawful</u> efforts that will assist those who

---

[1] As will be discussed in Plaintiffs' Preliminary Objection set out herein, in light of NPI's eleventh hour filing of a "Supplement to its Motion," Plaintiffs' Response must now address both NPI's original Motion and this untimely and irrelevant supplemental pleading. Nevertheless, like its Motion, NPI's Supplement offers no legal basis upon which this Honorable Court should allow the requested intervention and, as such, the Supplement —like the Motion— fails.

are vulnerable and in need[2]; however, any such effort must still conform to our foundational legal principles. An emergency does not suspend the operation of the Constitution and the operation of duly enacted law.

The impact of this health crisis notwithstanding, this case is not a symposium on the gravity and effect of COVID, nor is it a seminar on the impact that evictions might have on tenants and their families. Despite how NPI has tried to characterize this litigation —one in which "landlords aim to begin evictions," as Co-Counsel for NPI articulated to the Commercial Appeal[3]— this case is not about commencing mass evictions. Instead, this litigation is a lawful and necessary challenge to government action that clearly runs afoul of both the Constitution and the Administrative Procedure Act, 5 U.S.C. § 500, *et seq.* (the "APA"). Plaintiffs ask this Honorable Court to decide and to find that the CDC's promulgation of the Halt Order is: (1) unlawful under the APA, and (2) in contravention of clearly established rights guaranteed by the Constitution. Plaintiffs seek no money damages and do not seek to alter any rights conferred by state law, including the leasehold or occupancy rights of tenants.

The Plaintiffs sued only the named party Defendants as they alone promulgated the Halt Order or are otherwise charged with its enforcement. The Defendants possess all the information and expertise that is necessary to offer a defense to Plaintiffs' claims, as it is this precise information and expertise the Defendants purported to base the Halt Order on in the first place. Likewise, the Defendants have full and unfettered access to the resources of the Defendant agencies and to the information that the CDC and related agencies utilized to promulgate the Halt

---

[2] In fact, Counsel for the Plaintiffs has worked cooperatively with NPI, in all respects, to resolve instances of non-payment between tenants and landlords and to preserve tenancies during this pandemic whenever possible.

[3] Evanoff, Ted. "*Hearing Set for Memphis Landlords aiming to Begin Evictions*." Commercial Appeal, Memphis, 15 October 2020.

Order. It is this same information that the Defendants will likely now use to defend the Halt Order. And it is the named party Defendants, and only the named party Defendants, who can modify, change, or retract the Halt Order independent of judicial intervention. No parties beyond the Plaintiffs and Defendants are required for the Court to reach a decision on the constitutionality and lawfulness of the Halt Order. NPI's addition as a party defendant to this litigation will add nothing to the inquiries concerning the CDC's lack of conformity with the APA or the lack of constitutionality of the Halt Order. Indeed, their addition simply adds background noise to an already crowded room –which is precisely what NPI aims to do.

NPI cannot, and has not in either of its pleadings erroneously filed in this matter, articulated any value it suggests it will add to this Honorable Court's inquiry other than its assertions that evictions have a severely negative impact on the economically depressed, that COVID has caused immense economic hardship, and that the  emotional anecdotes of tenants that may be subject to eviction are worthy of empathy and compassion. Though none of this is germane to the inquiry before this Honorable Court, if this is what NPI proposes to add to this litigation, Plaintiffs will stipulate on the record to this, such that NPI need not intervene at all.

To suggest that Plaintiffs be forced to maintain a new legal action against NPI and a group of unnamed individuals as party Defendants —against whom Plaintiffs make no claims, and from whom Plaintiffs seek no relief— would be a grave miscarriage of justice and wholesale misapplication of the relevant rules. It is apparently NPI's position that anyone who rents residential property in the United States has the right to intervene in this action. Problematically, by the same token, every landowner would then have the right to intervene this case. At the end of the day, the vast majority of Americans, and every member of the real estate industry, would either be a plaintiff or defendant in this litigation, and their inclusion would obstruct the timely

adjudication of the matter and render the instant case entirely unworkable. But this is precisely the type of frustration that NPI seeks to create.

NPI argues that the class of persons it obliquely references in its Motion and untimely Supplement, which NPI purports to represent —though never specifically identifies— will be "*dispossessed…and the rights of the class to stable housing …disrupted*" (D.E. 25 at pg. 4).[4] NPI's strategy of clouding the matters actually in controversy is calculated to make this Honorable Court emotionally uncomfortable enough that it might hesitate in correctly applying the law and reaching the correct conclusion. Plaintiffs are confident that this Honorable Court will not fall into NPI's trap.

