UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

TIGER LILY LLC;
HUNTER OAKS APARTMENTS UTAH, LLC;
NORTH 22ND FLAT, LLC;
CHERRY HILL GARDENS LLC;
CHURCHILL TOWNHOMES LLC;
BRITTANY RAILEY; and
APPLEWOOD PROPERTY MANAGEMENT, LLC

    Plaintiffs

vs.                                                                   No: 2:20-cv-2692

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
and **BENJAMIN S. CARSON, M.D.** in his official capacity as United States Secretary of Housing and Urban Development;
**UNITED STATES DEPARTMENT OF JUSTICE**
and **WILLIAM P. BARR**, in his official capacity as United States Attorney General;
**UNITED STATES CENTER FOR DISEASE CONTROL AND PREVENTION**
and **NINA B. WITKOFSKY,** in her official capacity as Acting Chief of Staff of the Center for Disease Control and Prevention;
**UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES**
and **ALEX AZAR,** in his official capacity as United States Secretary of Health and Human Services;
**VICE ADMIRAL JEROME M. ADAMS, M.D.**, in his official capacity as United States Surgeon General; and
**D. MICHAEL DUNAVANT,** in his official capacity as United States Attorney General for the Western District of Tennessee

    Defendants

---

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' SUPPLEMENT, OR IN THE ALTERNATIVE, TO FILE A RESPONSE AND CONTINUE HEARING DATE**

## INTRODUCTION

**COME NOW** Plaintiffs and hereby file their *Response in Opposition to Defendants' Motion to Strike Supplement, or in the Alternative, to File a Response and Continue Hearing Date*, ("Motion to Strike"), (D.E. 42), filed by the Defendants after business hours Friday evening, October 23, 2020.

This litigation involves issues of fundamental importance and national significance. Plaintiffs are being harmed, increasingly, with each passing day. Emergency injunctive relief, like that requested by the Plaintiffs —by its very nature— requires an expedited hearing without delay. Plaintiffs have waited patiently for their day before this Honorable Court in which to vindicate their rights, stop the ongoing constitutional harm from which they are suffering, and reverse the Defendants' unlawful actions. With that day of reckoning quickly approaching, Defendants now seek to manufacture an eleventh-hour delay created —intentionally and strategically— by their own calculated inaction. This Honorable Court should not allow Defendants to benefit from this fabricated impediment.

Should Defendants believe that they require an opportunity to supplement their opposition response previously filed to include additional arguments against Plaintiffs' APA claims, Plaintiffs have no objection to Defendants' filing their own *Supplement* nor do Plaintiffs object to allowing Defendants as much time as possible for this filing including and up and through 6:00 P.M. E.S.T., October 29, 2020.

In any event, however, the Hearing on all of Plaintiffs' claims should move forward, as scheduled, on Friday, October 30, 2020 at 10:00 A.M.

<u>ARGUMENT</u>

**I. Defendants Attempt to Strike Plaintiffs' Supplement is Meritless and a Thinly Veiled Effort to Delay the Hearing.**

On September 16, 2020, Plaintiffs filed their original leading *Complaint*, (D.E. 1), seeking relief from the application, enforcement, and effects of the *Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19* (the "Halt Order") promulgated by the Centers for Disease Control and Prevention (the "CDC") on September 4, 2020. On September 17, 2020, Defendant, United States Attorney for the Western District of Tennessee, D. Michael Dunavant, was personally served with the Summons and *Complaint* pursuant to Fed. R. Civ. P. 4(i), (*see* D.E. 9). On September 17, 2020, Plaintiffs delivered by Certified Mail copies of the *Complaint* to all Government Defendants, (*see*, *e.g*., D.E. 14). Despite accomplishing service on all Defendants, not one Defendant made an appearance in the subject litigation following service.

On September 27, 2020, prior to the appearance of any Defendant, Plaintiffs filed their *Motion and Application for Emergency Hearing and Preliminary Injunction* (the "Motion"), (D.E. 12), requesting this Honorable Court set an expedited hearing on the relief requested within 14 days or not later than October 12, 2020.

