# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

**TIGER LILY LLC;**
**HUNTER OAKS APARTMENTS UTAH, LLC;**
**NORTH 22ND FLAT, LLC;**
**CHERRY HILL GARDENS LLC;**
**CHURCHILL TOWNHOMES LLC;**
**BRITTANY RAILEY; and**
**APPLEWOOD PROPERTY MANAGEMENT, LLC,**

      Plaintiffs


**vs.**                                      **No: 2:20-cv-02692-MSN-atc**


**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
and **BENJAMIN S. CARSON, M.D.** in his official capacity as United States Secretary of
Housing and Urban Development;
**UNITED STATES DEPARTMENT OF JUSTICE**
and **WILLIAM P. BARR**, in his official capacity as United States Attorney General;
**UNITED STATES CENTER FOR DISEASE CONTROL AND PREVENTION**
and **NINA B. WITKOVSKY,** in her official capacity as Acting Chief of Staff of the Center for
Disease Control and Prevention;
**UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES**
and **ALEX AZAR,** in his official capacity as United States Secretary of Health and Human
Services;
**VICE ADMIRAL JEROME M. ADAMS, M.D.**, in his official capacity as United States
Surgeon General; and
**D. MICHAEL DUNAVANT,** in his official capacity as United States Attorney General for the
Western District of Tennessee,

      Defendants.


---

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
## AND IN FURTHER SUPPORT OF
## PLAINTIFFS' MOTION FOR JUDGEMENT ON THE ADMINISTRATIVE RECORD

---

*On the brief:*

S. Joshua Kahane (TN# 23726)
jkahane@glankler.com

Aubrey B. Greer (TN# 35613)
agreer@glankler.com

**GLANKLER BROWN, PLLC**
6000 Poplar Ave., Suite 400
Memphis, Tennessee 38119
Telephone:  (901) 525-1322
Facsimile:   (901) 525-2389


ATTORNEYS FOR PLAINTIFFS TIGER LILY LLC, HUNTER OAKS APARTMENTS UTAH, LLC, NORTH 22ND FLAT, LLC, CHERRY HILL GARDENS LLC, CHURCHILL TOWNHOMES LLC, BRITTANY RAILEY and APPLEWOOD PROPERTY MANAGEMENT, LLC.

*"Emergency does not create power. Emergency does not increase granted power or remove or diminish the restrictions imposed upon power granted or reserved. The Constitution was adopted in a period of grave emergency. Its grants of power and its limitations on power were determined in the light of emergency, and they are not altered by emergency...what power was thus granted and what limitations were thus imposed are questions which have always been, and always will be, the subject of close examination under our constitutional system."*

- Justice of the Supreme Court, The Honorable Charles Evans Hughes
  *Home Building & Loan* Association *v. Blaisdell*, 290 U.S. 398 (1934)

# TABLE OF CONTENTS

STANDARD OF JUDICIAL REVIEW ........................................................................... 3

LAW AND ARGUMENT ........................................................................................... 5

I.     THE DEFENDANTS ARE NOT ENTITLED TO *CHEVRON* DEFERENCE DUE TO,
       AMONG OTHER THINGS, THEIR MANIFEST FAILURE TO COMPORT WITH
       THE REQUIREMENTS OF THE APA ...................................................................... 5

II.    RESTATED ABRIDGED ARGUMENT OF FACTS AND LAW ..................................... 9

III.   THE HALT ORDER EXCEEDS THE CDC'S AUTHORITY UNDER 42 U.S.C.
       §264 ............................................................................................................ 10

       A.   *The CDC does not have the authority under the Enabling Statute to
            issue or enforce the Halt Order, and it is therefore an unlawful
            exercise of the CDC's delegated authority* .............................................. 10

       B.   *The CDC's interpretation of the Enabling Statute is inconsistent with
            controlling jurisprudence and applicable canons of construction* .......... 12

       C.   *The Halt Order further violates the Enabling Regulation as the CDC
            failed in its requirement to determine the insufficiency of local
            measures before issuing the Halt Order and thus acted in excess of
            its delegated authority* ......................................................................... 14

IV.    THE HALT ORDER VIOLATED THE PROCEDURAL DUE PROCESS
       REQUIREMENTS OF THE APA ......................................................................... 15

       A.   *The Halt Order is not a Major Rule under the CRA and therefore
            must comply with the APA* .................................................................... 17

       B.   *The Halt Order is not exempted from the APA's due process
            procedural mandates under the "good cause" exception* ...................... 17

V.     THE HALT ORDER IS ARBITRARY AND CAPRICIOUS IN VIOLATION OF THE
       APA ............................................................................................................. 19

VI.    THE HALT ORDER VIOLATES THE UNITED STATES CONSTITUTION ................. 20

CONCLUSION ....................................................................................................... 20

Throughout the course of this litigation, Plaintiffs have consistently argued that the Halt Order, and its practical effect upon owners of residential real property in the Western District of Tennessee is unlawful and unconstitutional *in toto*; that the Halt Order exceeds Defendants' lawful authority and violates the Administrative Procedures Act, 5 U.S.C. §§ 501, *et seq*. ("APA"), is arbitrary and capricious, and impermissibly infringes upon constitutionally guaranteed and protected rights. In counterpoint, Defendants, for their part, have consistently argued that the Halt Order is a lawful exercise of the CDC's congressionally delegated authority under 42 U.S.C § 264 (the "Enabling Statute"), in conformance with all substantive and procedural preconditions and the APA, and consistent with constitutionally guaranteed and protected rights.

