# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| TIGER LILY LLC, *et al.*,<br><br>    Plaintiffs,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.*,<br><br>    Defendants. | Case No. 2:20-cv-2692-MSN-atc |

## DEFENDANTS' EMERGENCY MOTION FOR STAY PENDING APPEAL AND FOR IMMEDIATE ADMINISTRATIVE STAY

Defendants respectfully seek an emergency stay pending appeal of the Court's judgment of March 16, 2021, declaring unlawful a temporary moratorium on certain evictions issued by the Centers for Disease Control and Prevention (CDC) as one of several measures to combat the spread of COVID-19. *See* ECF No. 104. As this Court recognized in denying Plaintiffs' request for a preliminary injunction, Plaintiffs suffer no irreparable injury as a result of the moratorium. *Tiger Lily LLC v. U.S. Dep't of Hous. & Urb. Dev.*, No. 20-2692, --- F. Supp. 3d ----, 2020 WL 7658126, at *8 (W.D. Tenn. Nov. 6, 2020). Indeed, their "temporary monetary harm" is the "antithesis" of "irreparable harm." *Id.* The Court correctly found that "any loss of rental income is merely temporary" because the CDC Order "does not relieve tenants of their obligation to pay rent." *Id.* Moreover, Plaintiffs "may sue their tenants for unpaid rent." *Id.* And since the Court issued that opinion, Congress has appropriated over $45 billion in emergency rental assistance, permitted for use for the payment of rent and rental arrears.

Meanwhile, scientific evidence has shown that evictions exacerbate the spread of COVID-19, which has already killed more than half a million Americans. It is Defendants' understanding that

local courts have already been informed that evictions may proceed in the Western District of Tennessee.[1] Such evictions upend the status quo and risk additional COVID-19 spread in this District. The resulting harm to the public interest cannot be undone. The balance of the harms and the public interest thus overwhelmingly favor the government. Moreover, although Defendants recognize the Court has held otherwise, Defendants respectfully submit that they have a substantial likelihood of success on appeal. Accordingly, Defendants hereby move for an emergency stay pending appeal of the judgment to prevent evictions from occurring, and risking an increase in COVID-19 spread, while the appeal is under consideration. *See* Fed. R. Civ. P. 62(c). Defendants further request that the Court enter an immediate administrative stay of the judgment while the Court considers this motion.

## ARGUMENT

The factors governing a request for a stay pending appeal are "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). Where the federal government is a party, its interests and the public interest overlap. *See Nken v. Holder*, 556 U.S. 418, 420 (2009).

I.  **The Balance Of Harms And Public Interest Overwhelmingly Warrant A Stay Pending Appeal.**

This Court correctly concluded that Plaintiffs have suffered no irreparable injury as a result of the temporary eviction moratorium. It is equally clear that setting aside the moratorium exacerbates the significant public-health risks identified by CDC and recognized by Congress in its legislative extension of the moratorium. The Sixth Circuit has previously recognized that immediate stays are

---

[1] *See* Tom Bailey, *State Supreme Court tells all West Tennessee judges: Eviction ban lifted*, Daily Memphian (March 16, 2021), https://dailymemphian.com/section/business/article/20703/rulings-effect-on-evictions-is-unclear-renters.

2

warranted to allow governmental efforts to combat the spread of COVID-19 to remain in place, and it has issued such stays even when, in sharp contrast to this case, plaintiffs faced "the very real risk of losing their businesses." *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 F. App'x 125, 129 (6th Cir. 2020). An immediate stay is likewise warranted here.

The "gravity of the pandemic" is undeniable. Order 13, ECF No. 103 (Page ID #2898). COVID-19 has killed more than half a million Americans, imposed critical strains on U.S. healthcare systems, devastated domestic industries, and triggered unprecedented restrictions on interstate and foreign travel. Against that backdrop of this evolving and urgent situation, "federal courts across the country have routinely concluded that undoing orders deemed necessary by public health officials and experts to contain a contagious and fast-spreading disease would result in comparatively more severe injury to the community." *Brown v. Azar*, --- F. Supp. 3d ----, No. 20-3702, 2020 WL 6364310, at *22 (N.D. Ga. Oct. 29, 2020), *appeal filed*, No. 20-14210 (11th Cir. Nov. 9, 2020), *mot. for inj. pending appeal denied*, No. 20-14210 (11th Cir. Dec. 17, 2020).

