**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: March 29, 2021

Ms. Audrey Martha Calkins
Mr. Stuart J. Canale
Office of the U.S. Attorney
167 N. Main Street, Suite 800
Memphis, TN 38103

Mr. Aubrey B. Greer
Mr. Josh Kahane
Glankler Brown
6000 Poplar Avenue, Suite 400
Memphis, TN 38119

Ms. Alisa B. Klein
Mr. Brian James Springer
Ms. Leslie Cooper Vigen
U.S. Department of Justice
Civil Division - Federal Programs Branch
1100 L Street, N.W., Room 12002
Washington, DC 20530

    Re: Case No. 21-5256, *Tiger Lily, LLC, et al v. HUD, et al*
          Originating Case No. : 2:20-cv-02692

Dear Counsel,

  The attached order, designated for publication, was filed today in this case.

                                Yours very truly,

                                Deborah S. Hunt, Clerk

                                Cathryn Lovely, Opinions Deputy

cc: Mr. Thomas M. Gould

Enclosure

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0074p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

| | | |
|---|---|---|
| TIGER LILY, LLC, et al., *Plaintiff-Appellees*, v. UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., *Defendants-Appellants*. | ⎫⎬⎭ | No. 21-5256 |

On Emergency Motion for Stay Pending Appeal and Immediate Administrative Stay.

United States District Court for the Western District of Tennessee at Memphis;
No. 2:20-cv-02692—Mark S. Norris Sr., District Judge.

Decided and Filed:  March 29, 2021

Before:  NORRIS, THAPAR, and BUSH, Circuit Judges.

---

## COUNSEL

**ON MOTION AND REPLY:**  Alisa B. Klein, Brian J. Springer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants.  **ON RESPONSE:**  S. Joshua Kahane, Aubrey B. Greer, GLANKLER BROWN, PLLC, Memphis, Tennessee, for Appellees.

---

## ORDER

---

Last September, the Centers for Disease Control and Prevention ordered a nationwide moratorium on residential evictions.  As justification for its involvement in landlord-tenant relations, the CDC cited a provision of the Public Health Service Act authorizing it to sanitize property exposed to contagion.  Plaintiffs in this case—all of whom own or manage residential

rental properties—challenged the CDC's order and its subsequent extension. The district court entered judgment in favor of Plaintiffs. The government now moves to stay the district court's order pending appeal. We deny its motion.

I

In March 2020, Congress responded to the wide-ranging economic effects of the COVID-19 pandemic by passing the CARES Act. *See* Pub. L. No. 116-136, 134 Stat. 281 (2020). Among other economic relief provisions, the Act included a 120-day moratorium on eviction filings based on nonpayment of rent for tenants residing in certain federally financed rental properties. *Id.* § 4024(b). That moratorium expired on July 25, 2020.

After the congressionally authorized moratorium expired, the CDC Director unilaterally issued an order declaring a new moratorium, halting evictions of certain "covered persons" through December 31, 2020. 85 Fed. Reg. 55292-01. The CDC purported to find statutory authority for the Halt Order in Section 361 of the Public Health Service Act, codified at 42 U.S.C. § 264. *Id.* That section provides the Secretary of Health and Human Services with the power to "make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases." 42 U.S.C. § 264(a).[1] To carry out and enforce those regulations, the statute authorizes the Secretary to provide for "inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary." *Id.* The statute also grants the Secretary authority to make and enforce regulations for quarantining infected persons. *Id.* § 264(b–d). The Secretary has delegated its powers under § 264 to the CDC by regulation. *See* 42 C.F.R. § 70.2.

Shortly after the CDC issued the Halt Order, Congress passed the Consolidated Appropriations Act, which extended the Halt Order from December 31 to January 31. Pub. L. No. 116-260, § 502, 134 Stat. 1182 (2020).

---

[1]The statute actually grants this authority to the Surgeon General. But that office was abolished in 1966, and all statutory powers vested in the Surgeon General were transferred to the HHS Secretary. 31 Fed. Reg. 8855; 20 U.S.C. § 3508. The Secretary retained those powers even after the Office of the Surgeon General was reinstated in 1987.

No. 21-5256                  *Tiger Lily, LLC, et al. v. HUD, et al.*                  Page 3

On January 29, 2021, just before that statutory extension lapsed, the CDC Director issued a new directive extending the order through March 31, 2021. 86 Fed. Reg. 8020-01. She again relied only on the generic rulemaking power arising from the Public Health Service Act. *Id.* (citing 42 U.S.C. § 264(a)).

