No. 21-5256

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

—————————————

TIGER LILY LLC, et al.

*Plaintiffs-Appellees,*

vs.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,
et al.

*Defendants-Appellants.*

—————————————

On Appeal from the U.S. District Court
for the Western District of Tennessee

—————————————

## PLAINTIFFS-APPELLEES'
## SUPPLEMENTAL RESPONSE IN OPPOSITION
## TO DEFENDANTS-APPELLANTS' EMERGENCY MOTION FOR STAY
## PENDING APPEAL AND FOR IMMEDIATE ADMINISTRATIVE STAY

—————————————

**S. JOSHUA KAHANE**
jkahane@glankler.com

**AUBREY B. GREER**
agreer@glankler.com

**GLANKLER BROWN, PLLC**
6000 Poplar Ave., Suite 400
Memphis, Tennessee 38119
Telephone: (901) 576-1701
Facsimile: (901) 525-2389

*Attorneys for Plaintiffs-Appellees*

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................1

STANDARD OF REVIEW ...........................................................................3

ARGUMENT................................................................................................5

I.   DEFENDANTS HAVE NO LIKELIHOOD OF SUCCESS ON THE MERITS ................................................................................5

    **1. The Halt Order is a clear unlawful exercise of the CDC's delegated authority** .......................................................5

    **2. The CDC's interpretation of the Enabling Statute is without any merit because it is inconsistent with controlling jurisprudence and applicable canons of construction** ...............8

       *a. Cannons of Statutory Interpretation* .......................... 9

    **3. The Halt Order Is Arbitrary and Capricious**

       *a. The Halt Order is void for vagueness and ambiguity* .......... 11

       *b. The Halt Order is based upon insufficient, and nonexistent, scientific evidence*........................................................ 13

II.   THE IMPOSITION OF A STAY WILL CAUSE IMMEDIATE, IRREPARABLE, AND CONTINUOUS HARM TO THE PLAINTIFFS THAT FAR OUTWEIGHS ANY SPECULATIVE HARM ASSERTED BY THE DEFENDANTS............................14

III.  THE RELATIVE BALANCE OF THE HARDSHIPS AND THE PUBLIC'S INTEREST WEIGH IN FAVOR OF DENYING THE STAY ...............................................................................20

CONCLUSION ...........................................................................................20

CERTIFICATE OF COMPLIANCE...........................................................22

CERTIFICATE OF SERVICE ....................................................................23

# TABLE OF AUTHORITIES

**FEDERAL RULES**

Fed. R. App. P. 8 ...................................................................................4

**U.S. CODE**

5 U.S.C. § 553(b) ................................................................................17

5 U.S.C. § 706 .....................................................................................18

5 U.S.C. § 801 .....................................................................................18

42 U.S.C§ 264(a) ...................................................................................6

42 U.S.C. § 271(a) .................................................................................7

**CASES: UNITED STATES SUPREME COURT**

*Chafin v. Chafin*,
    568 U.S. 165 (2013) ......................................................................3

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001) ....................................................................10

*Elrod v. Burns*,
    427 U.S. 347 (1976) ....................................................................16

*F.C.C. v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012) ....................................................................11

*Hilton v. Braunskill*,
    481 U.S. 770 (1987) ......................................................................4

*Judulang v. Holder*,
    565 U.S. 42 (2011) ......................................................................13

*Martin v. Franklin Capital Corp.*,
    546 U.S. 132 (2005) ......................................................................4

*Moore v. City of E. Cleveland, Ohio*,

431 U.S. 494 (1977) ...................................................................16

*Nken v. Holder*,
  556 U.S. 418 (2009) .................................................................3

*Washington Dept of Social & Health Services v. Guardianship Estate of Keffeler*,
  537 U.S. 371 (2003) ...............................................................10

**CASES: UNITED STATES CIRCUIT COURTS OF APPEAL**

*Abney v. Amgen, Inc.*,
  443 F.3d 540 (6th Cir. 2006) ...................................................1

*Big Branch Res., Inc. v. Ogle*,
  737 F.3d 1063 (6th Cir. 2013) ...............................................13

*Bristol Reg'l Women's Ctr., P.C. v. Slatery*,
  988 F.3d 329 (6th Cir. 2021) ...................................................2

*California v. Azar*,
  911 F.3d 558 (9th Cir. 2018) .................................................15

*Chamber of Commerce v. Edmondson*,
  594 F.3d 742 (10th Cir. 2010) ...............................................15

*District of Columbia v. U.S. Department of Agriculture*,
  444 F. Supp. 34 (D.D.C. 2020) ..............................................15

*Dodds v. United States Dep't of Educ.*
  845 F.3d 217 (6th Cir. 2016) .................................................20

*E. Bay Sanctuary Covenant v. Barr*,
  964 F.3d 832 (9th Cir. 2020) .................................................20

*G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*,
  23 F.3d 1071 (6th Cir. 1994) .................................................20