NPI's argument that this litigation will lead to "*dispossess[ion]…and the rights of the class to stable housing …disrupted*," is both irrelevant to the subject matter of this litigation and a patently false diversionary tactic. No tenant will ever be deprived of any right to stable housing as a result of this litigation or a ruling by this Honorable Court. Rights in real property are dictated exclusively by state law. Each and every tenant will continue to have safe and quality housing in exchange for performance under the terms of his or her lease contract pursuant to Tennessee law.

---

[4] NPI does not actually "represent" any of the alleged tenants it seeks to join to this action as that is outside the scope of NPI's purpose, nor is NPI itself a tenant potentially covered by the Halt Order. NPI states that it is a "non-profit, tax exempt organization whose mission is to promote policies and programs that resolve systemic causes of blighted properties in Memphis and Shelby County, Tennessee by reducing the number of blighted properties, improving the health of economically distressed neighborhoods and revitalizing or repurposing targeted properties." (D.E. 25 at pg. 3. It is abundantly clear that NPI is an organization dedicated to the noble pursuit of reducing blight in Memphis neighborhoods. NPI is not an advocacy group for tenants and has no membership, least of all a membership comprised of the tenants it references. Indeed, NPI has no "members" as such term is countenanced by the case law on associational standing. Thus, NPI cannot "represent" the putative tenants here. *See Green Party of Tennessee v. Hargett*, No. 2:13-CV-224, 2014 WL 11638572, at *11 (E.D. Tenn. Feb. 20, 2014) (finding that the Green Party had no identifiable members and its allegation that it "represented" progressive voters was insufficient for associational standing purposes).

For those tenants against whom an allegation of material breach of the lease contract for non-payment is asserted, the tenant will continue to be afforded: (i) the full panoply of due process vis-a-vis a trial before the Shelby County General Sessions Court; (ii) appellate rights for *de novo* review before the Shelby County Circuit Court; (iii) and debtors' rights before the United States Bankruptcy Court. NPI can continue to provide counsel and assistance to each one of these tenants in each one of these proceedings. This Honorable Court's action on the Halt Order does not alter any of these, nor any other rights or legal remedies, available to a tenant prior to the effective date of the Halt Order.

Moreover, once this Honorable Court finds the Halt Order as void *ab initio*, nothing would stop the Defendants —or the United States Congress for that matter— from promulgating a new, lawful order that would provide tenants new or additional relief from the economic challenges from which they have suffered as a result of the pandemic. In this sense, NPI should be seeking to preserve these tenants' rights "*to stable housing during the pandemic*" by using its efforts and resources to lobby congressional representatives to pass meaningful and comprehensive relief. In either event, NPI should not be inappropriately trying to impose itself in this litigation where it clearly does not belong.

NPI further argues that "*[d]enying intervention would effectively leave [NPI] with no forum in which to argue the validity and application of the Halt Order*"[5]; however, this is a non-sensical red herring. NPI has no standing —in any court— to argue the validity and constitutionality of the Halt Order. It is the named party Defendants alone who may advocate the lawfulness and constitutionality of the Halt Order as it was the named party Defendants alone who promulgated the Halt Order and who are charged with enforcing the Halt Order. NPI has no right

---

[5] D.E. 25 at pg. 8

to stand in as a party Defendant for the CDC (and the other Defendants) and argue that, *inter alia*, the CDC complied with the substantive and procedural requirements of the APA in issuing the Halt Order or that the Halt Order is constitutionally appropriate.  If NPI is so insistent on weighing in on the substantive and procedural requirements of the APA and/or the Halt Order's constitutionality, our Federal Rules and jurisprudence offer NPI a mechanism to do so by filing a motion for permission to tender an *amicus* brief, as the Defendants suggest in their Response in opposition to NPI's Motion to Intervene.[6]  Such has been undertaken by other tenant advocacy groups in a similar case in the Northern District of Georgia.[7]  In either event, intervention by NPI as a party Defendant is wholly improper in all respects.

The only issue before this Honorable Court is whether the CDC can issue —and if so, correctly issued— the Halt Order, nothing more.  NPI's attempt to portray this case as a referendum on tenants' rights and the penumbra of effects of COVID is wholly improper.  To give NPI full rights, privileges, and standing as a named defendant party to this litigation would be a gross perversion of the rules and case precedent.