On October 5, 2020 —prior to any appearance by the Defendants— the undersigned, as lead counsel for the Plaintiffs, spoke personally by telephone with Ms. Leslie Cooper Vigen, lead counsel for the Defendants. Ms. Vigen confirmed that the Defendants were in receipt of the *Complaint* and *Motion* and that either she, or someone from her office, would be serving as lead counsel in the instant litigation on behalf of all Defendants. This telephone call notwithstanding, neither Ms. Vigen, her co-counsel Mr. Myers, anyone from the local United States Attorney's Office, nor any other party Defendant made an appearance before this Honorable Court in the subject litigation immediately following that telephone call or in the days that followed.

On October 8, 2020, prior to the appearance of any Defendant, Plaintiffs filed their *First Amended Complaint*, (D.E. 21), as of right under Fed. R. Civ. P. 15. The primary material difference between Plaintiffs' *Complaint* and their *First Amended Complaint* was Plaintiffs' articulation of more explicit allegations against Defendants for procedural violations of the Administrative Procedure Act, 5 U.S.C. § 500, *et seq*., ("APA") and associated relief, including relief under 5 U.S.C. § 706.[1]

That same day, this Honorable Court issued a *Setting Letter*, (D.E. 20), docketing an Initial Scheduling Conference to be held October 14, 2020. As a courtesy, because, neither Ms. Vigen, nor her colleagues at the Federal Programs Branch would receive notice of the *Setting Letter* via ECF, the same day the *Setting Letter* was issued, the undersigned personally emailed Ms. Vigen copies of the *First Amended Complaint* and *Setting Letter*. Ms. Vigen acknowledged receipt and expressed gratitude for the courtesy. Yet and still, neither Ms. Vigen, nor any attorney or party Defendant made an appearance before this Honorable Court in the subject litigation.

Just to be clear, prior to any appearance by any of the Defendants or any counsel, Plaintiffs had provided to Defendants and Ms. Vigen copies of the *Complaint*, *Motion*, and *First Amended Complaint*, which contained in detail each and every cause of action asserted by the Plaintiffs against the Defendants in this litigation.

Finally, on October 9, 2020, 23 days following initial receipt of Plaintiffs' *Complaint* seeking (among other things) emergency relief and an expedited hearing, counsel from the local United States Attorney's Office made appearances before this Honorable Court. (*see* D.E. 22-24)[2].

---

[1] The Defendants agree that Plaintiffs adequately pled claims under the APA in the *Complaint* and *Motion*; however, Defendants' *Motion to Strike* seeks rejection of what the Defendants' incorrectly claim are newly asserted violations by the Defendants of the APA.

[2] Defendants requested leave of Court to exceed the page limits set by Local Rule in their proposed Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction (the "Opposition

On October 14, 2020, this Honorable Court held the Initial Scheduling Conference and set a hearing on Plaintiffs' *Motion* for October 30, 2020 at 10:00 A.M. All counsel checked and confirmed availability on that day.³ This Honorable Court further established a briefing schedule and memorialized same via the Court's *Minute Entry,* (D.E. 28).

The same day, Defendants filed their *Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction*,⁴ (D.E. 29), which acknowledges Plaintiffs' APA claims as asserted in the *Complaint*, *Motion*, and *First Amended Complaint*.⁵ There can be no reasonable argument that at the time Defendants first appeared in this case, they were not keenly aware of the APA claims and associated relief asserted by the Plaintiffs. Nor can Defendants reasonably argue that when they drafted their *Opposition Memorandum,* participated in the *Scheduling Conference*, or filed their *Opposition Memorandum* they were not keenly aware of the APA claims and associated relief asserted by the Plaintiffs.

While Defendants raised no issues about the already filed and served *Motion* or *First Amended Complaint* to this Honorable Court or Plaintiffs' Counsel at the *Scheduling Conference*, in their *Opposition Memorandum* filed thereafter, Defendants drop a footnote⁶, which states:

---

Memorandum"), (D.E. 24). Clearly, the Defendants had already been working on this litigation despite not having made an appearance before this Honorable Court.
³ With this Honorable Court's very busy schedule and more than six (6) active participating lawyers, rescheduling hearings will be very difficult especially as other matters have been pushed by Plaintiffs' Counsel until November to make available time to brief and argue the instant case on October 30, 2020, as agreed and scheduled.
⁴ Plaintiffs were given until October 27, 2020 to file a Reply to Defendants' Opposition Memorandum.
⁵ Defendants' *Opposition Memorandum*, (D.E. 29), filed following the Court's granting of leave to exceed page limits, was drafted by the Defendants in response to the *First Amended Complaint* both by reference and argument. "**Plaintiffs' amended complaint raises eight causes of action challenging the Order, claiming violation of the Administrative Procedures Act (ACT)…**" (*See* D.E. 29 at pg. 9).
⁶ D.E. 29 at pg. 9.