The pending competing dispositive motions —Plaintiffs' Motion for Judgment on the Administrative Record (D.E. 84) and Defendants Motion for Judgement on the Pleadings (D.E. 82)— follow Plaintiffs' 227 count Complaint (D.E. 1), Plaintiffs' 281 count First Amended Complaint (D.E. 21), Plaintiffs' 40-page Motion and Application for Emergency Hearing and Preliminary Injunction (D.E. 12), Defendants' 35-page Memorandum in Opposition (D.E. 29), the filing of amicus curiae briefs in support of both Plaintiffs and Defendants (D.E. 46, 50 and 60), a lengthy oral argument held on October 30, 2020, a Scheduling Conference on December 1, 2020, Defendants' filing of the 1000+ page Administrative Record (D.E. 79), and Defendants' 43-page Answer (D.E. 80). In addition to all of this, and contemporaneously therewith, the Defendants were engaged in litigation in at least two (2) other jurisdictions in which similar legal challenges were made to the Halt Order, and in which Defendants filed materially identical pleadings and asserted materially identical defenses to those asserted herein. Defendants even filed with this Court pleadings from those other matters and incorporated them by reference into this record. (D.E. 64).

The facts of this case are clear to the Court. The arguments on each side are well pled. Nothing new is uncovered with each successive delay demanded by the Defendants or the filing of additional

duplicative filings bearing different names but virtually identical in substance. With the *singular* exception of Defendants' eleventh hour attempt to invoke *Chevron* deference —which appears for the very first time in Defendants' Motion for Judgement on the Pleadings, but has been previously and consistently disavowed by the Defendants (in this litigation and each of the other cases involving the Halt Order)— every page of the Defendants' Motion for Judgement on the Pleadings is virtually a cut and paste from other pleadings already filed in this and other litigation, proving Plaintiffs' counsel's prediction of such a result at the last hearing, prescient.

For judicial economy, Plaintiffs were willing to rest on the arguments made in their Motion for Judgment on the Administrative Record and filings previous thereto, but Defendants refused and demanded an opportunity for the full time provided under the Scheduling Order to file Responses in Opposition and Replies. While Plaintiffs are complying with the Scheduling Order and submitting the subject Response in Opposition, Plaintiffs resist the urge to refile (for the fifth time) a voluminous brief laying out again, by chapter and verse, the irrefutable fact (and law in support thereof) that Defendants acted unlawfully and in violation of the APA and the Constitution. Instead, Plaintiffs chose to incorporate by reference —as if set forth herein verbatim— the detailed arguments and supporting law contained in their Motion for Judgment on the Administrative Record filed December 18, 2020, (D.E. 84), their Amended Complaint, (D.E. 21), Motion and Application for Emergency Hearing and Preliminary Injunction, (D.E. 12, 12-1), and oral arguments made before the Court on October 30, 2020, (*see* D.E. 67).

If this Court is looking for anything new in Defendants' Motion for Judgement on the Pleadings, it exists only on pages 21-25, where Defendants concede an undeniably telling admission by making a last-minute request for *Chevron* deference. The Defendants' new request that this Court forego an objective "best interpretation" analysis and instead defer to, and adopt, the CDC's interpretation of the Enabling Statute, demonstrates Defendants' realization (and public concession)

that the CDC acted contrary to law and that the Halt Order cannot (and will not) survive judicial review. The Defendants thus argue, as the final buzzer sounds and as the only thing that might potentially protect the Halt Order from vacatur, that this Court should disregard Defendants' previous written and oral rejection of *Chevron* deference (which, incidentally, was absolutely the correct position for the Defendants to take under the facts and applicable law of this this case) and now forego judicial review, instead, simply deferring to the CDC's conduct in implementing the Halt Order.

As is discussed in more detail below, Defendants are absolutely not entitled to *Chevron* deference or deference of any kind —— which, in fact, is why until now they have expressly disclaimed such— because the undisputed facts of this case demonstrate that the Halt Order was not the result of a lawful and deliberate adjudicative process and Congress clearly never intended to confer the authority to the CDC under the Enabling Statute to create something like the Halt Order.

The undisputed material facts in the record mandate that the Plaintiffs be awarded a final judgment as a matter of law regarding their claims that Halt Order exceeds Defendants' lawful authority, is arbitrary and capricious, violates the due process procedural requirements of the APA, and impermissibly infringes upon Plaintiffs' constitutionally guaranteed and protected rights. As a natural consequence, Defendant's Motion for Judgement on the Pleadings should be denied and Plaintiffs' Motion for Judgment on the Administrative Record should be granted.

<u>**STANDARD OF JUDICIAL REVIEW**</u>

In APA actions like the one at bar, a "reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. Upon review, a "court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be[:]"

    (A) arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law;
    (B) contrary to constitutional right, power, privilege, or immunity;
    (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D)  without observance of procedure required by law;

(E)  unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F)  unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court . . . .

5 U.S.C. § 706(2); *see Meister v. U.S. Dep't of Agric.*, 623 F.3d 363, 370 (6th Cir. 2010) (acknowledging that Section 706 governs review of agency action).  "Courts may invalidate agency adjudication or rulemaking which is 'inconsistent with the statutory mandate or that frustrate[s] the policy that Congress sought to implement.'"  *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1350 (6th Cir. 1994) (quoting *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 32 (1981)).  Likewise, "where the court determines that, given the intention of Congress to achieve some goal set forth by statute, there are compelling reasons that the agency interpretation is wrong, the court may invalidate the agency's action."  *Boettger v. Bowen*, 923 F.2d 1183, 1186 (6th Cir.1991) (internal quotations omitted).  A rule that violates the APA <u>must</u> be vacated.  *See Am. Bar Ass'n v. United States Dep't of Educ.*, 370 F. Supp. 3d 1, 40 (D.D.C. 2019) (vacating and remanding for agency to comply with procedural requirements); *Penobscot Indian Nation v. U.S. Dep't of Hous. & Urban Dev.*, 539 F. Supp. 2d 40, 54 (D.D.C. 2008) (granting vacatur of HUD rule given the seriousness of the APA violations).