Congress can undoubtedly act to control an "interstate epidemic." *United States v. Comstock*, 560 U.S. 126, 134–35, 148 (2010) (citing U.S. Const. art. I, § 8, cl. 3 (the Commerce Clause)). And CDC's temporary moratorium on evictions has been a crucial part of the federal government's broader effort to curb the spread of COVID-19. CDC found that, absent the moratorium, 30 to 40 million people in the United States could be at risk of eviction, and a significant portion of that population would likely be forced to move into congregate living situations, such as housing shelters, or to become homeless. 85 Fed. Reg. at 55294–95. Because COVID-19 spreads easily among people in close contact, the risk of transmission would be highly exacerbated, with one study finding that "household contacts are estimated to be 6 times more likely to become infected by an index case of COVID-19 than other close contacts." *Id.* at 55294. In part because maintaining social distance is particularly difficult in these settings, "[e]xtensive outbreaks of COVID-19 have been identified in homeless

3

shelters," including those in Seattle, Boston, and San Francisco. *Id.* at 55295.

State efforts at establishing moratoria have proven inadequate to curb the risks posed by evictions. The importance of the CDC Order is highlighted by the experience in states that imposed their own moratoria and then rescinded the restrictions. CDC found that lifting eviction moratoria led to a 40 percent increased risk of contracting COVID-19 among evicted persons and family or friends with whom they shared housing after eviction. 86 Fed. Reg. at 8022. Moreover, the same models predicted an increase in overall community transmission even among those who did not share housing when evictions occur. *Id.*

CDC's analysis underscored the extent to which state and local measures have insufficiently addressed the spread of COVID-19. Even where states have imposed some forms of moratoria, those restrictions have often lapsed, and a state-by-state analysis indicated that "eviction moratoria and other protections from eviction have expired or are set to expire in many jurisdictions." 85 Fed. Reg. at 55296 n.36. Data comparing COVID-19 spread in states that lifted eviction moratoria with states that maintained eviction moratoria "showed significant increases in COVID-19 incidence and mortality approximately 2–3 months after eviction moratoria were lifted." 86 Fed. Reg. at 8022. The data indicated that "over 433,000 cases of COVID-19 and over 10,000 deaths could be attributed to lifting state moratoria." *Id.* Thus, interference with the temporary eviction moratorium will cause severe and irreparable harm.

By contrast, every other court to address the issue has agreed with this Court's conclusion that plaintiff landlords face no irreparable injury as a result of the moratorium. *See Brown*, 2020 WL 6364310, at *17–21; *Chambless Enters., LLC v. Redfield*, No. 20-1455, 2020 WL 7588849 (W.D. La. Dec. 22, 2020), *appeal filed*, No. 21-30037 (5th Cir. Jan. 21, 2021); Order, *KBW Inv. Props. LLC v. Azar*, ECF No. 16, No. 20-4852 (S.D. Ohio Sept. 25, 2020). The CDC Order does not excuse tenants' obligations to pay rent or to comply with other obligations of their lease, and it does not bar landlords from

4

pursuing state court eviction proceedings as long as the eviction itself does not occur while the moratorium remains in place. This Court correctly emphasized that Plaintiffs' "temporary monetary harm" is "the antithesis" of "irreparable harm." *Tiger Lily*, 2020 WL 7658126, at *8. A tenant's inability to remain current on rent in the midst of the economic destruction wrought by the pandemic does not demonstrate that the tenant will be unable to pay the debt in the future. *See Brown*, 2020 WL 6364310, at *19–20. Indeed, as the *Brown* court anticipated, *id.* at *20, Congress has now appropriated more than $45 billion in emergency assistance for rent and rental arrears, *see* Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, div. N, tit. V, § 501(c)(2) (2020); American Rescue Plan Act of 2021, Pub. L. No. 117-2, § 3201(a)(1), (d)(1)(A)(i) (2021).

In sum, Plaintiffs will suffer no irreparable injury as a result of a stay, and the effects of the judgment threaten to compound the harms posed by an already devastating pandemic.

**II. The Government Is Likely To Succeed On The Merits.**

Defendants acknowledge that this Court has held that the CDC Order exceeds the agency's statutory authority under the Public Health Service Act (PHSA). Defendants nevertheless submit that, on appeal, they are likely to succeed on their argument that the plain language of the PHSA permits CDC to issue a temporary eviction moratorium when "necessary" to prevent the interstate spread of a deadly disease during a once-in-a-century global pandemic, particularly in light of Congress's ratification of the CDC Order. 42 U.S.C. § 264(a).

In relevant part, the PHSA authorizes the CDC Director to make and enforce such regulations "as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases . . . from one State or possession into any other State or possession." 42 U.S.C. § 264(a). This provision codified the federal government's "basic authority to make regulations to prevent the spread of disease into this country or between the States." H.R. Rep. No. 78-1364, at 24 (1944).