In September 2020, Plaintiffs filed suit against the government seeking, as relevant here, a declaratory judgment that the Halt Order violated the Administrative Procedures Act and a preliminary injunction barring its enforcement. The district court denied the preliminary injunction because it found that Plaintiffs' loss of income did not rise to the level of an irreparable injury. The government then moved for judgment on the pleadings. Plaintiffs countered with a Rule 56 motion for judgment on the administrative record. The district court granted judgment in Plaintiffs' favor, finding that the Halt Order exceeded the CDC's statutory authority under 42 U.S.C. § 264(a).

The day after the district court entered judgment, the government filed its appeal and moved the district court for an emergency stay and immediate administrative stay. Plaintiffs notified the district court that they intended to take two weeks to respond, and the district court did not order otherwise. The government then filed the stay motion now before us.**2**

II

We consider four factors when deciding whether to stay a judgment pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quotation and brackets

---

**2**Plaintiffs initially refused our order for a substantive response to the government's stay motion, objecting that the motion was procedurally improper. While not a jurisdictional limitation, "[a] party must ordinarily move first in the district court for . . . a stay of the judgment or order of a district court pending appeal." Fed. R. App. P. 8(a)(1)(A). But if "moving first in the district court would be impracticable" or if "a motion having been made, the district court…failed to afford the relief requested," we may grant initial relief. Fed. R. App. P. 8(a)(2)(A)(i)−(ii). Here, the government did move first in the district court, but Plaintiffs notified the court that they intend to use the full time (14 days) to respond. *See* W.D. Tenn. LR 7.2(a)(2). Given the Halt Order's looming March 31 expiration, we construe the district court's decision not to order a more expedited response as a denial of the government's requested relief. The normal appellate rules thus present no bar to the government's motion.

omitted). When a party has no likelihood of success on the merits, we may not grant a stay. *SawariMedia, LLC v. Whitmer*, 963 F.3d 595, 596 (6th Cir. 2020) (quoting *Daunt v. Benson*, 956 F.3d 396, 421–22 (6th Cir. 2020)).

Whether the government is likely to succeed on the merits boils down to a simple question: did Congress grant the CDC the power it claims? We address that question of statutory interpretation de novo. *See Smith v. Thomas*, 911 F.3d 378, 381 (6th Cir. 2018).[3] When analyzing the statute, "we look first to its language, giving the words used their ordinary meaning." *Artis v. District of Columbia*, 138 S. Ct. 594, 603 (2018) (citation and internal quotation marks omitted). We then apply "established principles of interpretation." *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2236 (2014). If, after those steps, the statute's meaning is clear, our task is done. *See BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004).

Because Congress's express authorization of the Halt Order expired on January 31, the CDC points to 42 U.S.C. § 264 as the sole statutory basis for the order's extension. But the terms of that statute cannot support the broad power that the CDC seeks to exert.

To slow disease transmission, the HHS Secretary, and the CDC by extension, can impose specific restrictions on both property interests, *see* 42 U.S.C. § 264(a), and liberty interests, *see id.* § 264(d). As to the former, the Secretary "may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary." *Id.* § 264(a). The government asserts that a nationwide eviction moratorium is among the "other measures" for disease control that Congress envisioned when drafting the statute.

---

[3]When reviewing an agency's construction of a statute it administers, we generally apply the two-step *Chevron* framework that requires us (1) to determine whether the statute is unambiguous, and (2) if so, to defer to the agency's construction if it is permissible. *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 842–43 (1984); *Arangure v. Whitaker*, 911 F.3d 333, 338 (6th Cir. 2018). Where the statute is unambiguous, then "that is the end of the matter": the court applies it as written. *Id.* (quoting *City of Arlington v. FCC*, 569 U.S. 290, 296 (2013)). In the briefing before us, neither party has argued that *Chevron* applies. Whether or not it applies, we find that the statute is unambiguous; therefore, we need not proceed beyond step one in any event.

No. 21-5256                 *Tiger Lily, LLC, et al. v. HUD, et al.*                 Page 5

We disagree. This kind of catchall provision at the end of a list of specific items warrants application of the *ejusdem generis* canon, which says that "where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114–15 (2001) (citation omitted). The residual phrase in § 264(a) is "controlled and defined by reference to the enumerated categories . . . before it," *id.* at 115, such that the "other measures" envisioned in the statute are measures like "inspection, fumigation, disinfection, sanitation, pest extermination" and so on, 42 U.S.C. § 264(a). Plainly, government intrusion on property to sanitize and dispose of infected matter is different in nature from a moratorium on evictions. *See Terkel v. CDC*, No. 6:20-cv-00564, 2021 WL 742877, at *6 (E.D. Tex. Feb. 25, 2021) (holding that the Halt Order exceeded the scope of the CDC's authority and observing that "eviction is fundamentally the vindication of the property owner's possessory interest"). The Halt Order thus falls outside the scope of the statute.