*McNeilly v. Land*,
  684 F.3d 611 (6th Cir. 2012) .................................................16

*Merck vs HHS*,
   962 F.3d 531 (D.C. Cir. 2020) ...........................................................10, 11

*Mexichem Specialty Resins, Inc. v. EPA*,
   787 F.3d 544 (D.C. Cir. 2015) ................................................................15

*Ohio State Conf. of N.A.A.C.P. v. Husted*,
   769 F.3d 385 (6th Cir. 2014) ...................................................................3

*Overstreet v. Lexington-Fayette Urban Cty. Gov't*,
   305 F.3d 566 (6th Cir. 2002) ..................................................................20


**CASES: UNITED STATES DISTRICT COURTS**

*Lucero v. Detroit Pub. Sch.*,
   160 F. Supp. 2d 767 (E.D. Mich. 2001) ...................................................1

**Skyworks, Ltd. v. Centers for Disease Control and Prevention**,
   Case No. 5:20-cv-2407, (N.D. Ohio Mar. 10, 2021) ........................4, 7, 8

**Terkel v. Centers for Disease Control and Prevention**,
   Case No. 6:20-cv-00564, (E.D. Tex. Feb. 25, 2021) ...........................4, 8


**OTHER SOURCES**

Temporary Halt in Residential Evictions to Prevent the Further
Spread of Covid-19, 85 Fed. Reg. 55292 (Sept. 4, 2020) ......................*passim*

Tennessee Department of Health, Epidemiology and Surveillance
Data, https://www.tn.gov/health/cedep/ncov/data.html
(March 23, 2021) ........................................................................................ 17

New York Times, New York Coronavirus Map and Case Count,
https://www.nytimes.com/interactive/2020/us/new-york-coronavirus-cases.html
(March 23, 2021) ........................................................................................ 17

New York Times, California Coronavirus Map and Case Count,
https://www.nytimes.com/interactive/2020/us/california-coronavirus-cases.html
(March 23, 2021) ........................................................................................ 17

Daily Memphian, *Shelby County's updated vaccination schedule*, https://dailymemphian.com/article/19040/shelby-county-updated-vaccination-schedule (March 22, 2021) .............................................................................. 18

City of Memphis, Vaccine Phases, https://covid19.memphistn.gov/ vaccine/vaccine-phases/ (March 23, 2021) ...................................................... 18

Local 24, *Tennessee will open up COVID-19 vaccinations to everyone 16+ starting April 5*, https://www.localmemphis.com/article/news/health/ coronavirus/vaccine/shelby-county-moves-to-phase-2a2b-for-covid-19-vaccinations/522-5938d025-0edc-4606-99d8-271651b0c013 (March 23, 2021) .................................................................................................................... 18

Tom Bailey, *State Supreme Court tells all West Tennessee judges: Eviction ban lifted*, Daily Memphian (March 16, 2021)) ............................... 19

## INTRODUCTION

Defendants ask this Court to not only bypass the District Court and the application of Fed. R. App. P. 8 but to reinstate and perpetuate what is now, and has always been, plainly unlawful *ultra vires* government action. Defendants seek a stay of the District Court Judgment, predicated almost entirely on unsubstantiated and broadly speculative claims of potential future "harms". These claims are legally insufficient to demonstrate a likelihood of success on the merits as required for issuance of a stay.[1] Despite the Defendants' clear preference to the contrary, this matter —and the propriety of the imposition of a stay by this Court — is not about the graveness of COVID-19. From the outset of this litigation, Plaintiffs have acknowledged the seriousness and gravity of the current health pandemic, and never (even for an instant) have Plaintiffs sought to minimize the tragedy of the crisis we as a global community together face. COVID-19 has taken the innocent lives of more than a half-million Americans and far more around the world. It is a catastrophic and weighty outcome.

---

[1] To demonstrate irreparable harm, a movant must show that ... they will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc*., 443 F.3d 540, 552 (6th Cir.2006); "To constitute irreparable harm, an injury must be certain, great, and actual . . . . Irreparable harm cannot be speculative; "the injury complained of [must be] of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Lucero v. Detroit Pub. Sch*., 160 F. Supp. 2d 767, 801 (E.D. Mich. 2001) (citing and quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir.1985)).

The foregoing neither diminished nor notwithstanding, the government cannot be permitted to simply invoke the terrible nature of the pandemic alone to justify its unlawful, improper, and unconstitutional agency action. As Courts across this nation have stated, there is no pandemic exception to our system of laws or the Constitution.

Defendants place great weight on what could happen, albeit in broad generalizations of the type Courts almost universally reject when evaluating requests for extraordinary relief; however, Defendants' portrayal of the need for an immediate stay as outlined in their Motion omits any meaningful discussion of the underlying illegality of its own actions. It is not the potential harm that is the primary question for this Court, but whether the underlying government action —the promulgation and enforcement of the Halt Order— was lawful. If the Halt Order was not lawful, then all other considerations necessarily dissolve away.[2] Defendants simply ignore this point and instead hope to persuade the Court to issue a stay based upon emotion and fear– justifiable emotion and fear considering the health crises– but emotion and fear nonetheless. In doing so, Defendants have failed to demonstrate that the CDC had the authority to issue the Halt Order under the Enabling Statute; that the Halt Order is not flawed in numerous, substantive, procedural, and constitutional respects; and that the alleged harms of allowing the reasoned District Court Judgement to stand pending appeal are concrete, particular, and imminent in the Western District of Tennessee.

---

[2] *Bristol Reg'l Women's Ctr., P.C. v. Slatery*, 988 F.3d 329, 333 (6th Cir. 2021).

As the non-prevailing moving party seeking the extraordinary measure of a stay, the burden is on the Defendants to prove the prongs of consideration required by this Court; a burden arguably greater than that for an injunction.[3]  Defendants utterly fail in this regard.  There is simply no indicia to show that reinstating the unlawful overreaching intrusion on individual property rights and state law – in the Western District of Tennessee alone - will lead to what Defendants broadly and without any relevant evidence overstate.  For these reasons, and all others upon which the Court may deem appropriate, Defendants' request for a stay, both administrative and pending appeal, should properly be DENIED.

## STANDARD OF REVIEW

At this juncture, Defendants seek both a stay pending appeal and an immediate administrative stay of the District Court's March 16, 2021, Judgement.  Stays are a matter of discretion not a matter of right[4], even if irreparable injury will occur without the stay.[5]  Instead, the issuance of a stay is left to the Court's discretion dependent on the particular facts of the case.[6]  A motion to a Court's "discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal

---

[3] *See Ohio State Conf. of N.A.A.C.P. v. Husted*, 769 F.3d 385, 389 (6th Cir. 2014) (classifying a government defendant's burden to warrant a stay a "heavy" one).

[4] *See Bristol Reg'l Women's Ctr., P.C. v. Slatery*, 988 F.3d 329, 333 (6th Cir. 2021).

[5] *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). If stays were available as a matter of right, the number of appeals would likely increase.  *Chafin v. Chafin*, 568 U.S. 165, 178 (2013).

[6] *Nken*, 556 U.S. at 433.

principles."[7]  In consideration of a motion made for stay of an adverse judgment, the non-prevailing moving party bears the burden of demonstrating[8] to the presiding court that: (1) it is likely to succeed on the merits of the underlying case; (2) it will be irreparably injured absent the issuance of a stay; (3) the issuance of the stay will not substantially injure the interests of the prevailing party in the proceeding; and (4) where the public interest lies.[9]  The "critical" factor in considering a request for stay is whether the non-prevailing moving party has  made a "strong showing" that it is likely to succeed on the ultimate merits of the appeal.[10]  Absent this "strong showing" the stay should be denied.  And even with a strong showing, the other factors for consideration must also be met.

In its Emergency Motion for Stay, the Defendants fail to demonstrate any facts or offer any law upon which this Court can rely in departing from the District Court, and for that matter, the two (2) other District Courts[11] who likewise struck down the Halt Order, and all of whom, independently, found as a matter of law, that the Halt Order was, and is, unlawful and unenforceable.   The Defendants, have not, and cannot demonstrate any likelihood of success on the merits of the underlying case because, quite

---

[7] *Id*. at 434 (quoting *Martin v. Franklin Capital Corp*., 546 U.S. 132, 139 (2005)).
[8] *Id*. at 433-34.
[9] *Id*. at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).
[10] *Id*.
[11] *See Skyworks, Ltd. v. Centers for Disease Control and Prevention*, Case No. 5:20-cv-2407, (N.D. Ohio Mar. 10, 2021), D.E. 54 (Opinion and Order); *Terkel v. Centers for Disease Control and Prevention*, Case No. 6:20-cv-00564, (E.D. Tex. Feb. 25, 2021), D.E. 45 (Opinion and Order).

simply, the applicable law does not support the Halt Order! This failure in the Defendants' position is fatal and, on this factor alone, the Defendants' Emergency Motion for Stay should be denied without the need for this Court to entertain any of the other considerations. Notwithstanding, when the Court does consider the other factors, as explained later herein, each of the remaining factors likewise preponderate in favor of the Plaintiffs. It is the Plaintiffs – not the Defendants - who will suffer irreparable injury if this Court grants the stay and the public interest favors denying the stay. For these reasons, there is no justifiable basis for this Court to grant the stay and Defendants' request for a stay, both administrative and pending appeal, should properly be DENIED.

## ARGUMENT

I.   DEFENDANTS HAVE NO LIKELIHOOD OF SUCCESS ON THE MERITS

A stay should only be granted when the applicant makes "a strong showing that he is likely to succeed on the merits" of the underlying litigation.[12] Defendants failed to demonstrate any likelihood of success on the merits and the Emergency Motion for Stay should properly be DENIED.

### *1. The Halt Order is a clear unlawful exercise of the CDC's delegated authority.*

The CDC's purported authority to issue the Halt Order arises out of the Enabling Statute which appears within the "Quarantine and Inspection" sections of the Public Health and Welfare Services statutes. The only purpose of the Enabling Statute is to

---

[12] *Bristol Reg'l Women's Ctr., P.C. v. Slatery* 988 F.3d 329, 333 (6th Cir. 2021).

provide the CDC the authority to take certain actions to prevent the "introduction, transmission, or spread of communicable diseases" into the United States from a foreign country or into a State or territory from another State or territory (inter-state spread) "from infected people or animals." 42 U.S.C§ 264(a). To this end, Congress through the Enabling Statute, spoke clearly and precisely to delineate specific public health related measures that the CDC is authorized to undertake to prevent the transmission or spread of a communicable disease, namely, "inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected and dangerous to human beings . . . and other measures, as in his judgment may be necessary".[13]

A clear reading of the Enabling Statute evidences Congress' unambiguous intent to *only* delegate to the CDC the authority to take certain quarantine related actions. It is equally clear in the Enabling Statute that Congress unambiguously chose *not* to delegate to the CDC broad and expansive authority to interfere with state property rights, eviction laws, or contracts. The Halt Order has no relationship to quarantine and does not fit within the text of the Enabling Statute. Equally egregious, without any authority in the Enabling Statute, the CDC instituted criminal penalties —intended by Congress to punish infected individuals who violate their quarantine orders and, among other things,

---

[13] *Id.*

infect others[14].  This was obviously not Congress' intent in enacting the quarantine statutes or its criminal penalties.

Without citing any evidence for the proposition, the CDC continues to argue the now vitiated proposition[15] that the authority delegated by Congress in the text of the Enabling Statute was implicitly intended to be so broad and so expansive that it would allow the CDC to do *anything* it wanted, even when such action "infringe[s] on personal liberties or property rights..."[16]  Such a position, if correct, would mean that Congress intended to empower the CDC to unilaterally violate the most basic of liberties simply because the exercise of these liberties may result in congregating, which could lead to the spread of COVID-19.  If the CDC's position is correct, the CDC would necessarily be empowered to violate such fundamental rights as suspending in-person voting; closing houses of worship; curtailing congregating for ritual ceremonies; precluding otherwise lawful political rallies; closing schools; and promulgating other orders that regulate business (like the Halt Order) such as requiring grocery stores and pharmacies to allow people claiming financial distress resulting from COVID-19 to take food and

---

[14] 42 U.S.C. § 271(a).

[15] (*See*, *e.g.*, Defendants' Memorandum in Support of Judgment on the Pleadings, RE 82-1, Page ID # 2193-2195); *Skyworks, Ltd. v. Centers for Disease Control and Prevention*, Case No. 5:20-cv-2407, (N.D. Ohio Nov. 19, 2020), D.E. 23 (Memorandum in Opposition to Preliminary Injunction), Page ID # 237-241.

[16] (Defendants' Memorandum in Opposition to Preliminary Injunction, RE 29, Page ID # 405); [Defendants' Emergency Motion for Stay Pending Appeal and for Immediate Administrative Stay, Doc. 5, Page ID # 15].

medicine off the shelves without having to pay and requiring hotels and motels to allow people to stay in rooms for months without having to pay. The idea that Congress intended <u>a quarantine statute</u> to authorize the CDC to take any of these actions, without expressly saying so, is preposterous given the plain text of the Enabling Statute–a statute dealing *only* with specifically delineated quarantine measures. However, these examples become critically relevant, if any Court were ever to adopt the CDC's false argument about expansive authority. The CDC did not have the authority to issue the Halt Order and the sweeping eviction moratorium therein. There is no ambiguity on this point which is why no fewer than three (3) District Courts have now struck down the Halt Order.[17] Defendants' have failed to show why such rulings were wrong. Since the Defendants cannot demonstrate a likelihood of success on the merits, the stay must be DENIED.

    **2.**    ***The CDC's interpretation of the Enabling Statute is without any merit because it is inconsistent with controlling jurisprudence and applicable canons of construction.***

Well established canons of construction and jurisprudence offer guideposts to aid a court in its exercise of statutory interpretation: (1) Explicitness; (2) Federalism; (3) Avoidance of Constitutional Problems; (4) Cannons of Statutory Interpretation – *Ejusdem Generis* and *Noscitur a Sociis*; and (5) Intent and Context. The Halt Order fails

---

[17] (Order, RE 103, Page ID # 2886-2905); *Skyworks, Ltd. v. Centers for Disease Control and Prevention,* Case No. 5:20-cv-2407, (N.D. Ohio Mar. 10, 2021), D.E. 54 (Opinion and Order); *Terkel v. Centers for Disease Control and Prevention*, Case No. 6:20-cv-00564, (E.D. Tex. Feb. 25, 2021), D.E. 45 (Opinion and Order).

each of the five (5) guideposts and thus exceeds the statutory authority delegated by Congress to the CDC.  This is why the Halt Order has consistently been deemed unlawful and unenforceable by presiding District Courts.  In this case, the District Court focused its analysis[18] and Judgement on Explicitness (previously discussed above) and Cannons of Statutory Interpretation, which Plaintiffs will highlight below.

> a.   **Cannons of Statutory Interpretation:**  The CDC incorrectly argues that the "and other measures, as in his judgment may be necessary" clause in the Enabling Statute is a broad and expansive catch-all provision illustrative of Congress's intent to authorize the CDC to take *any* action it deems "necessary," regardless of whether the action is consistent with, or outside of, the activities and/or actions specifically designated by Congress in the text of the Enabling Statute.  <u>Unfortunately for the CDC, this is completely wrong</u>.  Well-established rules of statutory construction require the precise <u>opposite analysis</u>.  The doctrines of e*jusdem generis* and *noscitur a sociis* provide that when a court undertakes judicial review of an agency's interpretation of the text in an enabling statute, <u>context must be a dispositive factor</u>.  More specifically, when the text of an enabling statute contains a list of items accompanied by a conclusory "other measures" catch-all, under e*jusdem generis* the scope of the conclusory "other measures" catch-all <u>is strictly defined by the list that preceded it</u>.  Any action taken under authority alleged to have been delegated by the "other measures" catch-all must be

---

[18] (*See* Order, RE 103, Page ID # 2896-2904)

consistent with, and fit concisely within, those actions so delegated by Congress in the preceding list. Under *noscitur a sociis,* any alleged ambiguity as to the meaning or breadth of a conclusory "other measures" catch-all in the text of an enabling statute must be defined by considering the associated words in the text as a <u>narrowing limitation</u> - keeping any additional action under the "other measures" catch-all strictly within the same context and confined to substantially similar acts and measures. *See Washington Dept of Social & Health Services v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384-85 (2003) (construing term "other legal process" under provision of Social Security Act); *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114-119 (2001) (applying *ejusdem generis* in construing terms of Federal Arbitration Act).

The District Court correctly confined and restricted the conclusory "other measures" catch-all by reference to the other terms in the list and found that Congress intended to only delegate to the CDC the authority to act as either explicitly stated within the Enabling Statute or in ways that embrace objects materially similar to those enumerated in the text of the conclusory "other measures" catch-all.[19] The CDC's proposed interpretation requires this Court to employ a constructive expansion of the Enabling Statute that goes beyond the meaning of the words Congress used, or ever intended to use, and to expand its delegated authority to actions without any "actual or discernable nexus" to the list of delegated authority stated in text of the Enabling Statute.

---

[19] (Order, RE 103, Page ID # 2901).

*Merck vs HHS*, 962 F.3d 531, 538-40 (D.C. Cir. 2020). This Court should, therefore, confine and restrict the conclusory "other measures" catch-all to the preceding list of authorized actions explicitly delegated in the text of the Enabling Statute. As such, the Halt Order is wholly outside of the CDC's authority delegated to it by Congress in the Enabling Statute and there is no merit to the CDC's position.

### 3. *The Halt Order Is Arbitrary and Capricious*

#### a. <u>The Halt Order is void for vagueness and ambiguity</u>.

The void for vagueness doctrine addresses at least two (2) connected but discrete concerns: first, that regulated parties should know what is required of them so they may act, accordingly; and second, precision and guidance in government action are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way. *See F.C.C. v. Fox Television Stations, Inc*., 567 U.S. 239, 253 (2012). Looking at the plain text of the Halt Order reveals its extreme vagueness and ambiguity. For instance, the Halt Order protects "covered persons"; however, the Halt Order simply defines a covered person as any tenant that provides a Declaration to his or her landlord. (Halt Order, RE 1-12, Page ID # 69); 85 Fed. Reg. 55293. The physical act of providing the Declaration makes someone "covered" without regard to whether the Declaration is true or false. Within the Declaration itself, a covered person must attest that he has used his "best efforts to obtain all available government assistance." (*Id*.). But "best efforts" is never defined. Likewise, what constitutes a "substantial loss of household income?" (*Id*.). Is this "loss" from the loss of a job, or does it also result from garnishment, tax

11

and/or bank levies, gambling losses, bad investments, child support, other loan obligations, etc.?  What does it mean to "expect[] to earn no more than $99,000.00?" (*Id*.).  When does an eviction "likely render the individual homeless" and what sort of living arrangement is considered to be "close quarters," "congregate," and "shared living?"  (*Id*.).  How many is too many?  What about "best efforts" to make rental payments?  How is that determined and by whom?  What is an "eviction?"  The Halt Order says ''[e]viction means any action by a landlord, owner of a residential property, or other person with a legal right to pursue eviction or a possessory action, to remove or cause the removal of a covered person from a residential property."  (*Id*.) (internal quotations omitted).  The "any action" portion of that definition is of critical importance and yet the CDC offers no clarity as to what was intended.  For instance, in the Western District of Tennessee, is filing the Forcible Entry and Detainer ("FED") Warrant considered "any action?"  What about serving the FED?  Setting a court date?  Appearing in court?  Arguing the case in court?  What about having the clerk issue a Writ of Possession following a judgment?  When does protection as a "covered person" for "any action" begin?  Can a tenant tender a Declaration after a lawful judgment for possession is issued?  Does tendering the Declaration cover the tenant in perpetuity?  What if the tenant's financial circumstances greatly improve?  What if the individual receives government assistance after using "best efforts" to obtain that assistance and after tendering the Declaration?  In yet another example, the CDC claims that landowners retain the right to challenge a Declaration tendered by a tenant.  How is a landowner to

assert this right to challenge?  Who is to preside over this challenge?  The vagueness of the Halt Order presents real life, practical questions, that have posed significant issues, increased damages for landowners, and created confusion in the courts.

Finally, the ambiguity in the Halt Order threatens millions of land-owning Americans with prison time and draconian fines for simply taking lawful actions to recover their own real property.  But the Halt Order fails to articulate what conduct is proscribed and subject to penalty.  The Halt Order offers no clarity at all and is, therefore, void for vagueness.

### b. The Halt Order is based upon insufficient, and nonexistent, scientific evidence.

For the Halt Order to survive judicial review and an arbitrary and capricious determination, the CDC must articulate the relevant data, explanation, and rational connection between the facts the CDC found and the choice the CDC made.  *Judulang v. Holder*, 565 U.S. 42, 53 (2011).  In the case of the Halt Order, the CDC must convince this Court that the "scientific" evidence in the Administrative Record, and upon which the CDC relied in justifying the administrative decision, is substantial and sufficient. "Substantial evidence" means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion*." Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1068–69 (6th Cir. 2013) (internal quotations omitted).

The CDC's supposed "scientific" evidence upon which it relied in violating the property rights of Plaintiffs (and tens of millions other Americans) is a loose

confederation of web-based sources, some of which are outdated and others of which are biased, none of which are statistically significant or representative, and none of which were created or verified by the CDC. The arbitrary and capricious standard requires that the CDC demonstrate that it considered <u>all factors</u> and found that <u>no other less restrictive regulatory alternatives</u> —other than the action taken— were available. The CDC's "science," vis-à-vis the Administrative Record, fails the test. This failure not only renders the Halt Order an action that exceeds any authority delegated to the CDC by Congress, but also demonstrates the Halt Order's arbitrary and capricious nature.

Even more, not one single piece of data, explanation, or rational offered by the Defendants is in any way connected with or relevant to the circumstances in the Western District of Tennessee. Instead, the Defendants expect this Court to accept a study from New York, Seattle, San Francisco or Boston to justify the *ultra vires* conduct the CDC wishes to take in the Western District of Tennessee. This is the definition of arbitrary and capricious.

## II. THE IMPOSITION OF A STAY WILL RE-COMMENCE IMMEDIATE, IRREPARABLE, AND CONTINUOUS INJURY TO THE PLAINTIFFS THAT FAR OUTWEIGHS ANY SPECULATIVE INJURY ASSERTED BY THE DEFENDANTS.

Defendants' carry the burden of proving that they will suffer irreparable injury absent the issuance of a stay; Defendants make no such showing. Instead, Defendants try and shift the burden by claiming that Plaintiffs are not subject to any irreparable harm even with the imposition of a stay. Defendants' claim is predicated on the suggestion that while the "CDC Order temporarily prohibits evictions" for nonpayment of rent, it

does not "excuse" the tenants' "obligations to pay rent."[20] The Defendants do not acknowledge that the CDC mandated suspension of rental income, however, has caused severe economic harm, and in many instances, has made impossible land owners ability to: service underlying debt forcing some properties into default; pay applicable taxes resulting in the assessment of late fees and interest; maintain and keep up the property leading to diminution in value; pay employee wages necessitating layoffs and loss of quality employees; and provide essential services to tenants.

While as a general rule, these types of economic harm do not constitute "irreparable injury", when the economic harm <u>is caused</u> by federal agency action the economic harm <u>is deemed irreparable injury</u>. *District of Columbia v. U.S. Department of Agriculture*, 444 F. Supp. 34 (D.D.C. 2020); *California v. Azar*, 911 F.3d 558 (9th Cir. 2018); *Chamber of Commerce v. Edmondson*, 594 F.3d 742 (10th Cir. 2010).

The D.C. Circuit has repeatedly affirmed that economic injury is "irreparable where no 'adequate compensatory or other corrective relief will be available at a later date, <u>in the ordinary course of litigation</u>." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015). Here, Plaintiffs only opportunity to recover, if at all, clearly falls outside of <u>the ordinary course of litigation</u>.

Even more, study after study has shown that the effect of this now seven (7) to twelve (12) month "temporary prohibition" during which tenants did not pay rent, is a

---

[20] [Defendants' Emergency Motion for Stay Pending Appeal and for Immediate Administrative Stay, Doc. 5, Page ID # 6].

now existing, virtually insurmountable debt obligation for tenants, which will lead to unrecoverable rental income for property owners and managers. This threat of unrecoverable economic loss qualifies as irreparable harm.

But the financial loss and associated economic harm is not the only element of irreparable injury suffered by the Plaintiffs. As a result of the Halt Order, Plaintiffs have suffered violation, by unlawful government action, of their long-established and fundamentally protected rights.[21] If it is found that a fundamental right is being threatened or impaired, a finding of irreparable injury is mandated. *See*, *e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *McNeilly v. Land*, 684 F.3d 611, 620 (6th Cir. 2012).

Lastly, while the Plaintiffs demonstrated irreparable injury in the form of monetary loss and infringement on fundamentally protected rights, the Defendants failed to demonstrate any injury that the CDC or other government agencies will suffer if the Emergency Motion for Stay is denied. Instead, Defendants paint, in the broadest of broad strokes, by making sweeping claims (without citation to any source), that "more than 50,000 new COVID-19 cases continue to be reported each day"[22], that "congregate living situations...significantly exacerbate the spread of COVID-19"[23], that absent intervention 30 to 40 million people could be at risk of eviction"[24], and that "lifting the

---

[21] *See Moore v. City of E. Cleveland, Ohio*, 431 U.S. 494, 513 (1977) (Stevens, J., concurring) (right to own property precedes the Constitution).
[22] [Defendants' Emergency Motion for Stay Pending Appeal and for Immediate Administrative Stay, Doc. 5, Page ID # 6].
[23] [Id. at Page ID # 11].
[24] [*Id*. at Page ID # 17].

eviction leads to a 40 percent increase risk of contracting COVID-19"[25].  But not one of these statistics in any way speaks to the circumstances in the Western District of Tennessee.  While the Defendants' "facts" –intentionally and by design– are presented to elicit fear of increased spread of COVID-19 that will "necessarily" ensue if a stay is not granted, the data offered by the CDC is exclusively focused on the major metropolitan centers of the east and west coasts and offers no relevance or insight into the counties that make up the Western District of Tennessee.

According to the Tennessee Department of Health's Epidemiology and Surveillance Data, in Shelby County, which includes metropolitan Memphis and its suburbs, since the start of the COVID-19 pandemic, there have been a total of 1,546 deaths.[26]  Contrast that figure with the death total in New York of 30,564[27] on which the CDC relied for its transmission study.  Moreover, consider that Shelby County is currently averaging less than 600 new cases a week[28], compared with San Francisco relied upon by the CDC and which is averaging more than 2,800[29] new cases a week.  In

---

[25] [*Id*.].

[26] Tennessee Department of Health, Epidemiology and Surveillance Data, https://www.tn.gov/health/cedep/ncov/data.html (March 23, 2021).

[27]  New York Times, New York Coronavirus Map and Case Count, https://www.nytimes.com/interactive/2020/us/new-york-coronavirus-cases.html (March 23, 2021).

[28] Tennessee Department of Health, Epidemiology and Surveillance Data, https://www.tn.gov/health/cedep/ncov/data.html (March 23, 2021).

[29] New York Times, California Coronavirus Map and Case Count https://www.nytimes.com/interactive/2020/us/new-york-coronavirus-cases.html (March 23, 2021).

addition, were the CDC to analyze the other twenty-one (21) counties that make up the Western District of Tennessee, it would find that, <u>combined</u>, all twenty-one (21) counties have suffered a total of 1,555 deaths[30] since the start of the COVID-19 pandemic and, on average, have experienced less than 195 new cases each week.  While every life is invaluable and every death tragic, the CDC's claim of "severe irreparable harm"[31] in the Western District of Tennessee absent the issuance of a stay is void of any evidence or support of any kind.

Moreover, unlike in other parts of the country, Shelby County vaccinated[32] those most vulnerable within the population -Phases 1a1, 1a2, 1b, 1c, and 2a/b individuals- and is now administering COVID-19 vaccinations to Group 3.[33]  Shelby County will open vaccinations to any resident of Shelby County over the age of 16, the first week in April.[34]  The threat of exposure is far less significant in this jurisdiction and the threat of

---

[30] https://www.tn.gov/health/cedep/ncov/data.html. Benton 39, Carroll 81, Chester 48, Crocket 48, Decatur 37, Dyer 103, Fayette 75, Gibson 141, Hardeman 63, Hardin 64, Haywood 60, Henderson 74, Henry 76, Lake 26, Lauderdale 44, Madison 236, McNairy 53, Obion 95, Perry 28, Tipton 104, and Weakley 60.

[31] [Defendants' Emergency Motion for Stay Pending Appeal and for Immediate Administrative Stay, Doc. 5, Page ID # 18]

[32] Daily Memphian, *Shelby County's updated vaccination schedule*, https://dailymemphian.com/article/19040/shelby-county-updated-vaccination-schedule (March 22, 2021).

[33] City of Memphis, Vaccine Phases, https://covid19.memphistn.gov/ vaccine/vaccine-phases/ (March 23, 2021).

[34]Local 24, *Tennessee will open up COVID-19 vaccinations to everyone 16+ starting April 5*, https://www.localmemphis.com/article/news/health/coronavirus/vaccine/shelby-county-moves-to-phase-2a2b-for-covid-19-vaccinations/522-5938d025-0edc-4606-99d8-271651b0c013 (March 23, 2021).

spread is likewise severely diminished within this jurisdiction. The CDC's reliance on a few outdated studies from the coastal metropolises is misplaced herein and not sufficient to carry its burden.

Defendants' correctly point out in their Emergency Motion for Stay the legal impact of the District Court's Judgment. Landowners *within the Western District of Tennessee* who have final judgements on eviction actions issued from the Shelby County General Sessions Court may now proceed to file Writs of Possession and execute eviction dispossessions. The District Court's Judgment was not applied nationwide and, as articulated by the Tennessee Supreme Court,[35] does not even apply to those counties that lie in the Middle and Eastern Districts of Tennessee. As such, the alleged harm the CDC claims is diminished by a factor of more than 96% from the nationwide numbers included in the Emergency Motion for Stay.

Even more, from a practical standpoint, because the Tennessee General Sessions Courts have been closed since mid-December and only re-opened on March 22, 2021, only a small amount of final judgements sit in a posture where a Writ of Possession may immediately be filed. The net effect is that, while without the issuance of a stay the probability of COVID-19 spread in the Western District resulting from evictions is statistically small, with the issuance of stay, the assured infringement on the rights of

---

[35] (*See* Defendants' Motion for Stay, RE 106, Page ID # 2912 (citing article in the Daily Memphian discussing Tennessee Supreme Court's directive lifting the eviction ban in the Western District of Tennessee)); Tom Bailey, *State Supreme Court tells all West Tennessee judges: Eviction ban lifted*, Daily Memphian (March 16, 2021).

landowners, and the CDC's ongoing *ultra vires* enforcement, is guaranteed to continue causing wholesale and widespread irreparable injury to Plaintiffs.

### III.    THE RELATIVE BALANCE OF THE HARDSHIPS AND THE PUBLIC'S INTEREST WEIGH IN FAVOR OF DENYING THE STAY

Preventing government overreach and vindicating foundational rights are necessarily beneficial to others and in the public interest.  Nothing can matter to the public more than swift action to preserve, protect, and defend fundamental rights guaranteed to the people.  "[I]t is always in the public interest to prevent the violation of a party's rights.  *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994); *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 579 (6th Cir. 2002); *Dodds v. United States Dep't of Educ.*, 845 F.3d 217 (6th Cir. 2016). Furthermore, the public interest is always implicated in "ensuring that statutes enacted by their representatives' are not imperiled by executive fiat."  *E. Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 855 (9th Cir. 2020).

As such, the public is best served by allowing the restoration of the *status quo ante* and denying the requested stay.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Defendants' Emergency Motion for Stay Pending Appeal and Immediate Administrative Stay be DENIED.

Respectfully Submitted,

/s/ S. Joshua Kahane
  S. JOSHUA KAHANE
  jkahane@glankler.com

AUBREY B. GREER
agreer@glankler.com

**GLANKLER BROWN, PLLC**
6000 Poplar Ave., Suite 400
Memphis, Tennessee 38119
Telephone: (901) 576-1701
Facsimile: (901) 525-2389

Dated:     March 23, 2021

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Response in Opposition complies with the word limit of Fed. R. App. P. 27(d)(2)(A) as the Response in Opposition contains 4745 words.

The Response in Opposition further complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(5) and (6) as it has been prepared using Microsoft Word 365 and proportionally spaced 14-point Times New Roman typeface.

/s/ S. Joshua Kahane
S. JOSHUA KAHANE

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 23, 2021, I electronically filed the foregoing

Response in Opposition with the Clerk of Court for the United States Court of Appeals

for the Sixth Circuit by using the appellate CM/ECF system.  Participants in the case are

registered CM/ECF users, and service will be accomplished through the appellate

CM/ECF system.

<u>/s/ S. Joshua Kahane</u>
S. JOSHUA KAHANE