NPI's Motion to Intervene must be DENIED.

<u>**SUMMARY OF LEGAL ARGUMENT**</u>

In addition to the arguments laid out in the introduction above, application of relevant law to Fed. R. Civ. P. 24(a)(2) makes clear that under both *Michigan State AFL-CIO v. Miller,* 103 F.3d 1240 (6th Cir. 1997) and *United States v. Tennessee*, 260 F.3d 587 (6th Cir. 2001) NPI cannot be afforded intervention as of right.[8]  The mere fact that if the Halt Order is struck down or

---

[6] D.E. 32 at pg. 2, 9

[7] *See Brown v. Azar.*, Case No. 1:20-cv-3702-JPB, United States District Court for the Northern District of Georgia

[8] *See Athens Lumber Co. v. Federal Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir.1982) (denying intervention of labor union in case where original plaintiff challenged the Federal Election Commission and holding that the union "lacked a direct, substantial, legally protectable

otherwise enjoined, it will result in a reversion to existing Tennessee state law, does not constitute for NPI a direct stake in the litigation. As such, NPI lacks "substantial legal interest" in this litigation, and therefore, NPI's Motion to Intervene must be DENIED. Moreover, there is no legitimate argument that NPI's interests will be impaired if NPI were denied intervention or that NPI lacks adequate representation by the Defendants and their Counsel. The named Party Defendants hereto are more than capable of defending the Halt Order and NPI's presence will add nothing to the inquiry. Lastly, there is a reasonable question as to whether NPI's Motion was filed timely and whether the delay has prejudiced Plaintiffs.

Plaintiffs need only negate one (1) of the four (4) required elements under Fed. R. Civ. P. 24 (a)(2) in order to invalidate NPI's request to intervene and this Honorable Court must deny the proposed Motion to Intervene in that case. *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989). Plaintiffs have negated multiple, if not all, required elements, and NPI's Motion under Fed. R. Civ. P. 24 (a)(2) must be DENIED.

NPI's alternate request for intervention under Fed. R. Civ. P. 24 (b)(2) fails on its face as Intervention under Rule 24(b)(2) can only be invoked "by a Government Officer or Agency." NPI is neither a government agency, nor is it an agent or officer of a government agency. As such, NPI's Motion to Intervene under Fed. R. Civ. P. Rule 24(b)(2) must be DENIED.

Finally, permissive intervention is not permitted as NPI's intervention would be duplicative and would inject evidence and arguments into this litigation that are not germane to the inquiry before this Honorable Court. Likewise, NPI has no claim or defense with a common question of law or fact as NPI cannot defend the government's action and, indeed, doesn't even articulate how

---

interest inasmuch as it was not a real party in interest in the transaction which is the subject of the proceeding." (internal quotations omitted).

it would in fact argue the constitutionality or lawfulness of the Halt Order. As such, NPI's request for permissive intervention, to the extent made, should also be DENIED.

## LEGAL ARGUMENT

**I.     NPI'S Motion to Intervene as of Right Under Fed. R. Civ. P. 24(a)(2) Fails as a Matter of Law and Must be Denied.**

Federal Rule of Civil Procedure 24(a)(2) requires that a proposed intervenor demonstrate four (4) required elements to be granted intervention as of right:

1. That the proposed intervener has a substantial legal interest in the litigation;
2. That the motion was filed timely;
3. That the proposed intervener's interests will be impaired if the intervention is denied; and
4. That the proposed intervenor's interests cannot be adequately represented by the existing parties.

In this matter, NPI fails to demonstrate even one (1) of the four (4) required elements and the Court must deny the proposed Motion to Intervene. *Grubbs*, 870 F.2d at 345.

### A.     NPI Lacks the Requisite Substantial Legal Interest in this Litigation

To intervene as a matter of right, the proposed intervenor must have a "substantial legal interest" in the proceeding. *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 343 (6th Cir. 2007). While NPI, and the tenants it purports to represent, may have an interest in the litigation (in the common sense of the word), they do not have a substantial legal interest or, as the Supreme Court has articulated, a "direct stake" in the litigation. *See Diamond v. Charles*, 476 U.S. 54, 65-7 (1986). A "substantial legal interest" as contemplated under Fed. R. Civ. P. 24(a)(2) exists where the rights of the proposed intervenor is <u>directly affected</u> by the <u>outcome of the subject litigation</u>. *See Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999). A finding of "substantial legal interest" requires a direct effect from the outcome of the litigation; an interested party suffering a resulting effect from the outcome will not satisfy this requisite prong of analysis. *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775 (6th Cir. 2007).

Indeed, NPI's claimed interest is amorphous at best. NPI's only claim of "effect" is unrelated to this Honorable Court's determination of authority under the APA or constitutionality of the Halt Order. Rather, NPI's cited interest relates to the potential resulting second order effects resulting from the filing of a forcible entry and detainer (a.k.a. eviction action) in the state court against a tenant for the non-payment of rent. These effects are peripheral —and indeed, not even certain—and are not the same as the "substantial legal interests" or "direct stake" in the litigation required under the Rule. Whether a state court proceeding for the non-payment of rent may occur at some future date is not at issue in this case, nor does possibility of a future eviction proceeding have any direct relationship with the questions at issue in this litigation –namely, whether the Halt Order is lawful and constitutional in the first instance. These inquiries are mutually exclusive. Should the Court adjudicate the Halt Order unlawful (whether pursuant to the APA or otherwise) or find the Halt Order unconstitutional, is separate and apart from state court eviction proceedings.

The singular case cited by NPI in both in its Motion and untimely Supplement supporting its claim of "substantial legal interests" in this litigation, in fact, does not at all support the argument NPI is trying to make. To the contrary, it serves to refute NPI's claim!

NPI cites *United States vs. Dixwell Hous. Dev. Corp.*, 71 F.R.D. 558, (D.Conn. 1976) —a case not within the Sixth Circuit— which involved tenants living under HUD lease agreements in HUD multi-family properties. The court permitted these tenants to intervene in a foreclosure action as the Court found that the order granting foreclosure would <u>directly affect</u> the "substantial legal interests" of these tenants by directly terminating the tenants' lease agreements and associated tenancies. *Id.* at 560-61. In other words, if the court granted the foreclosure petition, the direct outcome would be that the tenancy rights of these tenants would be immediately and directly terminated as a result without any further action. *Id.* This is clearly neither analogous to, nor consistent with, the facts and prospective outcome of this case. In fact, no matter the outcome,

those leasehold interests remain and exist until appropriate legal action is taken pursuant to Tennessee law.

It should not surprise this Honorable Court that NPI intentionally omitted from its Motion and untimely Supplement any discussion of the Sixth Circuit cases of *Michigan State AFL-CIO vs. Miller*, 103 F.3d 1240 (6th Cir. 1997) and *United States v. Tennessee,* 260 F.3d 587 (6th Cir. 2001).

In *Michigan State AFL-CIO*, the Court found that a not-for-profit —like NPI— only has a "substantial legal interest" and associated right to intervene as a party Defendant in litigation involving a constitutional question, when the not-for-profit is:

1. a "vital participant in the political process that resulted in the legislative adoption";
2. a "repeat player in the Act['s] litigation";
3. a "significant party…in the political process surrounding [the regulation];" and
4. is "an entity also regulated by . . . statutory provisions challenged by the Plaintiffs."

*Michigan State AFL-CIO*, 103 F.3d at 1247.

NPI, as a non-profit, fails to meet any of the *Michigan State AFL-CIO* requirements for establishing a "substantial legal interest" and the associated right to intervene as a party Defendant in litigation involving a constitutional question:

1. NPI was not involved in the promulgation of the Halt Order in any way, nor did NPI consult with the CDC on any matters relevant to the issuance of the Halt Order. As such, it was not a "vital participant" in the process that resulted in the Halt Order.[9]
2. NPI has not been a "repeat player" in litigation of the Halt Order. This is one of three (3) federal cases challenging the CDC's Halt Order.[10]  In the other two (2) cases, NPI did not intervene, attempt to intervene, or file an *amicus* brief.   Moreover, in the 23 state court challenges to various eviction moratoria filed across the country, NPI did not intervene,

---

[9] *See Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 781 (6th Cir. 2007) (holding that advocacy group could not intervene as it did not have a substantial legal interest in the subject matter of the lawsuit, despite its participation in the process leading to the adoption of the statute at issue).

[10] *See Brown vs Azar.*, Case No. 1:20-cv-3702-JPB, United States District Court for the Northern District of Georgia; *KBW Investment Properties, LLC vs. Secretary Alex Azar et al.*, Case No. 2:20-cv-4582-JLG, United States District Court for the Southern District of Ohio).

attempt to intervene, or file *amicus* briefs in any action. NPI is therefore not a "repeat player."

3. NPI had no involvement in the political process surrounding the Halt Order, let alone as a "significant party" to that political process.

4. And lastly, the Halt Order places burdens exclusively upon the Plaintiffs, not on NPI or the tenants NPI claims to represent, and does not, therefore, regulate NPI or tenants in any meaningful respect.[11] Neither NPI nor these putative tenants are bound by the provisions of the Halt Order.

NPI simply fails to satisfy the requirements of the *Michigan State AFL-CIO* analysis and, therefore, NPI fails to demonstrate it has a "substantial legal interest" in this litigation. NPI's Motion to Intervene must be DENIED.

Four (4) years after the *Michigan State AFL-CIO* case, the Sixth Circuit re-affirmed the analysis to be used by the district court in determining whether a not-for-profit agency maintained a "substantial legal interest" and associated right to intervene in litigation posing a constitutional challenge. *United States v. Tennessee,* 260 F.3d 587 (6th Cir. 2001).

In *Tennessee,* a not-for-profit sought to intervene as a party Defendant in litigation involving a constitutional question because the not-for-profit believed that the outcome of the litigation would impact the interests of its members. *Id.* at 595. The Sixth Circuit affirmed Judge McCalla's denial of the requested intervention as the not-for-profit's interest was not a direct interest but a limited interest and was therefore not a substantial legal interest in the case. *Id.* at 596. The Court held that the claims of the not-for-profit could be pursued in other, more appropriate settings, as its claims were only indirectly related to the constitutional issues. *Id.* at 595-96.

The legal issues in *Tennessee* case are directly aligned with the request for intervention being made by NPI herein. Like the not-for-profit in *Tennessee,* NPI claims an interest in the instant constitutional question because of the outcome could, conceivably, affect the interests of

---

[11] (*See* D.E. 1-12; 85 Fed. Reg. 55296).

their tenant member/clients. (D.E. 25 at pgs. 5-6). NPI's claim, however, is only indirectly related to the real issue of this case —the constitutionality of the Halt Order and its violation of the APA. The occupancy interests of NPI's members/clients are not the issue in this litigation and will not be directly impacted by any findings rendered by this Honorable Court. Moreover, as the Sixth Circuit stated in *Tennessee*, the occupancy interests of NPI and its members/clients are more appropriately advocated for in the state courts when/if a case is brought by a landowner for material breach of the lease agreement in an eviction action. *See Tennessee*, 260 F.3d at 595-96 (proposed intervenor "can protect its economic interests…by lobbying the legislative and executive branches for favorable funding arrangements, and in state courts by suing to enforce its contractual rights."). Alternatively, NPI could advocate for their members/clients interests by lobbying Congress.

Under *Michigan State AFL-CIO* and *Tennessee*, both of which deal with the "substantial legal interest" and associated right to intervene by not-for-profits in litigation posing a constitutional challenge, NPI fails in every respect. NPI lacks "substantial legal interest" in this litigation, and therefore, NPI's Motion to Intervene must be DENIED.

### B. NPI's Motion to Intervene is Untimely.

NPI's complete failures under the "substantial legal interest" analysis requires this Honorable Court to DENY the proposed Motion to Intervene despite any further analysis. *Grubbs*, 870 F.2d at 345; however, even were this Honorable Court to be willing to engage in further analysis, NPI cannot satisfy the other elements of the intervention test which further mandates the DENIAL of NPI's Motion to Intervene.

NPI's Motion to Intervene is untimely and, if granted, would cause undue delay in this litigation. In the Sixth Circuit, the question of timeliness is not merely a temporal one in nature. In *Jansen v. City of Cincinnati*, 904 F.2d 336, 339 (6th Cir. 1990), the Court provides a five -factor test for determining "timeliness":

1. The current progression of the suit;
2. The purpose for intervention;
3. The length of time that the intervenor knew or should have known of their alleged interest in the case,
4. Prejudice to the original parties due to delay in filing, and
5. The existence of unusual circumstances.

The instant case has garnered significant media attention since Plaintiffs' filing of its original Complaint, (D.E. 1). Even more, counsel for the Plaintiffs communicated by text directly with the President of NPI on September 16, 2020, the day Plaintiffs' Complaint was filed. Despite being acutely aware of the suit, NPI made no effort to contact Plaintiffs' counsel at any point thereafter concerning its alleged interest, or the interest of its purported members, in intervening. Instead, NPI waited nearly a month, until after business hours on October 13, 2020 —the night before this Honorable Court's 10:00 A.M. Scheduling Conference— to first file anything. Though not a party, NPI participated in this Honorable Court's October 14, 2020, Scheduling Conference and specifically requested that it be permitted to file a Reply to Plaintiffs' forthcoming Response in Opposition to the instant Motion to Intervene. This Honorable Court made clear to all Parties and NPI that it neither needed, nor would it permit, the submission of any additional argument from NPI relating to its Motion to Intervene; instead, Plaintiffs' were given a deadline of October 20, 2020, to file a Response in Opposition after which time this Honorable Court would issue a ruling on the briefs. Thereafter, in a strategic effort to frustrate and cause delay in this important, time sensitive litigation, and in conscious disregard of this Honorable Court's directives, NPI again waited until after business hours on October 19, 2020, to file a new, untimely 14-page Supplemental pleading replete with irrelevant material.

The deliberate exercise of these eleventh-hour filings has caused substantial prejudice to Plaintiffs and will continue to prejudice Plaintiffs if NPI is rewarded for this conduct by and through intervention in this action. Plaintiff has already been forced to divert valuable time and

resources away from preparing for the upcoming hearing on its *Motion for Vacatur or Preliminary Injunction*, (D.E. 12) —which will touch upon numerous important and nuanced legal issues— to respond to this sudden appearance of a possible intervenor. Time spent researching relevant intervenor law has directly impeded the Plaintiffs' ability to prepare for the primary relief sought in this constitutional challenge.

If NPI is permitted to intervene as a party defendant, Plaintiffs will be highly prejudiced by now being forced to develop arguments and rebuttal arguments against a party Defendant incorrectly included in this litigation, against whom Plaintiffs have asserted no claims, and from whom Plaintiffs' seek no possible relief.

Additionally, introducing NPI as a new party defendant will offer this Honorable Court nothing of value. NPI apparently intends to offer testimony and/or evidence wholly irrelevant, immaterial, and inadmissible in this litigation[12], as well as testimony and/or evidence wholly duplicative of that which the Defendants are best suited to present. (*See, e.g*., D.E. 31 at pgs. 3-5 (summarizing the alleged personal stories of tenants who may be subject to future eviction)).[13] This Honorable Court can take judicial notice of the fact that the NPI's Motion to Intervene is a virtual cut-and-paste duplication of the Defendants' brief filed in another case:

✓ The one and half page "Introduction" sections of both briefs are virtually word-for word identical.
✓ The two page "Statutory and Regulatory" sections of both briefs are virtually word-for word identical.
✓ The three page "CDC Halt Order" section of both briefs are virtually word-for word identical;

---

[12] This Honorable Court need look no further than NPI's inadmissible Supplement which contains four (4) pages of vignettes about unnamed tenants. This effort by NPI to pivot the legal analysis from the APA and constitutionality, to particular cases of any given tenant, is completely irrelevant, immaterial, and inadmissible in this litigation.

[13] While personal accounts of the struggle facing Americans during the pendency of COVID are moving and emotional, they have absolutely no relevance to whether the Halt Order is, among other things, a taking or violation of due process, or whether the Halt Order was promulgated in contravention to the mandates of the APA. Even if Plaintiffs stipulate to the truth of these stories, they do not in any way alter the fundamental inquiry.

- ✓ The four page argument on the APA in NPI's brief, (D.E. 26), is materially similar to that made by the Defendants, (D.E. 29).
- ✓ The arguments against Taking as asserted by NPI's brief also appears in Defendants' brief.
- ✓ The Section on the Soldiers and Sailors Relief Act in NPI's brief, (D.E. 26 at pg. 18), and Defendants' brief, (D.E. 29 at pgs. 32-33), are word-for word identical.

The only thing NPI seeks to add to this litigation is irrelevant, emotionally driven testimony and argument that has absolutely nothing to do with the APA and constitutional challenges presented by the Plaintiffs.

For these reasons, the Motion to Intervene fails to satisfy the requirement of timeliness and therefore must be DENIED. *Grubbs,* 870 F.2d at 345.

### C. NPI's Interests Will Not Be Impaired if the Intervention is Denied.

NPI must demonstrate that its "substantial legal interest" in this litigation will be substantively impaired by the outcome in these proceedings. *Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991). At the threshold, as detailed *supra*, NPI's claims of "substantial legal interest" fail in all respects under both *Michigan State AFL-CIO* and *Tennessee.* Since NPI lacks any "substantial legal interest" in this litigation, there cannot possibly be any impairment.

The foregoing notwithstanding, should this Honorable Court somehow find that NPI does have a "substantial legal interest" in this action, NPI would still fail the impairment prong of the intervention analysis as the outcome in this case bares no relation to the leasehold interests of NPI's members/tenants and no outcome in this case could ever impair those tenants' leasehold rights. Equally salient, as stated *supra*, NPI is neither a member of the purported "Class" nor a business which advocates for, or protects tenants from, eviction. NPI's stated purpose is to reduce blight, and the adjudication of this case will not impact that purpose. The outcome of this litigation involves only whether the CDC's promulgation of the Halt Order was: (1) unlawful under the APA, and (2) in contravention of clearly established rights guaranteed by the Constitution.

NPI and its member/clients' alleged leasehold rights (or lack thereof) is an issue involving state property and eviction rights only justiciable before the Shelby County General Sessions Court. No leasehold interests of any tenants will be in any way impaired as a result of this litigation or by order of this Honorable Court. Since NPI fails to satisfy the impairment prong of the intervention analysis, the proposed Motion to Intervene must be DENIED. *Grubbs*, 870 F.2d at 345.

**(D)  NPI's Interests Can be Adequately Represented by the Existing Defendants.**

Any interests that NPI may claim to have in the outcome of this constitutional challenge are more than adequately represented by the Defendants. In the Sixth Circuit, it has long been the rule that "an applicant for intervention has the burden of showing that representation by existing parties is inadequate." *Goldberg v. Fisher Foods,* 717 F.2d 290, 292, (6th Cir. 1983).

Defendants represent the senior leadership of the Centers for Disease Control and Prevention, the United States Department of Housing and Urban Development, the United States Department of Health & Human Services, and the United States Department of Justice. To date, seven (7) lawyers have appeared in defense of the Halt Order on behalf of the Defendants. These Defendant agencies and their in-house counsel are clearly the most knowledgeable and should be the most effective advocates for any defense which will be offered in support of the Halt Order. Indeed, as referenced herein, lead counsel for the Defendants has appeared in two (2) other lawsuits involving the Halt Order and has engaged in a vigorous defense of the Halt Order.[14]

 NPI has no experience, expertise, or for that matter competency, in defending the actions of a federal regulatory agency under the APA or defending constitutional challenges on behalf of

---

[14] *Brown vs Azar*, Case No. 1:20-cv-3702-JPB, United States District Court for the Northern District of Georgia; and *KBW Investment Properties, LLC vs. Secretary Alex Azar et al.*, Case No. 2:20-cv-4582-JLG, United States District Court for the Southern District of Ohio.

the government.  Neither Lead Counsel, Mr. Schwarz, nor Mr. Brewer purport to practice in these specific areas of law with any regularity.

NPI cannot simply make conclusory statements that their interests cannot be adequately represented to satisfy this prong of analysis.  (*See,* D.E. 25 at pg. 11).  NPI must prove to this Honorable Court that the Government Defendants do not adequately represent the interests of preserving the Halt Order.  *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005).  As a matter of settled law, when as here, the proposed intervenor "shares the same ultimate objective" as the party already present in the case, the proposed intervenor bears the burden of rebutting the presumption that adequate representation indeed does exist.  *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir.1987).

NPI has done nothing to rebut this presumption.  Instead, NPI simply claims that their interests are not represented because "agencies are not, themselves, at risk of eviction." (D.E. 25 at 11).  This is insufficient to rebut any presumption; being at risk of eviction in no way relates to the defending constitutionality or lawfulness of an agency action, nor does it suggest, let alone prove, that the federal government is incapable of defending its own rule, regulation, and/or order. The current Defendants have every interest in protecting the Halt Order and defending the government's action.  This is only bolstered by the fact that, in promulgating the Halt Order, the Defendants were acting on the orders of the President of the United States of America.[15]

The Executive Branch has a vested interest in preserving the Halt Order.  The named party Defendants have presumed expertise and knowledge, along with testimony regarding their personal actions prior to the promulgation of the Halt Order, which will be of importance in

---

[15] (*See* D.E. 1-13 and 14 (Executive Order and White House Facts Sheet)).

deciding this constitutional and legal challenge. These factors clearly demonstrate that the party Defendants provide adequate representation.

NPI simply lacks all these resources. NPI claims to be able to provide personal accounts of those that are invoking state court protection from this unconstitutional Halt Order. These individual tenant accounts do not mitigate the constitutional, substantive, or procedural deficiencies in the Halt Order. NPI cannot offer this Honorable Court or the parties anything of relevance to these proceedings, nor do they claim to offer any relevant information in a form or fashion that the Defendants do not, and cannot, obtain and/or use more efficiently and more effectively.

The named party Defendants are more than capable of defending this case. If NPI wishes to have a voice, it should petition the Court for participation as *amicus curiae*, but NPI should not be granted full party status. *See Bradley*, 828 F.2d at 1194 ("intervenors' interests" were protected "by inviting [their counsel] to appear as *amicus curiae* in the case" rather than conferring party status).

In its untimely Supplement, NPI argues that the Defendants' FAQs, published on October 9, 2020 to clarify the CDC's intentions in promulgating and issuing the Halt Order, now somehow renders the government inadequate to defend the Halt Order. This absurdity, is only matched if not exceeded, by NPI's asininity that it – a not-for-profit with no involvement in, or relation to, regulatory governance and the promulgation of the Halt Order – is better positioned than the United States government and its retinue of lawyers to defend the constitutional and legal issues in this litigation. Any tangential interest that NPI has in the instant case is more than adequately protected by the Defendants and the amicus procedure available. As such, NPI's Motion to Intervene should be DENIED. *Grubbs*, 870 F.2d at 345.

## II.    In the Alternative, NPI seeks intervention under F.R.C.P. 24(b)(2). This Motion likewise fails as a matter of law and must be denied.

In its Motion and untimely Supplement, NPI seeks intervention, in the alternative, under Fed. R. Civ. P. Rule 24(b)(2). (D.E. 25 at 11-12; D.E. 31 at 14). Intervention under Rule 24(b)(2) can only be invoked "by a Government Officer or Agency". NPI is neither a government agency, nor is it an agent or officer of a government agency. As such, NPI's Motion to Intervene under Fed. R. Civ. P. Rule 24(b)(2) must be DENIED.

## III.    While not stated explicitly, it appears that NPI seeks permissive intervention under F.R.C.P. 24(b)(1). This Motion likewise fails as a matter of law and must be denied.

Finally, permissive intervention is likewise not permitted as NPI's intervention would be duplicative and would inject evidence and arguments into this litigation that are not germane to the inquiry before this Honorable Court. *Blount-Hill v. Board of Education of Ohio*, 195 F. App'x 482, 487 (6th Circuit 2006). NPI has no claim or defense with a common question of law or fact as NPI cannot defend the government's action and, indeed, does not even articulate how it would in fact argue the constitutionality or lawfulness of the Halt Order. *Bay Mills Indian Cmty. v. Snyder*, 720 F. App'x 754, 757 (6th Cir. 2018). Finally, the Sixth Circuit has held that, when an intervening party will introduce other, irrelevant issues into the adjudication, their presence can is an undue delay. *Northland Family Planning Clinic, Inc. v. Cox,* 487 F.3d 323, 346 (6th Cir. 2007*). See also Blount-Hill v. Bd. of Educ. of Ohio*, 195 F. App'x 482, 487 (6th Cir. 2006) (stating that when an intervenor adds nothing of "unique value" and will only result in the "duplication of the efforts of the existing defendants" causes undue delay).

For all of the above stated reasons, as well as those articulated by the Defendants, NPI's request for permissive intervention, to the extent made, should also be DENIED.

Dated:  October 20, 2020

Respectfully Submitted,

**GLANKLER BROWN, PLLC**

/s/ S. Joshua Kahane
S. Joshua Kahane (BPR #23726)
jkahane@glankler.com

Aubrey B. Greer (BPR #35613)
agreer@glankler.com

6000 Poplar Avenue, Suite 400
Memphis, Tennessee 38119
Telephone: (901) 525-1322
Facsimile: (901) 525-2389

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2020, a copy of the foregoing Plaintiffs' Response in Opposition to Neighborhood Preservation Inc.'s Motion and Inadmissible Supplement to Intervene was served on all parties via the Court's ECF System:

/s/ S. Joshua Kahane