> **Plaintiffs' amended their complaint after filing their motion for preliminary injunction . . . Plaintiff's Motion thus does not address claims raised for the first time in the amended complaint – specifically Plaintiffs' claims under the APA.**

In other words, Defendants acknowledge all claims asserted by the Plaintiffs including those made under the APA, clearly and in detail, and Defendants deliberately chose not provide this Honorable Court a timely response in an effort to set up this eleventh hour delay tactic.

Despite this strategy of choosing "**not to address claims,**" Defendants then spend eight (8) pages[7] in their *Opposition Memorandum* directly arguing against Plaintiffs' assertions in the *Motion* that the Halt Order violates the APA and that Plaintiffs' are entitled to relief under the APA.

Perhaps most revealing, Defendants then drop a second footnote, (*Id.* at pg. 16) — contradicting their first footnote as quoted above— and acknowledging that the APA claim and relief asserted by the Plaintiffs in their *Motion* are in fact sought under the APA and 5 U.S.C. §702:

> **Although Plaintiffs' Memorandum [in support of its *Motion*] categorizes this argument as a challenge to "*ultra vires*" agency action . . . because the APA provides aggrieved persons with a cause of action, 5 U.S.C. §702, to challenge agency action that is "in excess of statutory jurisdiction, authority, or limitations, or "otherwise not in accordance with law"…Defendants construe Plaintiffs' "*ultra vires*" claim [in the *Motion*] as arising under the APA.**

Plaintiffs did not believe that any new motion for relief was necessary in order for the pending *Motion* to conform to the controlling pleading in this case in light of the plain facts that: (1) Plaintiffs' *Complaint* clearly and expressly asserts claims that the Halt Order was promulgated in excess of statutory and regulatory authority in violation of the APA; (2) Plaintiffs' *Motion* expressly argues —as its <u>first</u> argument of its Memorandum in Support— that the Halt Order was

---

[7] *See,* D.E. 29 at pgs. 15-22.

*ultra vires* in violation of the APA; (3) the *Motion* was filed and of record prior to the filing of Plaintiffs' *First Amended Complaint*; (4) Plaintiffs' *First Amended Complaint* was of record and served upon Defendants well before the Defendants filed their *Opposition Memorandum*; (5) Plaintiffs' *First Amended Complaint* was of record and served upon Defendants well before this Honorable Court held its October 14, 2020, Scheduling Conference in which the October 30, 2020 injunction hearing was set; (6) Defendants had in their possession Plaintiffs' *First Amended Complaint* and were well aware of the entirety of Plaintiffs' claims when Defendant drafted and filed their *Opposition Memorandum*; (7) in their *Opposition Memorandum*, Defendants spend considerable space acknowledging and arguing against Plaintiffs' APA claims as asserted in the *Motion*; and (8) in any event, this Honorable Court is endowed with the power and discretion to consider claims and grant relief as mandated under the APA and applicable federal law, when asserted in the controlling pleading, and upon the Court's own finding of a violation by the regulatory agency.

Upon reviewing Defendants' *Opposition Memorandum,* the day after receipt, however, Plaintiffs' became concerned that Defendants themselves had caused confusion through their conflicting footnotes. Out of an abundance of caution, in order to avoid the possibility that any of Plaintiffs' claims might be precluded, and, quite frankly, as a professional courtesy extended to the Defendants so as to ensure they could be meaningfully prepared for the October 30, 2020 hearing, on October 16, 2020 —less than 24 hours after Plaintiffs first reviewed Defendants' *Opposition Memorandum* and more than two (2) weeks before the scheduled Hearing— Plaintiffs undertook to provide this Honorable Court and Defendants a short *Supplement*, (D.E. 30), to its original *Motion* to ensure that the *Motion* was expressly consistent in all respects with the previously filed *First Amended Complaint*. Specifically, the purpose of the *Supplement* was to

clearly and specifically articulate that Plaintiffs seek, from this Honorable Court, declaratory, injunctive, and statutory relief under 5 U.S.C. § 706(2) for Defendants' substantive <u>and</u> procedural violations of the APA, as well as Defendants' violations of the Constitution.

This *Supplement* is not a "reply" to the *Opposition Memorandum*, as Defendants try and suggest in their *Motion to Strike*, nor does the *Supplement* assert or raise "a new count"[8]; the *Supplement*, instead, only clarifies the claims previously asserted by the Plaintiffs' which were identified by Defendants' in their *Opposition Memorandum* and for which, because of timing issues resulting from Defendants' refusal to appear in this case until after the *Complaint*, *Motion*, and *First Amended Complaint* were all filed, Defendants claimed confusion.

Upon Plaintiffs' filing and service of the *Supplement* —more than a week ago— no objection was raised by the Defendants. Despite almost daily communication with Ms. Vigen after the *Supplement* was filed, neither Ms. Vigen nor anyone else raised any objection, of any kind, to the *Supplement*.

Finally, more than a week after the *Supplement* was filed and served, and less than one week before the scheduled *Motion* hearing, Defendants move to strike the *Supplement*, arguing that it seeks "**to add a new argument not pressed in the preliminary injunction motion**" – namely, relief under 5 U.S.C. § 706(2) for procedural violations of the APA. This, despite Defendants' own admissions that the Motion contains a claim for relief for such under 5 U.S.C. § 706(2).[9]

---

[8] *See,* D.E. 42 at pg. 1.
[9] Although Plaintiffs' Memorandum [in support of its *Motion*] categorizes this argument as a challenge to "*ultra vires*" agency action . . **. because the APA provides aggrieved persons with a cause of action, 5 U.S.C. §702,** to challenge agency action that is "in excess of statutory jurisdiction, authority, or limitations, or "otherwise not in accordance with law"…**Defendants construe Plaintiffs' "*ultra vires*" claim [in the *Motion*] as arising under the APA**. (*See* D.E. 29 at pg. 16).

8

Moreover, and in a far more genuine expression of the Defendants' true intentions by and through its *Motion to Strike*, Defendants request:

> "**In the alternative, Defendants respectfully as for a meaningful opportunity to respond to Plaintiffs' new arguments in support of the preliminary injunction motion within seven days of any order denying the Motion to Strike. Moreover, the preliminary injunction hearing currently scheduled for October 30, 2020, should be continued until a date no earlier than three days after the filing of Defendants' response, or any later date that is convenient for the Court**."

It is evident by review of the Defendants' own prayer for relief contained in the *Motion to Strike*, that even the Defendants do not really believe that this Honorable Court would ever grant their *Motion to Strike* and refuse to consider Plaintiffs' well-pled allegations of Defendants' violations of both substantive and procedural requirements of APA. Instead, the *Motion to Strike* is really the latest deliberate effort by the Defendants to force this Honorable Court into the difficult position of delaying this time sensitive Hearing. Defendants knew that the Hearing was set for October 30, 2020, yet intentionally waited more than a week following receipt of the *Supplement* —and less than a week before the Hearing— to first raise any objection. Had Defendants raised the very issue they raise now, upon the filing of the *Supplement* last week, there would have been more than sufficient time to utilize the very schedule the Defendants now suggest (i.e., seven (7) days to respond plus three (3) days before holding the hearing) and still have the Hearing on October 30, 2020 as scheduled. Instead, the Defendants purposely waited, only raising the objection in the final week before the Hearing, so as to manufacture a basis for their requested delay.

The Defendants now attempt to further delay Plaintiffs' right to access this Honorable Court and have its case heard by at least another eleven (11) days, and likely more. If the Defendants are successful in this effort, Plaintiffs' hearing on its *Motion and Application for*

*Emergency Hearing and Preliminary Injunction* will take place <u>more than 50 days after first requested</u>, and <u>more than 60 days after its *Complaint* was initially filed and served</u>. This is entirely unjust and prejudicial in every respect.

The Plaintiffs' primary request of this Honorable Court is that it vacate and set aside the Halt Order under 5 U.S.C. § 706(2) and/or strike down the Halt Order as unconstitutional. In the alternative, the Plaintiffs pray this Honorable Court issue preliminary injunctive relief to preserve the status quo[10] wherein owners and managers are free to exercise their long established rights to possess, use, and enjoy their real property, and wherein state law governs the recovery of possession of their real property due to a tenant's material breach of a lease agreement as it always had until the issuance of the Halt Order. *See University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Importantly, even were this Honorable Court to somehow find that a claim pled in the *First Amended Complaint* was totally omitted from the earlier filed Motion —which Defendants themselves <u>do not</u> even argue is the case— because preliminary injunctive relief occurs at the very start of a case and the parties generally only have a short time to prepare, preliminary injunctions are customarily heard and granted on the basis of procedures that "are less formal and evidence that is less complete than in a trial on the merits." *Camenisch*, 451 U.S. at 395; s*ee also Sole v. Wyner*, 551 U.S. 74, 127 (2007). This Honorable Court may (and should) look at the totality of the pleadings and record, consider hearsay, accept affidavit testimony, and consider evidence and arguments that, in other ways, do not strictly comply with applicable rules. *See*, *e.g*.,

---

[10] The status quo is often defined as the "last uncontested status between the parties which preceded the controversy." *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013). In the instant case, the status quo is the period of time following the expiration of the Cares Act and preceding the effective date of the Halt Order.

*Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir. 2004); *Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993); *Dexia Credit Local v. Rogan*, 602 F.3d 879, 885 (7th Cir. 2010).

The issues before this Honorable Court, and the conduct of the Defendants, are far too consequential to be abandoned even were this Honorable Court to buy-in to Defendants' engineered hyper-technical claim. There is just too much at stake. The entire *Motion to Strike* must be promptly DENIED.


**II.     Defendants' Case Law Offered in Support of its *Motion to Strike* is Both Misplaced and Inapplicable.**

As the only support offered by Defendants for their *Motion to Strike*, Defendants provide this Honorable Court with a string citation of cases, all of which (irrelevantly) stand for the proposition that "**reply briefs**" are not the proper forum in which to raise "**new claims**." This is because "**new issues**" presented "**for the first time in reply briefs**" do not allow the opposing party "**the right to respond**." Respectfully, not a single case offered by the Defendants is relevant or applicable to the facts of the instant matter.

Plaintiffs' *Reply Brief* has not yet been filed and is not due until this coming Tuesday, October 27, 2020. Instead, what was filed, on October 16, 2020 —more than two (2) weeks before the scheduled Hearing — was a short *Supplement*, consistent in all respects with the previously filed *First Amended Complaint* and *Motion*. The case law cited by the Defendants concerns only final "**reply briefs,**" not *Supplements*.

Moreover, Plaintiffs' *Supplement* does not raise any "**new claims**" nor "**new issues**". The case law cited by the Defendants in their *Motion to Strike* expresses concerns about parties raising entirely new claims or issues in the last moments before a Hearing; this is not the case herein. All

claims of Plaintiffs were included in their *Motion* and clearly articulated in their *First Amended Complaint* - both of which were filed, served, and in the possession of the Defendants before Defendants filed their *Opposition Memorandum* and before the Hearing date was even set. Defendants acknowledge an awareness and understanding of Plaintiffs' APA claims and their choice to respond only to the substantive claims and not the procedural claims.[11]

Additionally, because the *Motion* and *First Amended Complaint* were filed, served, and in the possession of the Defendants well before Defendants filed their *Opposition Memorandum*, Defendants' were not denied any "**right to respond**," nor were the Defendants victims of surprise. In fact, despite Defendants' strategic choice "**not to address**" the full APA claim in their *Opposition Memorandum*, Defendants in fact spend more than twenty-percent (20%) of their entire *Opposition Memorandum* directly arguing against Plaintiffs' very assertions from the *Motion* that the Halt Order violates the APA and that Plaintiffs' are entitled to relief under the APA.

Even more, during the Local Rule 7.2(a)(2) consultation between the parties, before Defendants' filed their *Motion to Strike*, Plaintiffs' consented to and invited Defendants to submit a *Supplement* to their *Opposition Memorandum* to add any additional defenses the Defendants wished to put forth. This would have resolved any of the concerns identified by the Defendants about not having "**the right to respond**" or those in the string of cases cited by the Defendants in the *Motion to Strike* related to reply filings.[12] Despite asking this Honorable Court for that very right in their *Motion to Strike*, Defendants refused Plaintiffs' offer.

---

[11] *See*, D.E. 29 at pg. 9. "Plaintiffs' amended their complaint after filing their motion or preliminary injunction . . . *Plaintiff's Motion thus does not address claims raised for the first time in the amended complaint* – specifically Plaintiffs' claims under the APA.

[12] As discussed more fully below, Defendants have already briefed, addressed, or otherwise agued defenses to Plaintiffs' APA challenges, and already in relation to the Halt Order itself. It will not take Defendants any time to supplement their *Opposition Memorandum*, if they felt necessary, and

12

Finally, each of the cases cited by the Defendants —as inapplicable to the instant matter as they may be— nevertheless maintain that the decision to consider or not consider allegations is ultimately left to the sound discretion of the court. This Honorable Court, in its discretion, and recognizing the totality of these circumstances and the conduct of the Defendants, can clearly see that the striking of any of Plaintiffs' well pled allegations —all of which were of record and in the possession of the Defendants before Defendants filed anything— and/or delaying of the Plaintiffs' right to the Hearing —only days before it is scheduled to be held— would be highly unfair and prejudicial.

The *Motion to Strike* must be promptly DENIED.

**III. Defendants' Claim that it will be "Severely Prejudiced" at the hearing October 30, 2020, is wholly without merit and Should be Rejected by this Honorable Court.**

Defendants' alternative request that this Honorable Court delay the hearing to give Defendants additional time respond to the *Supplement* is utterly disingenuous.

First, Defendants knew, since October 14, 2020, that this important Hearing was set for October 30, 2020. Yet, Defendants intentionally waited more than a week following receipt of the *Supplement*, and less than a week before the Hearing date, to first raise any objection. Had Defendants raised the very issue they raise now, upon receipt of the *Supplement* last week, there would have been more than sufficient time to utilize the very schedule the Defendants now suggest (i.e., seven days to respond plus three days to hold the hearing) and still hold the Hearing on October 30, 2020 as scheduled. Instead, the Defendants waited and waited, only raising the

---

can/will use much of, if not entirely, the arguments already prepared, drafted, and filed in other matters.

objection in the final week before the Hearing, so as to manufacture a basis for the purposeful delay.

Second, there can be no reasonable argument that Defendants were unaware of the APA claims and associated relief asserted by the Plaintiffs when the Defendants first appeared in the case; when the Defendants drafted their *Opposition Memorandum*; when the Defendants participated in the *Scheduling Conference*; and when the Defendants filed the *Opposition Memorandum*. Defendants acknowledge the Plaintiffs' substantive and procedural APA claims, clearly and in detail; use eight (8) pages[13] in the *Opposition Memorandum* to argue against Plaintiffs' assertions in the *Motion* that the Halt Order violates the APA and that Plaintiffs' are entitled to relief under the APA; and claim that Defendants deliberately chose not to provide this Honorable Court a response to the procedural aspects of the claim. This was Defendants' decision. The prejudice which could be caused when a party asserts a last minute "**new issue**" or "**new claim**" does not exist at all herein.

But most importantly, Defendants' claim to "prejudice"[14] is wholly without merit. Defendants' are very familiar with all of the APA claims asserted herein by Plaintiffs as they — through counsel, and specifically Ms. Vigen— have briefed, addressed, and otherwise agued them many times in defense of APA challenges, and already in relation to the Halt Order itself.[15] Indeed, the Defendants, by and through Ms. Vigen who argued in *Brown vs Azar*, raised substantially similar APA claims:

---

[13] *See,* D.E. 29 at pgs. 15-22.
[14] *See,* D.E. 42 at pg. 8.
[15] *See, e.g., Brown vs Azar*, Case No. 1:20-cv-3702-JPB, United States District Court for the Northern District of Georgia. Lead counsel for the Defendants serves as counsel in the *Brown* suit as well, both challenging the Halt Order on a number of grounds, including for violations of the APA.

> **Under the APA, a court may set aside agency action only when it determines that action is "arbitrary, capricious, an abuse of discretion, unconstitutional, in excess of statutory authority, without observance of procedure as required by law, or unsupported by substantial evidence."** *Mahon v. U.S. Dep't of Agric.*, **485 F.3d 1247, 1253 (11th Cir. 2007);** *see* **5 U.S.C. § 706(2). Plaintiffs' claims that CDC exceeded its statutory and regulatory authority . . . and that the Order is arbitrary and capricious . . . both fail.**

(Resp. in Opp'n to Pls.' Mot. For Prelim. Inj. at 37, *Brown v. Azar*, No. 1:20-cv-3702 (N.D. Ga. Oct. 2, 2020). Following the quoted language, counsel then expends approximately 14 pages arguing that the Halt Order does not violate any element of APA – substantively or procedurally.[16] Thus, the notion that the Defendants will be prejudiced because they are unprepared or in need of time to understand the breadth of Plaintiffs' purported APA claims is utterly without merit. Defendants cannot reasonably assert any prejudice to them that would necessitate or justify a delay of the oral arguments to be made at the Hearing based upon APA claims.

Nevertheless, if Defendants believe that, again, despite their own admissions, their own "choice" not to present a robust defense to the APA claims in their *Opposition Memorandum*, and their eight (8) page argument in opposition to the APA already of record in this case, that they have not been provided the opportunity to fully respond to Plaintiffs' APA arguments, and if Defendants believe that a supplementary argument is needed to support their *Opposition Memorandum*, Plaintiffs have no objection if this Honorable Court allows Defendants the opportunity to supplement their *Opposition Memorandum* as long as this will not delay the October 30, 2020 hearing date, and if Defendants will file any such supplement on before 6:00 P.M. E.S.T. on October 29, 2020.

---

[16] The defenses asserted in *Brown* by the Defendants to the APA violations of the Halt Order, and which Defendants will undoubtedly argue herein, are incorrect and unpersuasive; nevertheless, that does not mean that Defendants are unprepared and/or unable to assert the defenses.

This Honorable Court has already established an expedited briefing schedule leading up to the Hearing and the parties have conformed to that schedule. It should not be difficult for the Defendants, if so desired, to supplement their *Opposition Memorandum*, as they can simply use much of, if not entirely, their argument already prepared, drafted, and filed in other challenges, most notably, the *Brown* case.

A cursory review of all pleadings filed by the Defendants in the *Brown* and *Tiger Lily* cases reflects virtually identical drafting and or simultaneous use of defenses of common claims and arguments[17]. The unique opportunity now offered – by consent - to Defendants to file a *Supplement* to their *Opposition Memorandum,* despite the fact that this offers them a second bite at the same apple – inherently resolves any of the concerns identified by the Defendants in their *Motion to Strike* and the inapplicable, albeit cited, string of cases relating to reply filings offered by the Defendants.

While the Plaintiffs do not object to this Honorable Court's grating Defendants' the opportunity to file a Supplement, the request for a delay in the Hearing must be promptly DENIED.

## CONCLUSION

For these reasons, Plaintiffs' request that that Defendants' Motion to Strike be promptly DENIED and Defendants' Alternative Motion to delay the Hearing likewise be promptly DENIED.

---

[17] The *Tiger Lily* Plaintiffs offer significantly more substantial arguments as to Defendants' substantive violations of the APA and far greater claims, both in quantity and form, relating to the Halt Order's constitutional violations, than those asserted by the Plaintiffs in *Brown*; however, the procedural APA violation argument against the Halt Order, complained of by the Defendants in their *Motion to Strike*, is based to a significant degree upon the same APA procedural requirements asserted in both *Brown* and *Tiger Lily.*

Plaintiffs have no objection if this Honorable Court allows Defendants the opportunity to supplement its *Opposition Memorandum* on before 6:00 P.M. E.S.T., October 29, 2020 and have, in fact, offered the same to Defendants through Counsel.

Dated:  October 25, 2020

Respectfully Submitted,

**GLANKLER BROWN, PLLC**

/s/ S. Joshua Kahane
S. Joshua Kahane (BPR #23726)
jkahane@glankler.com

Aubrey B. Greer (BPR #35613)
agreer@glankler.com

6000 Poplar Avenue, Suite 400
Memphis, Tennessee 38119
Telephone: (901) 525-1322

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2020, a copy of the foregoing Response in Opposition to Defendants' Motion to Strike Supplement, or in the Alternative, to File a Response and Continue Hearing Date was served on all parties via the Court's ECF System:

/s/ S. Joshua Kahane