As stated above and explained in more detail below, this Court should not grant Defendants *Chevron* deference but instead should undertake its own "best interpretation" review of the Halt Order to establish whether or not it was lawfully promulgated and enforced under the Enabling Statute.  This Court's finding that the Halt Order violates <u>any</u> element of the APA <u>or</u> the Constitution necessitates the denial of Defendants' Motion for Judgement on the Pleadings and the granting of Plaintiffs' Motion for Judgment on the Administrative Record.

<h1 style="text-align:center"><u>LAW AND ARGUMENT</u></h1>

In Defendants' Memorandum in Support of its Motion for Judgement on the Pleadings, (D.E. 82), approximately 33% percent of the entire legal argument is nothing more than basic background about the COVID-19 Pandemic —its origins, effects, and impact— which is only valuable if the Court was to have just returned from an eleven (11) month intergalactic voyage without any means of communicating or interacting with any human on earth. The Defendants, again, cut and paste the very same background information about COVID-19, so included in every single one of their defense briefs filed in every single one of their cases related to the Halt Order across the country, because they seek to prey upon the Court's emotions and compassion in the hope that the Court might forget its constitutional duties to adjudicate the law and ensure justice.

As has been said, time and time again, Plaintiffs fully recognize the horrible and tragic realities that the current health crisis and associated economic downturn has created for millions of Americans –including job, income, and home loss, and the fear of uncertainty. Plaintiffs unequivocally support any lawful efforts that will assist those who are vulnerable and in need. Despite the Defendants' continued efforts to re-orient the Court's view on this litigation, COVID-19 is not on trial; the unlawful Halt Order is the sole focus of this case. When the Court examines the facts and law and conducts its judicial review of the Halt Order under the appropriate standard, Defendants' Motion for Judgement on the Pleadings must be denied and Plaintiffs' Motion for Judgment on the Administrative Record must be granted.

## I. THE DEFENDANTS ARE NOT ENTITLED TO *CHEVRON* DEFERENCE DUE TO, AMONG OTHER THINGS, THEIR MANIFEST FAILURE TO COMPORT WITH THE REQUIREMENTS OF THE APA

The Defendants' late-breaking attempt to invoke *Chevron* deference —which it has previously disavowed— is a telling admission that the Halt Order is contrary to law and that the Court's intervention is urgently needed. The Enabling Statute simply cannot be read to contain a hidden, never-

before-recognized delegation of authority to the CDC to take over the nationwide control of landlord/tenant relations.

The Halt Order is a clearly a rule under the APA, because it sets out generally applicable rules of conduct that are future in effect. The APA defines a "Rule" as any "agency statement of general or particular applicability and future effect designed to <u>implement</u>, <u>interpret</u>, or <u>prescribe law or policy,</u>" (emphasis added). *See Am. Tort Reform Ass'n v. Occupational Safety & Health Admin.*, 738 F.3d 387, 406 (D.C. Cir. 2013). Neither the APA generally, nor 5 U.S.C. § 551(4) specifically, provides any exemption from this straightforward definition.[1]

The Halt Order purports to: (1) <u>implement</u> a new policy (with the effect of law) on state sanctioned and governed eviction practices and property rights; (2) <u>interpret</u> the existing law, namely the Enabling Statute; and (3) <u>prescribe,</u> through authoritative direction, how the state law contractual relationship between owners and their tenants is to be carried out during the term of the Halt Order, and suspends the operation of state property law. In other words, the Halt Order is a rule that consummates the CDC's decision-making process[2] —assuming there was such a process— and is determinative of the rights, obligations, and legal consequences between owners and non-paying tenants.[3] The Halt Order is, therefore, undoubtedly a rule under the APA.

However, the CDC did not even bother to pretend to promulgate its far-reaching Halt Order through a lawful adjudicative process, including through notice-and-comment procedures that are necessary for an agency to wield the power of legislative rulemaking. As a result, the CDC is ***not***

---

[1] The CDC stated its reasoning for not classifying the Halt Order as an APA rule by proclaiming that, rather than being a Rule, the Halt Order is "an emergency action taken under the existing authority of 42 CFR 70.2." (D.E. 1-12 at pg. 6); 85 Fed. Reg. 55296. As discussed elsewhere, 42 C.F.R. 70.2 provides no authority for the CDC's action here, nor does Section 70.2 expressly exempt the Halt Order from the rulemaking process. The CDC's argument in this respect is half-baked.

[2] *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (quoting *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)).

[3] *Id.* (quoting *Port of Bos. Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62 (1970)).

entitled to *Chevron's* deference which is afforded only to an agency that **_did_** lawfully exercise delegated authority.

While Plaintiffs might agree that ordinarily, when the judiciary is asked to serve as a referee between the agency and the public, undertaking review of an agency rule promulgated under claimed delegated congressional authority, the reviewing court should apply the two-pronged *Chevron*[4] analysis and grant the agency deference, neither *Chevron* deference nor the two-pronged *Chevron* analysis apply in this case because the CDC has not purported to exercise its rulemaking authority.[5] There is no "lawmaking pretense" with the Halt Order; in fact, the CDC has disavowed the idea that the Halt Order is a "rule."[6] This is precisely why —up until now— the CDC itself has said time and time again, that it is neither entitled to nor desires *Chevron* deference. And the Defendants are correct!

The Defendants are not entitled to *Chevron* deference because they utterly failed to follow the procedures necessary to invoke *Chevron*. The Supreme Court has held that only agency interpretations with the force of law reached through formal proceedings, such as adjudications, or notice-and-comment rulemaking, qualify for and warrant *Chevron* deference. *See Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) (Interpretations arrived at by means other than, for example "formal adjudication or notice-and-comment rulemaking . . . do not warrant *Chevron*-style deference."); *see also United States v. Mead Corp.*, 533 U.S. 218, 230 (2001) ("It is fair to assume generally that Congress contemplates administrative action with the effect of law when it provides for a relatively formal administrative procedure tending to foster the fairness and deliberation that should underlie a pronouncement of such force . . . . [T]he overwhelming number of our cases applying *Chevron* deference have reviewed the fruits of notice-and-comment rulemaking or formal adjudication."); *Smiley v. Citibank (South Dakota), N. A.*, 517 U.S. 735, 741 (1996) (APA notice and comment

---

[4] *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc. et al.*, 467 U.S. 837 (1984).
[5] (*See* D.E. 1-12); 85 Fed. Reg. 55292-55297.
[6] (*See* D.E. 1-12 at pg. 6); 85 Fed. Reg. 55296.

procedures are "designed to assure due deliberation"). The Halt Order was not the result of adjudicatory process and ignored the necessary or notice-and-comment due process element. It is therefore not entitled to *Chevron* deference.[7]  *See Landmark Legal Foundation v. IRS*, 87 F. Supp. 2d 21 (D.D.C. 2000) ("We would owe deference to the IRS's interpretation of § 6103 under *Chevron* . . . if the Service had reached the interpretation asserted here in a notice-and-comment rulemaking, a formal agency adjudication, or in some other procedure meeting the prerequisites for *Chevron* deference stated in *United States v. Mead*. But the Service makes no claim that the interpretation it developed in litigation here arose in any such procedure. Accordingly, we can give its views no more than the weight derived from their 'power to persuade.'").

Additionally, the Defendants are not entitled to *Chevron* deference because the Halt Order implicates the "major questions doctrine." The Supreme Court often declines to grant *Chevron* deference to an agency interpretation when a particular case presents an interpretive question of such significance that "there may be reason to hesitate before concluding that Congress . . . intended" to delegate resolution of that question to the agency. Although the Supreme Court has not fully articulated when the so-called "major questions doctrine" applies, and indeed, has never used this phrase itself, previous applications of this principle appear to rest on a determination by the reviewing court that one of the core assumptions underlying *Chevron* deference —that Congress intended the agency to resolve the statutory ambiguity— is no longer tenable. The fact that an agency interpretation implicates a major question is deemed to render the *Chevron* framework of review inapplicable by the reviewing court.

But now, at the last moment, Defendants pivot 180 degrees, and demand that this Court forego the appropriate and objective "best interpretation" review and instead apply *Chevron* deference to the

---

[7] To the extent the Halt Order is entitled any deference at all, such deference is very limited. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140, (1944) (certain agency actions only "entitled to respect" to the extent that those actions and/or decisions have the "power to persuade").

Halt Order.  The Defendants' new request demonstrates Defendants' realization and public concession that the CDC acted contrary to law and policy and that the Halt Order cannot and will not survive objective judicial review.

Accordingly, this Court <u>should not grant the CDC *Chevron* deference</u>, <u>nor consider</u> whether the CDC's action through the Halt Order might fall within a range of <u>reasonable interpretations</u> of the Enabling Statute.  Instead, this Court must limit its review only to interpreting the Enabling Statute, independently, and deciding whether the Halt Order is consistent with the <u>best interpretation</u> of congressional intent.  *See Miller v. Clinton*, 687 F.3d 133 (D.C. Cir. 2012) ("With *Chevron* inapplicable, we proceed to determine the meaning of the Basic Authorities Act the old-fashioned way: we must decide for ourselves the <u>best reading</u>) (emphasis added); *see also Global Tel\*Link v. Federal Communications Com'n*, 866 F.3d 397 (D.C. Cir. 2017)("The important point here is that we have carefully analyzed the contested provisions of the FCC's Order and found that they cannot survive review under the 'best reading' of the statute standard").

## II.    RESTATED ABRIDGED ARGUMENT OF FACTS AND LAW

As indicated above, Plaintiffs see no reason to restate for a fifth time the very same voluminous arguments, by chapter and verse, substantiating that Defendants unlawfully violated the APA and the Constitution.  Instead, Plaintiffs choose to incorporate by reference —as if set forth herein verbatim— the detailed arguments and supporting law contained in their Motion for Judgment on the Administrative Record and previously filed pleadings and oral arguments made before the Court; nevertheless, because, the Defendants have tendered a lengthy Response in Opposition —a Response that (1) exceeds the page number limitations without leave of Court and (2) attached a motion in violation of the strict motion deadline set out in the Scheduling Order— Plaintiffs now feel compelled to, at the very least, outline in abridged form the primary arguments made by Plaintiffs.

III.    **THE HALT ORDER EXCEEDS THE CDC'S AUTHORITY UNDER 42 U.S.C. § 264**

It is abundantly clear from reading the Enabling Statute, in the context of the larger statutory scheme —which deals only with the quarantine— that Congress does not confer upon the CDC the right or ability to promulgate or enforce the Halt Order.

A.    *The CDC does not have the authority under the Enabling Statute to issue or enforce the Halt Order, and it is therefore an unlawful exercise of the CDC's delegated authority*

The CDC's purported authority to issue the Halt Order arises out of the Enabling Statute. The Enabling Statute appears within the "Quarantine and Inspection" sections of the Public Health and Welfare Services statutes. The purpose of the Enabling Statute is to provide the CDC the authority to take certain actions to prevent the "introduction, transmission, or spread of communicable diseases" into the United States from a foreign country or into a State or territory from another State or territory (inter-state spread) "from infected people or animals." 42 U.S.C§ 264(a). To this end, Congress through the Enabling Statute, spoke clearly and precisely to delineate specific public health related measures that the CDC is authorized to undertake to prevent the transmission or spread of a communicable disease, namely, "inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected and dangerous to human beings . . . and other measures, as in his judgment may be necessary".[8]

A clear reading of the Enabling Statute evidences Congress' unambiguous intent to ***only*** delegate to the CDC the authority to take certain quarantine related actions. Namely, actions regarding people, animals, or goods, located within one State and infected with a contagious disease, for purposes of restraining the activities of those infected people, animals, or goods, to prevent the spread of that contagious disease to another State. It is equally clear in the Enabling Statute that Congress unambiguously chose ***not*** to delegate to the CDC broad and expansive authority to: (1) take the real

---

[8] *Id.*

property of private citizens; (2) exercise authority over individuals, animals, or personal property neither infected with a contagious disease nor even believed to be infected with a contagious disease; (3) exercise authority over the residential housing market; (4) exercise authority over residential evictions which implicate only intra-state concerns and have nothing to do with inter-state or foreign concerns; (5) suppress state rights and state real property laws reserved exclusively to the authority of the state; (6) take action without any determination of insufficiency at the local level; and (7) create new and drastic criminal conduct. The Halt Order simply has no relationship to quarantine or quarantine related activities and cannot fit within the clear and precise text of the Enabling Statute.

Perhaps equally egregious, without any authority in the Enabling Statute, the CDC instituted criminal penalties —intended by Congress to punish infected individuals or individuals believed to be infected who violate their quarantine orders and, among other things, infect others[9] — to now impose jail time and hundreds of thousands of dollars in monetary fines against real property owners doing nothing more than enforcing their fundamentally protected real property rights. This was obviously not Congress' intent in enacting the quarantine statutes or related criminal penalties. There can simply be no dispute that the text of the Enabling Statute does not support the Halt Order, nor can it be disputed that Congress deliberately chose *not* to expressly expand the CDC's authority to take action beyond quarantine measures relating to infected people, animals, and personal, property (or those suspected of being infected) who might spread the contamination between states.

Without citing any evidence for the proposition, the CDC argues that the delegated authority articulated by Congress in the text of the Enabling Statute was intended to be so broad and so expansive that it would allow the CDC to do *anything* it wanted, even when such action "infringe[d] on personal liberties or property rights."[10]

---

[9] 42 U.S. Code § 271(a).
[10] (D.E. 29 at pg. 17).

The <u>best interpretation</u> of Congress' intent as to the authority granted to the CDC in the text of the Enabling Statute is clear and precise and does not cover the Halt Order. The CDC did not have the authority to issue the Halt Order and the sweeping nationwide eviction moratorium therein. There is no ambiguity on this point and this Court must enforce the unambiguously expressed intent of Congress. As such, this Court should conclude —without further analysis— that the Halt Order is in excess of the CDC's statutory authority and must be struck down and vacated. Defendants' Motion for Judgement on the Pleadings must be denied, and Plaintiffs' Motion for Judgment on the Administrative Record must be granted.

### B. The CDC's interpretation of the Enabling Statute is inconsistent with controlling jurisprudence and applicable canons of construction

The CDC argues that, despite being nowhere in the text of the Enabling Statute, the Enabling Statute clearly and unambiguously "evinces"[11] Congress' intent to "vest the CDC with broad authority to take decisive action if required to control the spread of dangerous infectious diseases,"[12] but then, turns right around and concedes that this authority is actually *not* contained within the express text of the Enabling Statute and must be inferred from Congress's use of the phrase "such regulations as in his judgment are necessary."[13]

The CDC's real (<u>but wrong</u>) argument is that Congress' intent is ambiguous as to the breadth of the authority it intended to delegate to the CDC, that Congress granted the CDC broad, expansive, and an almost limitless grant of authority. In other words, the CDC asks this Court to find that the <u>best interpretation</u> of Congressional intent is that the Enabling Statute empowers the CDC to issue and enforce anything it wants as long as the CDC veils the rule —rightfully or not— in the cloak of a

---

[11] (D.E. 29 at pg. 15).
[12] (*Id*. at pg. 15).
[13] (*Id*. at pg. 16).

"public health" measure. As a result, this Court would have to conclude that the CDC's action through the Halt Order is the <u>best interpretation</u> of Congressional intent in order to uphold the Halt Order.[14]

But this is also patently untrue and not a permissible construction of the Enabling Statute. As explained in great detail in Plaintiff's Motion for Judgment on the Administrative Record at pages 13-26, well established canons of construction and jurisprudence offer guideposts to aid a court in its exercise of statutory interpretation: (1) Explicitness; (2) Federalism; (3) Avoidance of Constitutional Problems; (4) Cannons of Statutory Interpretation – *Ejusdem Generis* and *Noscitur a Sociis*; and (5) Intent and Context. Just as before, evaluating the Halt Order under this interpretation framework makes clear that the <u>best interpretation</u> of the Enabling Law is that the Halt Order exceeds the statutory authority delegated by Congress to the CDC, and the Halt Order must therefore be struck down and vacated.

Because of Plaintiffs' challenge to the Halt Order, the CDC now asks this Court to grant it extremely broad deference in allowing a virtually limitless interpretation of the text of the Enabling Statute "in light of history and experience given the havoc wrecked by past scourges like yellow fever."[15] In other words, the CDC asks this Court to find, as a matter of law, that had Congress been able to fully understand a health pandemic like Yellow Fever, or the 1918 Flu, or even COVID-19, Congress would have explicitly expanded the CDC's authority in the text of the Enabling Statute to include the actions taken by the CDC under the Halt Order. But the CDC has it completely backwards. <u>Expanding</u> an agency's delegated authority is the sole and exclusive function of Congress. <u>Restraining</u> agency action that is in excess of delegated congressional authority is the function of the judiciary.

What is abundantly and undeniably clear is that a reading of the text in the Enabling Statute evidences Congress' unambiguous intent to delegate to the CDC ***only*** the authority to take certain

---

[14] *See Miller v. Clinton*, 687 F.3d 133. Se*e also Global Tel\*Link*, 866 F.3d 397.
[15] (D.E. 29 at pg. 16).

**quarantine** related actions and **_not_** to delegate to the CDC the expansive authority embodied in the Halt Order. Similarly, based upon the 5 guideposts of statutory construction, the Halt Order is not the best interpretation of the Enabling Statute. The CDC asks this Court to do no less than rewrite the text of the Enabling Statute, to reform Congress' clear intent, and expand the limited quarantine authority delegated to the CDC. Based on the guiding principles, this Court must find that the Halt Order fails in all respects and therefore must be struck down and vacated under 5 U.S.C. § 706. Defendants' Motion for Judgement on the Pleadings must be denied, and Plaintiffs' Motion for Judgment on the Administrative Record must be granted.

> ### C. The Halt Order further violates the Enabling Regulation as the CDC failed in its requirement to determine the insufficiency of local measures before issuing the Halt Order and thus acted in excess of its delegated authority

Lastly, the Enabling Regulation[16] adds an additional pre-condition requiring the CDC to <u>first determine</u> that "measures taken by local health authorities…are insufficient to prevent the spread of any of communicable diseases" <u>before</u> having the delegated authority to issue or implement any agency action.[17] The CDC states in the Halt Order that it found "that measures in state and local jurisdictions . . . do not provide protections for renters equal or greater than the protections provided in the Order[,]"[18] but offer no evidence that demonstrates that it undertook an investigation into local measures in the Western District of Tennessee, nor any evidence that it made a determination that the measures in the Western District of Tennessee were insufficient, before issuing the Halt Order. <u>Likewise, no such evidence was included in the Administrative Record</u>.[19] This failure by the CDC removes from it any authority to act under the Enabling Regulation, rendering the Halt Order an unlawful exercise.

---

[16] 42 C.F.R. § 70.2.
[17] *Id.*
[18] (D.E. 1-12 at pg. 6); 85 Fed. Reg. at 55296.
[19] (D.E.79, 81).

Again, and as predicted by Plaintiffs at the last hearing, the Administrative Record filed by the Defendants, which purports to be *everything* that went into the decision to craft and implement the Halt Order, contains nothing beyond the materials footnoted in the Halt Order published in the Federal Register and contains nothing regarding evaluations of local measures. Indeed, there is nothing contained therein about local measures at all.

While Plaintiffs have not themselves surveyed the health measures taken by local municipalities nationwide, Plaintiffs can offer this Court details of the health measures undertaken in the Western District of Tennessee by Shelby County Government. Shelby County Health Directive No. 14 is a local measure that was intentionally designed and implemented to prevent the spread of COVID-19 potentially resulting from evictions.[20] The CDC did not make a determination that Shelby County Health Directive No. 14 is insufficient to prevent the spread of COVID-19 through evictions. And because the CDC violated the procedural notice and comment requirement, Shelby County and the landowners residing in Shelby County were denied their due process rights to appear and present evidence of these measures. Since the CDC failed to comply with the mandatory pre-condition it established for itself under the Enabling Regulation, any action taken by the CDC through the Halt Order must be deemed an action that exceeded any authority delegated by Congress to the CDC. Defendants' Motion for Judgement on the Pleadings must be denied and Plaintiffs' Motion for Judgment on the Administrative Record must be granted.

## IV. THE HALT ORDER VIOLATED THE PROCEDURAL DUE PROCESS REQUIREMENTS OF THE APA

Regulatory action that constitutes a rule under the APA —like the Halt Order— is legislative in nature and has the force and effect of law, despite being promulgated by a federal agency. Congress

---

[20] *See* Shelby County Health Department, *Formal Issuance of Health Order and Directive No. 14,* Oct. 12, 2020, located at https://www.shelbytnhealth.com/Document Center/View/1916/Health-Directive-No--14 (last accessed January 15, 2021). Pursuant to Fed. R. Evid. 201, the Court may take judicial notice of Directive 14 and the content thereof. Directive 14 bears the seal of the County of Tennessee and is a self-authenticating document pursuant to Fed. R. Evid. 902.

thus requires that these agencies' actions strictly adhere to certain procedural pre-conditions and mandates enshrined within the APA; i.e. <u>notice</u>[21] and <u>comment</u>.[22]  These procedural pre-conditions allow those affected by the proposed rule an opportunity to be heard in order for the agency to understand, acknowledge, and address the potential effects of the proposed rule.  The statutory requirement for notice-and-comment is neither a suggestion nor simply good practice; it is a <u>mandatory due process requirement</u> within the APA, without which the regulatory action is necessarily void *ab initio* and must be struck down.

There is no dispute in this litigation that, instead of complying with these due process mandates, the CDC waited until July 24, 2020, when the expiration of the eviction protections enacted under the CARES Act ended, and then waited again —an additional thirty days until August 28, 2020, after the expiration of the notice period in the CARES Act expired— to, for the first time, promulgate the Halt Order on September 1, 2020 –only three (3) days before its publication and enactment[23], and <u>without undertaking the procedural due process notice-and-comment statutory requirement</u>.  The Halt Order is, therefore, in clear violation of the APA's due process pre-conditions, void *ab initio*, and must be struck down and vacated under 5 U.S.C. § 706.  *See Hoctor v. U.S. Dep't of Agric*., 82 F.3d 165 (7th Cir. 1996)  ("a rule promulgated by an agency that is subject to the Administrative Procedure Act is invalid unless the agency first issues a public notice of proposed rulemaking, describing the substance of the proposed rule, and gives the public an opportunity to submit written comments"), Defendants' Motion for Judgement on the Pleadings must be denied, and Plaintiffs' Motion for Judgment on the Administrative Record must be granted.

In an effort to justify its deliberate violation of the APA's due process pre-conditions, the CDC first sought to erroneously proclaim that the Halt Order is "an emergency action taken under the

---

[21] 5 U.S.C. § 553(b).
[22] 5 U.S.C. § 553(c).
[23] 85 Fed. Reg. 55296.

existing authority of 42 CFR 70.2" not "within the meaning of the Administrative Procedure Act."[24] Recognizing, however, that the Halt Order is a rule and that the CDC's erroneous proclamation was insufficient to remove the Halt Order from the mandatory due process pre-conditions of the APA, the CDC then wrongly argues that the Halt Order is exempt from the APA's procedural pre-conditions because (1) it is actually a Major Rule under the Congressional Review Act, 5 U.S.C. §§ 801, *et seq.* ("CRA") or (2) because of "good cause".

### A. *The Halt Order is Not a Major Rule under the CRA and therefore must comply with the APA*

To qualify as a Major Rule[25] under the CRA, the CDC was required —prior to issuance of the Halt Order— to have, among other things, submitted the Halt Order and the required report to each House of Congress and the Comptroller General. 5 U.S.C. § 801. The Halt Order would then take effect 60 days after either the date on which Congress received the required report on the Halt Order or the date the Halt Order is published in the Federal Register, whichever is later.[26] The CDC did not undertake any of the steps needed to put the Halt Order through the Major Rule process and, therefore the Halt Order cannot qualify as a Major Rule.

### B. *The Halt Order is not exempted from the APA's due process procedural mandates under the "good cause" exception*

In a final (unsuccessful) effort by the CDC to remove the Halt Order from the ambit of the APA, the CDC argues that the Halt Order is exempt from the APA's due process procedural requirements by making a singular conclusory claim under the "good cause" exception.[27] The CDC's burden to show that good cause exists is a heavy one. *See United States v. Cain*, 583 F.3d 408, 420 (6th Cir. 2009) ("the good cause exception is narrowly construed and only reluctantly countenanced").

---

[24] (D.E. 1-12 at pg. 6); 85 FR 55296.
[25] "The term 'major rule' is defined in 5 U.S.C. § 804(2).
[26] 5 U.S.C. § 801(a)(3)(A).
[27] (D.E. 1-12 at pg. 6); 85 FR 55296.

Like with the CDC's two (2) alternate —but equally unsustainable claimed due process exemptions[28]— the CDC's "good cause" exemption fails to satisfy that heavy burden. Good cause does not exist simply by virtue of an agency's proclamation of emergency. *See Sorenson Commc'ns Inc. v. F.C.C.*, 755 F.3d 702, 707 (D.C. Cir. 2014). Nor can an agency establish good cause because of the mere existence of a deadline, *United States Steel Corp. v. United States Environmental Protection Agency*, 595 F.2d 207, 213 (5th Cir. 1979), especially when that deadline was artificially and unnecessarily created by virtue of the agency's own inaction. Unsurprisingly, those are the very two (2) arguments made by the CDC to support its "good cause" exemption claim. The CDC argues that COVID-19 is an emergency. While Plaintiffs agree with that general sentiment, for purposes of the "good cause" analysis under the APA, that designation is immaterial. The question is not whether an emergency exists but rather whether the failure to provide the notice and comment period stemmed directly from an emergency situation; here it did not. The CDC had from March 28, 2020 (when the CARES Act 120-day eviction moratorium took effect) until August 28, 2020 (when the CARES Act notification period expired) to: (i) consider and promulgate a lawful and proper rule, (ii) to satisfy the requisite requirement for a notice-and-comment period, and (iii) to lawfully issue the Halt Order. Each of these required steps could have been undertaken during the pendency of the CARES Act eviction protection. No emergency deadline existed during that time, and the fact that the CDC waited until September 1, 2020, creating for itself an "emergency deadline," does not relieve the CDC of the procedural requirements of the APA.[29]

---

[28] Namely, the Halt Order is an "Emergency Action" not a "Rule" and the Halt Order is as a Major Rule under the CRA.

[29] This Court must then ask, why did the CDC blatantly violate the mandatory due process requirements of the APA knowing that any subsequent challenge and judicial review would necessarily result in the Halt Order being immediately struck down on procedural due process grounds? The answer, quite candidly, is because the CDC had just learned from two (2) recent experiences that compliance with procedural due process involving agency action in excess of delegated congressional authority will either forestall the issuance of unlawful action like the Halt Order or enjoin its effect altogether. Given the edict under which the CDC was operating from the highest level of the executive branch, the CDC could not allow the Halt Order to share the same fate as other recently doomed agency rules. The CDC therefore made the calculated, deliberate, and unlawful choice to

# V. THE HALT ORDER IS ARBITRARY AND CAPRICIOUS IN VIOLATION OF THE APA

"The Administrative Procedure Act embodies a basic presumption of judicial review." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2567 (2019). Under the APA, if agency action is found to be arbitrary and capricious, it must be held unlawful and set aside. 5 U.S.C. § 706(2)(a); *Simms v. Nat'l Highway Traffic Safety Admin.*, 45 F.3d 999, 1003 (6th Cir. 1995). Section 706 requires the reviewing court to engage in "a substantial inquiry, *Id.*; limited to the administrative record, 5 U.S.C. § 706; *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

A rule fails the relevant inquiry, <u>and is thus arbitrary and capricious</u>, if any of the following factors are present: (1) the agency failed to examine the relevant data and articulate a satisfactory explanation for the action, including a rational connection between the facts found and the choice made; (2) the agency failed to provide the essential facts upon which the administrative decision was based and explain what justifies the determination with actual evidence beyond a conclusory statement; (3) the agency cannot demonstrate that the decision is the product of logical or consistent reasoning; (4) the agency cannot demonstrate it considered all important factors relevant to its action - such as the policy effects of its decision or vital aspects of the problem in the issue before it; (5) the agency cannot demonstrate it considered less restrictive, yet easily administered regulatory alternatives. *Motor Vehicle Manufacturers Association v. State Farm Auto Mutual Insurance Co.*, 463 U.S. 29, 42-44 (1983); *see* 5 U.S.C. § 706; *see also City of Cleveland v. Ohio*, 508 F.3d 827, 838 (6th Cir. 2007). The presence of any of these factors dooms the rule in question as "arbitrary and capricious" and necessities that the Rule be vacated.

As detailed at considerable length in Plaintiff's Motion (D.E. 84-1, pgs. 28-42) based upon: (i) its pretext and purpose as an economic measure, and not a pandemic measure; (ii) the vagueness and

---

violate APA procedural due process, hoping the short duration of the Halt Order would provide ample protection from judicial review.

ambiguity of the Halt Order itself; (iii) the weak and unsupported "scientific" data upon which the CDC bases its sweeping nationwide action; and (iv) the Halt Order's overbreadth, resulting in enormous economic effect, this Court must find that the Halt Order is wholly arbitrary and capricious and must be immediately "set aside" and vacated. 5 U.S.C. § 706(2)(C).

Defendants' Motion for Judgement on the Pleadings must be denied and Plaintiffs' Motion for Judgment on the Administrative Record must be granted.

## VI.     THE HALT ORDER VIOLATES THE UNITED STATES CONSTITUTION

Plaintiffs' argue that the Halt Order violates the Takings Clause and is a denial and deprivation of Plaintiffs' rights to substantive and procedural Due Process under the Fifth Amendment; violates the Tenth Amendment and the Anti-Commandeering Doctrine; cannot pre-empt applicable State law under the Supremacy Clause; impedes Plaintiffs' fundamental right to access the judiciary; and acts as an unlawful suspension of law.  Plaintiffs specifically incorporate by reference all constitutional arguments and supporting law contained in their Amended Complaint, Motion and Application for Emergency Hearing and Preliminary Injunction, and oral arguments made before the Court on October 30, 2020.

## <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion for Judgement on the Pleadings be DENIED, Plaintiffs' Motion for Judgment on the Administrative Record be GRANTED and that the Halt Order be declared unlawful, set aside, and struck down with no further force and effect.

Respectfully Submitted,

**GLANKLER BROWN, PLLC**

/s/ S. Joshua Kahane

S. Joshua Kahane (BPR #23726)

jkahane@glankler.com

Aubrey B. Greer (BPR #35613)

agreer@glankler.com

6000 Poplar Avenue, Suite 400

Memphis, Tennessee 38119

Telephone: (901) 525-1322

Facsimile: (901) 525-2389

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 15, 2021 a copy of the foregoing was served on all parties via the Court's ECF System:

United States Secretary of Housing and Urban Development
c/o Associate General Counsel for Litigation - Room 10258
451 Seventh Street, S.W.
Washington D.C. 20410

Honorable Benjamin S. Carson, M.D.
United States Secretary of Housing and Urban Development
c/o Associate General Counsel for Litigation - Room 10258
451 Seventh Street, S.W.
Washington D.C. 20410

Honorable United States Attorney General William P. Barr
U.S. Department of Justice
950 Pennsylvania Avenue, NW, Room 1111
Washington, D.C. 20530

Honorable Nina B.  Honorable Nina B. Witkofsky, Acting Chief of Staff
United States Center for Disease Control and Prevention
1600 Clifton Road
Atlanta, Georgia 30333

Honorable Secretary Alex Azar
United States Department of Health & Human Services
200 Independence Avenue, S.W., Room 713-F
Washington, D.C. 20201

Honorable Vice Admiral Jerome M. Adams, M.D., Surgeon General
United States Department of Health & Human Services
200 Independence Avenue, S.W., Room 713-F
Washington, D.C. 20201

Honorable D. Michael Dunavant,
United States Attorney General for the Western District of Tennessee
U.S. Attorney's Office
167 North Main Street, Suite 800
Memphis, Tennessee 38103

/s/ S. Joshua Kahane
S. Joshua Kahane