5

The second sentence of § 264(a) does not implicitly limit this broad grant of authority so as to preclude the issuance of a temporary eviction moratorium. That sentence includes a list of measures the Secretary "may provide for" "[f]or purposes of carrying out and enforcing . . . regulations" promulgated under the first sentence, such as "inspection, fumigation, disinfection, sanitation, pest extermination, destruction of [infected or contaminated] animals or articles . . . , and other measures, as in his judgment may be necessary." 42 U.S.C. § 264(a). That list is not exhaustive. That is clear from other subsections of § 264 itself, which expressly contemplate other exercises of authority. *Accord Brown*, 2020 WL 6364310, at \*8; *Chambless*, 2020 WL 7588849, at \*5; *Independent Turtle Farmers of La., Inc. v. United States*, 703 F. Supp. 2d 604, 619-20 (W.D. La. 2010).

What is more, Congress explicitly extended the CDC Order issued "under section 361 of the Public Health Service Act (42 U.S.C. 264)." Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, div. N, tit. V, § 502, 134 Stat. 1182, 2079 (2020). This language demonstrates that Congress did not doubt that the CDC had acted within the scope of its authority. Although Congress did not extend the moratorium indefinitely, *see* Order 19 (Page ID # 2904), it nevertheless expressly recognized that the moratorium was a proper exercise of CDC's authority under § 264(a).

Defendants respectfully disagree that accepting CDC's understanding of its statutory authority risks creating an unconstitutional delegation of legislative power. Indeed, Congress has endorsed the very agency action in question. And even apart from Congress's endorsement of CDC's action, it is not the case that approving the temporary moratorium would effectively sanction virtually unbridled exercises of authority. The moratorium is a temporary measure adopted to combat an unprecedented deadly pandemic. Whatever the limits of § 264, it encompasses this measure in these circumstances.

Nor is there a nondelegation concern here under well-established Supreme Court precedent. "Only twice in this country's history" (and only in 1935) has the Supreme Court "found a delegation excessive—in each case because 'Congress had failed to articulate *any* policy or standard' to confine

6

discretion." *Gundy v. United States*, 139 S. Ct. 2116, 2129 (2019) (plurality opinion) (quoting *Mistretta v. United States*, 488 U.S. 361, 373 n.7 (1989), and citing *A. L. A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 1570 (1935); *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935)).  "By contrast," the Supreme Court has "over and over upheld even very broad delegations." *Id.* at 2129.  Here, section 264(a) provides the requisite "intelligible principle" to which the agency must conform by permitting only measures aimed at preventing the interstate introduction, transmission, or spread of communicable disease from State to State or from foreign countries into the United States. *Mistretta*, 488 U.S. at 372.

## CONCLUSION

Defendants respectfully request that the Court stay its judgment pending appeal and enter an immediate administrative stay while this motion is under consideration.

Dated:  March 17, 2021

    Respectfully submitted,

    BRIAN M. BOYNTON
    Acting Assistant Attorney General

    ERIC BECKENHAUER
    Assistant Director, Federal Programs Branch

    */s/ Leslie Cooper Vigen*
    LESLIE COOPER VIGEN
    Trial Attorney (DC Bar No. 1019782)
    STEVEN A. MYERS
    Senior Trial Counsel (NY Bar No. 4823043)
    United States Department of Justice
    Civil Division, Federal Programs Branch
    1100 L Street, NW
    Washington, DC 20005
    Tel:  (202) 305-0727
    Fax:  (202) 616-8470
    E-mail:  leslie.vigen@usdoj.gov

JOSEPH C. MURPHY, JR.
Acting United States Attorney

Stuart J. Canale (TN BPR # 12590)
stuart.canale@usdoj.gov
Audrey M. Calkins (TN BPR # 30093)
audrey.calkins@usdoj.gov
Assistant United States Attorneys
167 N. Main St. Suite 800
Memphis, Tennessee 38103
Phone: 901-544-4231
Fax: 901-544-4230

*Counsel for Defendants*

8

## CERTIFICATE OF CONFERENCE

I hereby certify, pursuant to Local Rule 7.2(a)(1)(B), I consulted with counsel for Plaintiffs, S. Joshua Kahane, on March 17, 2021, via telephone. Plaintiffs do not agree to the relief requested.

Dated: March 17, 2021

## CERTIFICATE OF SERVICE

I hereby certify I served this document today by filing it using the Court's CM/ECF system, which will automatically notify all counsel of record.

Dated: March 17, 2021

*/s/ Leslie Cooper Vigen*