Furthermore, even if we were inclined to construe the phrase "other measures" as expansively as the government suggests, we cannot read the Public Health Service Act to grant the CDC the power to insert itself into the landlord-tenant relationship without some clear, unequivocal textual evidence of Congress's intent to do so. Regulation of the landlord-tenant relationship is historically the province of the states. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440 (1982) ("This Court has consistently affirmed that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular."). It is an "ordinary rule of statutory construction that if Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989) (quotation marks and citation omitted); *Solid Waste Agency v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 172–73 (2001) (declining to defer to agency interpretation of a statute where the interpretation pushed the limits of Congress's Commerce Clause authority "by permitting federal encroachment upon a traditional state power"). There is no "unmistakably clear" language in the Public Health Service Act indicating Congress's intent to invade the traditionally State-operated arena of landlord-tenant relations.

As the district court noted, the broad construction of § 264 the government proposes raises not only concerns about federalism, but also concerns about the delegation of legislative power to the executive branch. The government would have us construe the phrase "and other measures, as in his judgment may be necessary," 42 U.S.C. § 264, as a "broad grant of authority" to impose any number of regulatory actions, provided the Secretary believes those actions will help prevent the spread of disease, regardless of whether they are in any way tethered to the "specific intrusions on private property described in the second sentence" of § 264. "In the absence of a clear mandate in the Act, it is unreasonable to assume that Congress intended to give the Secretary the unprecedented power" of that kind. *Indus. Union Dep't, AFL-CIO v. API*, 448 U.S. 607, 645 (1980) (plurality opinion). We will not make such an unreasonable assumption.

The government raises two textual counterarguments, neither of which has merit. Its first requires some unpacking. The government argues primarily that (*i*) a later subsection of § 264 acknowledges the Secretary's authority to enforce quarantines, (*ii*) quarantines are not among the enumerated provisions of § 264(a), (*iii*) quarantines are different in kind from the enumerated provisions, and therefore, (*iv*) "other measures" must be read more expansively than the *ejusdem generis* canon allows. The argument has cosmetic appeal, but it does not withstand scrutiny. Those later subsections concern the government's limited power to restrict liberty interests—by means of enforced quarantine—in order to prevent the spread of disease. Section 264(a) is concerned exclusively with restrictions on property interests and is, therefore, structurally separate from the statute's quarantine provision. Prohibiting landlords from evicting nonpaying tenants unquestionably restricts a property interest, but an eviction moratorium is radically unlike the property interest restrictions listed in § 264(a) (sanitizing, fumigating, etc.).

Second, the government contends that when Congress legislatively extended the Halt Order to January 31 through the Consolidated Appropriations Act, it effectively acknowledged that § 264(a) authorized the Halt Order in the first place. That argument also fails. It is true that when Congress legislatively extended the Halt Order, it referenced the fact that the CDC claimed 42 U.S.C. § 264(a) as its authority for issuing the order in the first place. H.R. 133, 116th Cong., div. N, tit. V, § 502. However, mere congressional acquiescence in the CDC's assertion that the

Halt Order was supported by 42 U.S.C. § 264(a) does not make it so, especially given that the plain text of that provision indicates otherwise. We acknowledge that Congress has "the power to ratify . . . acts which it might have authorized and give the force of law to official action unauthorized when taken." *Swayne & Hoyt, Ltd. v. United States*, 300 U.S. 297, 301-02 (1937) (internal citation omitted). But nothing in § 502 expressly approved the agency's interpretation. All § 502 did was congressionally extend the agency's action until January 31, 2021. H.R. 133, 116th Cong., div. N, tit. V, § 502. After that date, Congress withdrew its support, and the CDC could rely only on the plain text of 42 U.S.C. § 264, which, as noted, does not authorize the CDC Director to ban evictions.

Given that the government is unlikely to succeed on the merits, we need not consider the remaining stay factors. *See Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 615–16 (6th Cir. 2020); *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153–54 (6th Cir. 1991) ("[E]ven if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the [Plaintiffs] if a stay is granted, [it] is still required to show, at a minimum, serious questions going to the merits").

The emergency motion for a stay pending appeal is denied.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk